TERRENCE P. MCMAHON (State Bar No. 71910)
tmcmahon@mwe.com
FABIO E. MARINO (State Bar No. 183825)
fmarino@mwe.com
JUDITH S. H. HOM (State Bar No. 203482)
jhom@mwe.com
NITIN GAMBHIR (State Bar No. 259906)
ngambhir@mwe.com
BARRINGTON DYER (State Bar No. 264762)
bdyer@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004
Telephone:      +1 650 815 7400
Facsimile:       +1 650 815 7401

Attorneys for Plaintiffs
RADWARE, LTD. and RADWARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RADWARE, LTD., an Israeli company; RADWARE, INC., a New Jersey corporation,<br><br>Plaintiff,<br><br>v.<br><br>F5 NETWORKS, INC., a Washington corporation,<br><br>Defendant. | CASE NO.  5:13-cv-02024-RMW<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Radware, Ltd. and Radware, Inc. ("Plaintiffs" or collectively, "Radware"), for their First Amended Complaint against Defendant F5 Networks, Inc. ("Defendant" or "F5"), allege as follows:

## NATURE OF THE ACTION

1.  Plaintiffs bring this action against Defendant for patent infringement.  This is an action for damages and injunctive relief arising out of the Defendant's infringement of Plaintiffs' U.S. Patent Nos. 6,665,702 (the "'702 patent"), 8,266,319 (the "'319 patent"), and 8,484,374 (the "'374 patent") (collectively, "patents-in-suit") issued on December 16, 2003, September 11, 2012, and July 9, 2013 respectively.  All patents were issued to inventors Roy Zisapel, Amir Peles, and Smadar Fuks, and both patents are entitled "Load Balancing."

## THE PARTIES

2.  Plaintiff Radware, Ltd. is an Israeli company with its principal place of business in Tel Aviv, Israel.  Plaintiff Radware, Inc. is a New Jersey corporation with its principal place of business in Mahwah, New Jersey and offices in San Mateo, California.  Plaintiffs sell and distribute products that practice the patents-in-suit within this district.

3.  Defendant F5 is a Washington corporation with its principal place of business in Seattle, Washington and offices in San Jose, California.  Upon information and belief, Defendant F5 makes, uses, offers for sale, sells and distributes infringing products within this district.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331, 1338(a) and the Patent Act, 35 U.S.C. §§ 1 *et seq*.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the events giving rise to the claims occurred here and the Defendant resides in this district and is subject to personal jurisdiction in this district.  Division assignment to the San Jose Division of the United States District Court for the Northern District of California is proper pursuant to Civil Local Rule 3-2(e) because this is an Intellectual Property Action that arose in, among other places, Santa Clara County.

# GENERAL ALLEGATIONS

6. Radware is a global leader in application delivery and application security solutions for virtual and cloud data centers. Radware's award-winning solutions portfolio delivers full resilience for business-critical applications, maximum IT efficiency, and complete business agility. Radware practices and implements its own patents, including the patents-in-suit, in its products.

7. Radware's solutions empower more than 10,000 enterprise and carrier customers worldwide to adapt to market challenges quickly, maintain business continuity and achieve maximum productivity while keeping costs down. Radware works together with customers and technology partners to offer solutions that address the challenges of today's complex home-grown and business applications environments that reside in the data center.

8. Generally, Radware's product portfolio ensures fast, reliable, and secure delivery of web applications, corporate applications, and network services that drive business productivity. The portfolio consists of comprehensive Application Delivery Controllers (ADC), Attack Mitigation System (AMS), Real-Time Intelligence and Centralized Management & Reporting System. All of these products leverage Radware's OnDemand Switch® with its "pay-as-you-grow" approach to ensure cost-effective, on demand scalability for best investment protection and minimized capacity planning risk.

9. Radware's application delivery solutions address challenges of optimizing delivery of applications over IP networks to ensure continuous availability, fast response time and complete security.

10. Radware's ADC solutions include the AppDirector, WSD (Web Server Director), LinkProof®, and Alteon® product lines.

11. The AppDirector and WSD product lines are Radware's legacy application switches. They align server infrastructure operations with application front end requirements to eliminate downtime caused by network and application failures, and overcome traffic surges, server and application bottlenecks. The AppDirector and WSD product lines optimize server and application operations through advanced network and application load balancing (local and

- 2 -

FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT
CASE NO. 5:13-CV-02024 RMW

1  global), TCP traffic optimization, server offloading such as Secure Sockets Layer ("SSL")
2  offloading and caching, web compression and other various application accelerating techniques.

3      12.    The LinkProof® product line is a multi-home wide area network ("WAN") load
4  balancer that maximizes the effectiveness of a WAN by bypassing bottlenecks and service-
5  provider outages, accelerating application response time, managing bandwidth consumption
6  according to cost and/or performance policies, and allowing customers to decide which links are
7  used for which applications at particular points in time for security or cost and performance
8  optimization purposes.

9      13.    The Alteon® product line is Radware's next generation Application Delivery
10 Controller product that incorporates advanced support for Radware's Virtual Applications
11 Delivery Infrastructure (VADI®).  VADI® extends the Radware's ADC solution to the virtual
12 data center and cloud environments, including multiple ADC instances support per platform for
13 ADC consolidation, Alteon Virtual Appliance (VA) and enables creation of automated and
14 orchestrated ADC virtual fabrics that natively integrate with the virtual data center infrastructure.

15     14.    Radware is in compliance with applicable marking and notice provisions of 35
16 U.S.C. § 287, and has identified and marked its products with the '702 and the '319 patent
17 numbers at least as early as December 5, 2012, and has identified and marked its products with
18 the '374 patent at least as early as July 9, 2013.

19     15.    F5 directly competes with Radware in the ADC market, and, F5 and Radware
20 compete for the same customers.  *See e.g.* Ex. D[1] (F5 Networks, Inc. 2/7/2013 SEC Form 10-Q at
21 24 ("Our principal competitors in the application delivery networking market include Brocade
22 Communications Systems, Inc., Cisco Systems, Inc., Citrix Systems, Inc., Radware Ltd. and A10
23 Networks."))

24     16.    Upon information and belief, F5 (and/or third-parties acting on F5's behalf)
25 manufactures, imports, sells, and/or offers to sell suite of products, including but not limited to its

---

[1] "Ex.___" is a short-hand notation for "Ex. ___" attached to the First Amended Complaint and made part hereof.

- 3 -

FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT
CASE NO. 5:13-CV-02024 RMW

1   BIG-IP and VIPRION product suites ("Accused Products") that infringe the patents-in-suit and
2   are in direct competition with Radware's products.

3   17.   F5 has had knowledge of the '702 and '319 patents at least as early as December 5,
4   2012, and knowledge of the '374 patent at least as early as July 9, 2013 when Radware identified
5   and marked its products with the numbers the patents-in-suit.  Ex. E.  On information and belief,
6   F5 has had knowledge about Radware's products as well as the patents issued to Radware,
7   including the patents-in-suit, concerning computer networking and load balancing technology,
8   especially since Radware and F5 are direct competitors, prior adversaries and that Radware
9   currently has a patent portfolio consisting approximately 20 U.S. patents.

10   18.   F5 engages in promotional, advertising and instructional efforts that include, at a
11   minimum, the maintenance and distribution of guides, manuals, and white papers that instruct,
12   direct, and encourage its customers and potential customers to infringe the patents-in-suit,
13   including: *F5 The Impact of Web Services on the Network Whitepaper* (Ex. F); *F5 Load
14   Balancing 101: Nuts and Bolts Whitepaper* (Ex. G); *Ask F5 Knowledge Base* (Ex. H) .

**FIRST CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 6,665,702 Against F5)**

17   19.   Each of the foregoing paragraphs is incorporated in this First Claim for Relief as if
18   fully set forth herein.

19   20.   On December 16, 2003, the '702 patent duly and legally issued to Radware Ltd.
20   This patent is entitled "Load Balancing."  A copy of the '702 patent is attached hereto as Ex. A
21   and made a part hereof.

22   21.   Radware is the owner of the '702 patent and has the right to enforce the '702
23   patent, including the right to bring this suit for injunctive relief and damages.

24   22.   On information and belief, F5 has been and now is directly infringing, either
25   literally or under the doctrine of equivalents, the '702 patent by making, using, selling, offering
26   for sale, and/or importing, without authority, products and services that are covered by one or
27   more claims of the '702 patent, including but not limited to, the Accused Products like the BIG-IP
28   and VIPRION product suites.

FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

23. Since at least the filing of the Complaint (Dkt. No. 1), F5 has been and continues to indirectly infringe by way of inducing infringement and/or contributing to the infringement of the '702 patent by making, using, selling, offering for sale, importing, promoting, advertising, and/or instructing customers and potential customers about products and services that are covered by one or more claims of the '702 patent, including, but not limited to, the Accused Products like the BIG-IP and VIPRION product suites, without authority. *See* ¶18. F5 knowingly, intentionally, and actively aided and abetted the direct infringement of the '702 patent by instructing and encouraging its customers and potential customers to use products and services, including BIG-IP and VIPRION product suites, in a manner that infringes the '702 patent. F5 engaged in these acts with the intent to induce active infringement.

24. The Accused Products are especially made or especially adapted for infringing use and that there are no substantially non-infringing uses of the Accused Products. The '702 patent concerns a network management system to manage a computer network connected to the Internet through a plurality of routes, which are monitored for the selection of routes through which the client request is routed. The '702 patent describes a network management system comprising a data manager looking up ratings for multiple routes between two computer networks, and a selection of routes based on these ratings. *See e.g.* Claim 8 of the '702 patent. The Accused Products provide application delivery services that aid in load balancing and traffic management which monitors and compares network connections for the selection of routes to a remote computer through which to route a client request. *See e.g., Ask F5 Knowledge Base* (Ex. H) ("The BIG-IP system compares the destination address to the routing table to determine the interface through which the BIG-IP system routes the traffic."); *F5 The Impact of Web Services on the Network Whitepaper* (Ex. F at 5); *F5 Load Balancing 101: Nuts and Bolts Whitepaper* (Ex. G at 7-8).

25. Since at least the filing of the Complaint (Dkt. No. 1), F5 and certain of its officers and employees, have been aware of the existence of the '702 patent and, despite such knowledge, F5, has continued to willfully, wantonly and deliberately engage in acts of infringement, and to

induce others to engage in acts of infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '702 patent.

26. In addition F5 has had knowledge of the '702 patent at least as early as October 27, 2008 during the prosecution of U.S. Patent No. 8,108,554, for which F5 was and remains the original assignee. Ex. I ('554 patent). The application for the '554 patent was filed on October 27, 2008, but claims a priority date of May 16, 2002. During the prosecution of the '554 patent, the applicant filed with the United States Patent and Trademark Office an Information Disclosure Statement identifying certain prior art, including the '702 patent. Applicant further argued in two Office Actions that the invention was novel and non-obvious over the '702 patent. *See* Exs. J-N (the '702 patent was cited: in the IDS submitted by applicant on 10/27/2008, and considered by examiner on 4/14/2010; as 35 U.S.C. §§ 102 and 103 prior art in 4/14/2010 Final Office Action; in Applicant's 8/16/2010 Office Action response; and in the 10/27/2010 Final Rejection dated to which applicant responded on 4/27/2011). The '702 patent was also brought to F5's attention during the prosecution of three other F5 patents: (1) Patent No. 8,004,971 (filed on September 10, 2003) cites to the '702 patent in an Information Disclosure Statements submitted by applicant on 2/10/2011 during the prosecution; (2) Patent No. 8,341,296 (filed on December 29, 2011) cites to the '702 patent in an Information Disclosure Statement submitted by applicant on 12/29/2011; and (3) Patent No. 8,447,883 (filed on August 30, 2012) cites to the '702 patent in multiple search histories during its prosecution in January 2013. *See* Exs. O-Q.

27. Radware has been and continues to be damaged by the infringement by F5 of the '702 patent, in an amount to be determined at trial.

28. Radware has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless the aforementioned infringement of the '702 patent is enjoined by this Court.

29. This is an exceptional case and entitles Radware to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

//

//

**SECOND CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 8,266,319 Against F5)**

30. Each of the foregoing paragraphs is incorporated in this Second Claim for Relief as if fully set forth herein.

31. On September 11, 2012 the '319 patent duly and legally issued to Radware Ltd. This patent is entitled, "Load Balancing." A copy of the '319 patent is attached hereto as Ex. B and made a part hereof.

32. Radware is the owner of the '319 patent and has the right to enforce the '319 patent, including the right to bring this suit for injunctive relief and damages.

33. On information and belief, F5 has been and now is directly infringing, either literally or under the doctrine of equivalents, the '319 patent by making, using, selling, offering for sale, and/or importing without authority, products and services that are covered by one or more claims of the '319 patent, including but not limited to, the Accused Products like the BIG-IP and VIPRION product suites.

34. Since at least the filing of the Complaint (Dkt. No. 1), F5 has been and continues to indirectly infringe by way of inducing infringement and/or contributing to the infringement of the '319 patent by making, using, selling, offering for sale, importing, promoting, advertising, and/or instructing customers and potential customers about products and services that are covered by one or more claims of the '319 patent, including, but not limited to, the Accused Products like the BIG-IP and VIPRION product suites, without authority. *See* ¶ 18. F5 knowingly, intentionally, and actively aided and abetted the direct infringement of the '319 patent by instructing and encouraging its customers and potential customers to use products and services, including BIG-IP and VIPRION product suites, in a manner that infringes the '319 patent. F5 engaged in these acts with the intent to induce active infringement.

35. The Accused Products are especially made or especially adapted for infringing use and there are no substantially non-infringing uses of the Accused Products. The '319 patent concerns a device that manages a computer network comprising of at least one router supporting at least one route with an assigned IP address to connect to the Internet. The device comprises a

1  network controller that receives a DNS resolution query, selects a route, and responds to the
2  query with an IP address associated with the selected route.  *See* Claim 31 of the '319 patent.
3  The Accused Products comprise a system of application delivery services that can perform load
4  balancing of servers with respect to incoming traffic through routers connected to the internet, can
5  receive DNS resolution queries from a remote user and can select a server to direct the user to and
6  respond to the query with an IP address to the server site.  *See e.g.* Ex. R (*Configuration Guide*
7  *for BIG-IP Local Traffic Management: 4 - Configuring Load Balancing Pools*: "To solve this
8  problem, the BIG-IP® local traffic management system distributes client requests to multiple
9  servers instead of to the specified destination IP address only."))

10  36.  Since at least the filing of the Complaint (Dkt. No. 1), F5 and certain of its officers
11  and employees, have been aware of the existence of the '319 patent underlying the patent and,
12  despite such knowledge, F5, has continued to willfully, wantonly and deliberately engage in acts
13  of infringement, and to induce others to engage in acts of infringement, as that term is defined in
14  35 U.S.C. § 271, without regard to the '319 patent.

15  37.  In addition, F5 has had knowledge of the '319 patent at least as early as November
16  5, 2012 when Radware issued a press release highlighting its load balancing technology and
17  expressly citing to the '319 patent.  Ex. S.  Furthermore, F5 was also made aware of the '319
18  patent during the prosecution of U.S. Patent No. 8,447,883, for which F5 was and remains an
19  assignee.  Ex. T ('883 patent).  During the prosecution of the '883 patent, the '319 patent was
20  brought to the applicant's attention multiple times by the Patent Examiner on or around January
21  23, 2013.  *See e.g.* Ex. Q at 16, 20, 34.

22  38.  Radware has been and continues to be damaged by the infringement by F5 of the
23  '319 patent, in an amount to be determined at trial.

24  39.  Radware has suffered irreparable injury for which there is no adequate remedy at
25  law and will continue to suffer such irreparable injury unless the aforementioned infringement of
26  the '319 patent is enjoined by this Court.

27  40.  This is an exceptional case and entitles Radware to attorneys' fees and costs
28  incurred in prosecuting this action under 35 U.S.C. § 285.

- 8 -

FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT
CASE NO. 5:13-CV-02024 RMW

## THIRD CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 8,484,374 Against F5)

41. Each of the foregoing paragraphs is incorporated in this Third Claim for Relief as if fully set forth herein.

42. On July 9, 2013, the '374 patent duly and legally issued to Radware Ltd. This patent is entitled, "Load Balancing." A copy of the '374 patent is attached hereto as Ex. C and made a part hereof.

43. Radware is the owner of the '374 patent and has the right to enforce the '374 patent, including the right to bring this suit for injunctive relief and damages.

44. On information and belief, F5 has been and now is directly infringing, either literally or under the doctrine of equivalents, the '374 patent by making, using, selling, offering for sale, and/or importing without authority, products and services that are covered by one or more claims of the '374 patent, including but not limited to, the Accused Products like the BIG-IP and VIPRION product suites.

45. Since at least the filing of this Amended Complaint, F5 has been and continues to indirectly infringe by way of inducing infringement and/or contributing to the infringement of the '374 patent by making, using, selling, offering for sale, importing, promoting, advertising, and/or instructing customers and potential customers about products and services that are covered by one or more claims of the '374 patent, including, but not limited to, the Accused Products like the BIG-IP and VIPRION product suites, without authority. *See* ¶18. F5 knowingly, intentionally, and actively aided and abetted the direct infringement of the '374 patent by instructing and encouraging its customers and potential customers to use products and services, including BIG-IP and VIPRION product suites, in a manner that infringes the '374 patent. F5 engaged in these acts with the intent to induce active infringement.

46. The Accused Products are especially made or especially adapted for infringing use and there are no substantially non-infringing uses of the Accused Products. The '374 patent concerns a device for load balancing client requests among ISP links in a multi-homed network. The device comprises a network controller configured to resolve DNS queries for the multi-

1 homed network by selecting an ISP link based on a load balancing criterion and returning an IP
2 address for the selected ISP link in response to the DNS query. *See e.g.* Claim 9, of the '374
3 Patent. The Accused Products comprise a system of application delivery services that can perform
4 load balancing of servers with respect to incoming traffic through routers connected to the
5 internet, can receive DNS resolution queries from a remote user and can select a server to direct
6 the user to and respond to the query with an IP address to the server site. *See e.g.* Ex. R
7 (*Configuration Guide for BIG-IP Local Traffic Management: 4 - Configuring Load Balancing*
8 *Pools*: "To solve this problem, the BIG-IP® local traffic management system distributes client
9 requests to multiple servers instead of to the specified destination IP address only."))

10   47.   On July 9, 2013, Radware notified counsel for F5 that the '374 patent had not only
11 issued but that, based on publicly available information, F5's products were infringing one or
12 more claims of the '374 patent.  Nevertheless, since at least the filing of this Amended Complaint,
13 F5 and certain of its officers and employees, have been aware of the existence of the '374 patent
14 and/or one or more of the applications underlying the patent and, despite such knowledge, F5, has
15 continued to deliberately engage in acts of infringement, and to induce others to engage in acts of
16 infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '374 patent.

17   48.   Radware has been and continues to be damaged by the infringement by F5 of the
18 '374 patent, in an amount to be determined at trial.

19   49.   Radware has suffered irreparable injury for which there is no adequate remedy at
20 law and will continue to suffer such irreparable injury unless the aforementioned infringement of
21 the '374 patent is enjoined by this Court.

22   50.   This is an exceptional case and entitles Radware to attorneys' fees and costs
23 incurred in prosecuting this action under 35 U.S.C. § 285.

24 //
25 //
26 //
27 //
28 //

FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT
CASE NO. 5:13-CV-02024 RMW

**PRAYER FOR RELIEF**

WHEREFORE, Radware, Ltd. and Radware Inc. pray for judgment against F5 Networks, Inc. as follows:

1. For entry of judgment against the Defendant on all Claims for Relief;

2. For an injunction preliminarily and permanently prohibiting the Defendant and F5's officers, agents, servants, employees, and all persons acting in concert with it and/or them, from directly or indirectly:

    a. from using, manufacturing, offering to sell or selling any products falling within the scope of the claims of the patents-in-suit;

    b. from actively inducing others to infringe any of the claims of the patents-in-suit;

    c. from engaging in acts constituting contributory infringement of any of the claims of the patents-in-suit;

    d. from all other acts of infringement of any of the claims of the patents-in-suit;

3. For compensatory damages in an amount according to proof;

4. For actual damages suffered as a result of the patent infringement and any of Defendants' profits that are attributable to the infringement, or at least statutory damages;

5. For an award of treble damages for all claims for which treble damages are authorized, and otherwise for the maximum enhancement allowed by law;

6. For costs of suit and reasonable attorneys' fees incurred herein;

7. For prejudgment and post judgment interest; and

8. For such other relief as the Court deems just and proper.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT
CASE NO. 5:13-CV-02024 RMW

| | | |
|---|---|---|
| 1 | Dated: July 9, 2013 | Respectfully submitted, |
| 2 | | McDERMOTT WILL & EMERY LLP |
| 4 | | By: *Fabio E. Marino* |
| | | Fabio E. Marino |
| 6 | | Attorney for Plaintiffs |
| | | RADWARE, LTD. and RADWARE, INC. |

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: July 9, 2013                              Respectfully submitted,

McDERMOTT WILL & EMERY LLP


By: *Fabio E. Marino*
    Fabio E. Marino

    Attorneys for Plaintiffs
    RADWARE, LTD. and RADWARE, INC.