1   FABIO E. MARINO (SBN 183825)
    fmarino@mwe.com
2   A. MARISA CHUN (SBN 160351)
    mchun@mwe.com
3   L. KIERAN KIECKHEFER (SBN 251978)
    kkieckhefer@mwe.com
4   NITIN GAMBHIR (SBN 259906)
    ngambhir@mwe.com
5   BARRINGTON DYER (SBN 264762)
    bdyer@mwe.com
6   TERI H.P. NGUYEN (SBN 267498)
    thpnguyen@mwe.com
7   SRULI YELLIN (SBN 291431)
    syellin@mwe.com
8   McDERMOTT WILL & EMERY LLP
    275 Middlefield Road, Suite 100
9   Menlo Park, CA  94025-4004
    Telephone:     650 815 7400
10  Facsimile:     650 815 7401

11  Attorneys for Plaintiffs and Counterclaim-Defendants
    RADWARE, LTD. AND RADWARE, INC.

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16

17  RADWARE, LTD., an Israeli company;          CASE NO. 5:13-cv-02024 RMW
    RADWARE, INC., a New Jersey                 (Related Case No. 5:13-cv-02021 RMW)
18  corporation,
                                                **PLAINTIFF RADWARE'S MOTION FOR**
19          Plaintiffs, Counterclaim-Defendants, **PARTIAL SUMMARY JUDGMENT**
                                                **DISMISSING DEFENDANT F5'S**
20          v.                                  **INVALIDITY AFFIRMATIVE DEFENSE**

21  F5 NETWORKS, INC., a Washington             Date:      July 24, 2015
    corporation,                                Time:      9:00 a.m.
22                                              Judge:     Hon. Ronald M. Whyte
            Defendant, Counterclaim-Plaintiff.  Location:  Ctrm 6, 4th Floor
23

24

25                  **REDACTED**

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 24, 2015 at 9:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Ronald M. Whyte, 280 South First Street, San Jose, CA 95113, Plaintiffs Radware, Ltd. and Radware, Inc. (collectively, "Plaintiffs" or "Radware") will and hereby do move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting partial summary judgment against F5's second affirmative defense of invalidity with respect to Radware's claims for infringement of U.S. Patent Nos. 8,266,319 (the '319 Patent) and 8,484,374 (the '374 Patent) (collectively, "Asserted Patents"). The grounds for the Motion are that F5 has failed to present clear and convincing evidence establishing the invalidity of the Asserted Patents with respect to certain references which F5 asserts, but fails to demonstrate, constitute prior art pursuant to 35 U.S.C. § 102 and/or § 103. These references include: a) the F5-BIG IP system, b) the Cisco DistributedDirector system, c) U.S. Patent No. 6,650,621 (the "Maki-Kullas patent"), d) the Cisco DistributedDirector White Paper, and e) numerous purported anticipatory references and obviousness combinations.

This Motion is based upon this notice and motion, the accompanying points and authorities, the accompanying Declaration of Sruli Yellin and exhibits in support thereof, the Declaration of Professor Izhak Rubin and exhibits in support thereof, any reply papers which may be filed, and any such other matters as may be brought before the Court prior to or at the hearing.

Dated: May 29, 2015

Respectfully submitted,

McDERMOTT WILL & EMERY LLP


By:*/s/ Fabio E. Marino*
   Fabio E. Marino

Attorneys for Plaintiffs and Counterclaim-
Defendants RADWARE, LTD. and
RADWARE, INC.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ............................................................................................. 1

3    II.   STATEMENT OF FACTS ............................................................................... 1

4          A.    The Invention of Radware's '319 and '374 Patents................................ 1

5          B.    The Radware Patents' Conception Date of █████████ ........................ 2

6          C.    Procedural History ................................................................................. 3

7          D.    F5's Invalidity Contentions and the Asserted Prior Art......................... 3

8                1.    F5 BIG-IP System .................................................................... 4

9                2.    Distributed Director System...................................................... 7

10               3.    Cisco DistributedDirector White Paper ................................... 8

11   III.  LEGAL STANDARDS.................................................................................... 9

12   IV.   ARGUMENT ................................................................................................. 11

13         A.    The Court Should Grant Partial Summary Judgment Dismissing Abandoned Prior
                 Art References Previously Cited in F5's Infringement Contentions .................... 11

15         B.    The Court Should Grant Partial Summary Judgment As To The Non-Prior Art
                 Test-Bed Systems.................................................................................. 14

16               1.    Components Of The Test-Bed Systems Post-Date The Priority Date Of The
                       Patents ................................................................................... 14

18               2.    Test-Bed Systems Were Not Publicly Known Or Used For Link Load
                       Balancing................................................................................ 15

19         C.    The Court Should Grant Partial Summary Judgment As To The References Which
                 F5 Has Failed To Demonstrate Were Published Prior to the Conception of the
                 Patents-In-Suit........................................................................................ 17

21               1.    The Maki-Kullas Patent ("'621 Patent") Is Not Prior Art......................... 17

22               2.    The Cisco Distributed Director White Paper Is Not Prior Art .................. 19

23   V.    CONCLUSION............................................................................................... 23

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

i

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...........................................................................................................9

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
   234 F.3d 14 (Fed. Cir. 2000) ..............................................................................................9

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-00630-LHK, 2012 U.S. Dist. LEXIS 92314 (N.D. Cal. July 3,
   2012) (Koh, J.) .....................................................................................................14, 15, 16

*Carella v. Starlight Archery and Pro Line Co.*,
   804 F.2d 135 (Fed. Cir. 1986) ..........................................................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................................................9

*CNET Networks, Inc. v. Etilize Inc.*,
   584 F. Supp. 2d 1260 (N.D. Cal. 2008) (J. Patel) .......................................................21, 22

*Continental Can Co.USA, Inc. v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) ........................................................................................16

*Eli Lilly & Co. v. Barr Laboratories, Inc.*,
   251 F.3d 955 (Fed. Cir. 2001) ..........................................................................................10

*Finnigan Corp. v. Int'l Trade Comm'n*,
   180 F.3d 1354 (Fed. Cir. 1999) ............................................................................11, 21, 22

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C 03-1431 ............................................................................................................11, 13

*Golden Bridge Technology Inc., v. Apple, Inc.*,
   No. 5:12-cv-04882, 2014 WL 1928977 (N.D. Cal. May 14, 2014) (Grewal, J.) .....................18

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) .............................................................................................................10

*Hilgraeve v. Symantec Corp.*,
   271 F. Supp. 2d 964 (E.D. Mich. 2003) ......................................................................11, 22

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
   292 F.3d 728 (Fed. Cir. 2002) ..........................................................................................21

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996) ..........................................................................................18

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

*Martek Biosciences Corp. v. Nutrinova*,
    579 F.3d 1363 (Fed. Cir. 2009) ................................................................10

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) .............................................................................9

*Minn. Mining & Mfg. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002) ..................................................10, 15, 17

*Netscape Commc'ns Corp. v. Konrad*,
    295 F.3d 1315 (Fed. Cir. 2002) ...............................................................16

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993) .........................................................18, 21

*Richardson v. Suzuki Motor Co.*,
    868 F.2d 1226 (Fed. Cir. 1989) ...............................................................14

*Schering Corp. v. Geneva Pharmas.*,
    339 F.3d 1373 (Fed. Cir. 2003) ...............................................................10

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) .....................................................................9

*Takeda Chem. Indus., Inc. v. Alphapharm Pty., Ltd.*,
    492 F.3d 1350 (Fed. Cir. 2007) .................................................................9

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ...............................................................10

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998) ...............................................................16

**Statutes and Rules**

35 U.S.C. § 102 ..................................4, 7, 8, 10, 11, 12, 14, 15, 16, 17, 19, 20, 21

35 U.S.C. § 103 .............................................4, 7, 8, 10, 12, 19, 20

Fed.R.Civ.Proc.56 .............................................................................9

**Other Authorities**

Manual of Patent Examining Procedure § 2138.05 (9th ed. Mar. 2014) ..................3, 19

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1    I.    **INTRODUCTION**

2          In its Invalidity Contentions, F5 cited a litany of alleged prior art it contends anticipates

3    and/or renders obvious Radware's '319 and '374 Patents.  Now that both fact and expert

4    discovery have concluded, it is time to narrow the issues that will be presented at trial.  Radware

5    has requested that F5 narrow its invalidity defenses voluntarily, but F5 has not responded to

6    Radware's requests.  Narrowing is particularly appropriate here, because closer scrutiny reveals

7    that most of the cited prior art is not prior art at all.  Radware therefore moves for partial

8    summary judgment with respect to certain of F5's invalidity defenses

9          For example, F5 identified two alleged test-bed systems as prior art, even though such

10   systems did not exist until after this litigation was filed and they were made using components

11   that did not exist until late 2014.  In addition, two allegedly anticipatory references—the Maki-

12   Kullas Patent and the Cisco DistributedDirector White Paper—are not prior art because they were

13   published after the priority date of the Asserted Patents.  Finally, F5 has abandoned a host of

14   purported anticipatory references and obviousness combinations cited in its Invalidity

15   Contentions by failing to include them in its expert's report.

16         As a result, Radware is entitled to judgment as a matter of law that these references do not

17   demonstrate invalidity of the Asserted Patents.  Granting Radware's motion will significantly

18   streamline and simplify the invalidity issues that remain for trial.

19   II.   **STATEMENT OF FACTS**

20         A.    **The Invention of Radware's '319 and '374 Patents**

21         Roy Zisapel, Amir Peles, and Smadar Fuks are the inventors of U.S. Patent Nos.

22   6,665,702 ("'702 patent")[1], 8,266,319 and 8,484,374, owned by Radware.  All three patents are

23   entitled "Load Balancing" and broadly describe a technology for managing network traffic from

24   data centers allowing balancing of the network traffic load between two or more Internet Service

25   Providers ("ISPs").  This technology is commonly referred to as link load balancing, although F5

26   sometimes refers to it as ISP load balancing (collectively "LLB").  *See* Decl. of S. Yellin ("Yellin

27

28   ─────────────────────
     [1] The '702 Patent is no longer at issue in this case.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

MSJ RE INVALIDITY AFF. DEFENSE
CASE NO. 5:13-CV-02024 RMW

1    Decl.") Ex 1 [Stamm Depo.] at 27:5-18 (F5's damages expert testifying that ███████████

2    ██████████████████████████████████████████████████).

3        The '702 patent issued on December 16, 2003 from an application originally filed on

4    December 20, 1999.  The '319 patent, issued on September 11, 2012, is a division of the '702

5    patent.  The '374 patent, issued on July 9, 2013, is a continuation of the '319 patent.  *See* Dkt. 24

6    (Amended Compl.) at Exs. A ['702 patent], B ['319 patent], C ['374 patent].

7        **B.     The Radware Patents' Conception Date of** ██████████

8        The invention disclosed in the Asserted Patents was conceived by ██████████, and

9    reduced to practice by ██████████.  Decl. of Prof. I. Rubin ISO Radware's MSJ re: Invalidity

10   Aff. Def. ("Rubin Decl."), ¶ 3, Ex. 1 [Rebuttal Report] at ¶¶ 39-41.  Specifically, with respect to

11   the conception date:

- Co-inventor and Radware CEO Roy Zisapel testified that he started to instruct co-inventor Smadar Fuks ██████████████████████████████ Yellin Decl. Ex. 2 [Zisapel Depo.] at 438:2-20, 440:7-12; *see generally id.* at 438:2-440:12.  Further, ██████████████████████████████ *Id.* Ex. 3.

- Co-inventor, Radware CTO, and Radware 30(b)(6) deponent Amir Peles testified that the date of conception for the inventions claimed in the '319 and '374 patents was ██████████.  Yellin Decl. Ex. 4 [Peles Depo.] at 82:20-83:19.

- Radware's technical expert Prof. Rubin opined that, based upon his review of documents, he understood "that the inventors of the Radware Patents had conceived the invention as early as ██████████."  Rubin Decl. Ex. 1 at ¶ 39 (citing RadwareF5_0028269; RadwareF5_00004778 to RadwareF5_00004780; RadwareF5_00011016).

22   And, with respect to the reduced-to-practice date:

- Co-inventor, Radware CTO, and Radware 30(b)(6) deponent Amir Peles testified that the date of reduction to practice of the inventions claimed in the '319 and '374 patents was ██████████.  Yellin Decl. Ex. 4 at 84:14-18.

- Radware's expert Prof. Rubin opined that, in reviewing inventors' testimony, documents, and Radware's infringement contentions, "I understand that Radware reduced to practice its invention at least as early as ██████████."  Rubin Decl. ¶ 3, Ex. 1 at ¶ 40.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

- Radware issued a press release on or about ███████████ highlighting the invention. *Id.* at ¶ 40 (citing RadwareF5_00004758); Ex. 5 (RadwareF5_00004758-59).

In addition, Radware constructively reduced its invention to practice on December 20, 1999, the date on which the '702 patent application was filed. *See* Rubin Decl. ¶ 3, Ex. 1 at ¶ 40; Yellin Decl. Ex. 6 [Alexander Report] at ¶ 58; *see also* Manual of Patent Examining Procedure (hereinafter "MPEP") § 2138.05 (9th ed. Mar. 2014) (discussing that the patent application filing date constitutes the constructive reduction to practice date).

### C.   Procedural History

On May 1, 2013, Radware filed a Complaint against F5 for infringement of the '702 and '319 Patents.  (Dkt. 1).  On July 9, 2013, Radware amended its Complaint, adding a claim for infringement of the '374 Patent, which had been issued that day. (Dkt. 24).   On July 25, 2013, F5 filed its Answer, Affirmative Defenses and Counterclaims to the First Amended Complaint. (Dkt. 30).  The Court held the *Markman* hearing on April 8, 2014 and issued its Claim Construction Order on April 18, 2014.  (Dkt. 122).

On March 7, 2014, F5 filed a motion for summary judgment, claiming that F5 did not directly infringe the patents-in-suit and that it did not infringe the '702 patent on the basis that the F5 products did not contain a claim element called a "proximity table."   F5 also joined Defendant A10 Networks' motion for summary judgment, claiming that Radware's '319, '374 and '702 patents were invalid.  (Dkt. 139 in 5:13-cv-02021 case).  On June 11, 2014, the Court largely denied F5's summary judgment motion.  It did grant in part, finding that F5's products do not infringe the '702 patent.  (Dkt. 145).  The 12-month deadline for F5 to challenge the validity of the '319 and '374 patents before the PTO expired on May 1 and July 9, 2014, respectively.

### D.   F5's Invalidity Contentions and the Asserted Prior Art

In support of its invalidity defense, F5 submitted Preliminary Invalidity Contentions on September 30, 2013 and Amendments to its Invalidity Contentions on May 16, 2014 ("Invalidity Contentions").  Yellin Decl. Exs. 8 [F5's Prelim. Invalidity Contentions], 9 [Amendments].  In these disclosures, F5 contends that Radware's asserted claims are invalid as anticipated by the prior art under various subsections of 35 U.S.C. § 102 and/or as obvious in view of the prior art

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

under 35 U.S.C. § 103. Yellin Decl. Ex. 8 at 5. With respect to the '319 and '374 patents, F5 identified a combined thirty-five (35) prior art references it alleged anticipated or rendered obvious one or more asserted claims. F5, however, abandoned most of these prior art references when it served the report of Dr. Peter Alexander, which only offers an invalidity opinion based on nine (9) of the references identified in F5's Invalidity Contentions. On May 15, 2015 and again on May 22, 2015, Radware requested that F5 stipulate that it would not rely at trial on the abandoned prior art references and combinations. *Id.* at ¶¶ 11-12 and Exs. 10, 11. F5 has not yet responded to either of Radware's requests, necessitating the filing of this Motion. Yellin Decl. at ¶ 12.

## 1.   F5 BIG-IP System

F5 alleges that a demonstration comprised of a 3DNS WAN High Availability System and a "BIG/ip" [sic] Server Array subsystem ("F5 BIG-IP System") is prior art under 35 U.S.C. §§ 102(a) and (b) and anticipates claims 1-12, 24-25, and 29-32 of the '319 Patent and claims 8-12 and 14-15 of the '374 Patent. *See* Yellin Decl. Ex. 6 at ¶¶ 335-337. In addition, F5 asserts that the F5 BIG-IP System renders claims 13-23 and 26-28 of the '319 Patent and claims 1-4 and 6-7 of the '374 Patent obvious under 35 U.S.C. § 103. *Id.* at ¶ 338.

The F5 BIG-IP System is a ███████████████████████████████████████ ███████. Yellin Decl. Ex. 7 [Alexander Depo.] at 81:22-82:20. In other words, the F5 BIG-IP System is a technical demonstration set up for the express purpose of determining whether the system—as configured—could perform link load balancing. The hardware components of the F5 BIG-IP System are: (1) a 3DNS WAN High Availability System, (2) a 3DNS Server, (3) BIG/ip servers B1, B2, and B3, and (4) a Dell PowerSeries 6224 switch. Rubin Decl. Ex. 1 at ¶¶ 72-75; Yellin Decl. Ex. 6 at ¶¶ 239-240. The ████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████. Rubin Decl. Ex. 1 at ¶ 72; Yellin Decl. Ex. 7 at 81:22-83:8 ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████ Dr. Alexander testified that he is ████████████████████████

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

███████████████████████████.  Yellin Decl. Ex. 7 at 99:24-100:4; 100:25-101:4.  Below are pictures of the F5 BIG-IP System as assembled and configured by Mr. Thornewell:



Rubin Decl. Ex. 1 at ¶ 72, Figure 1: BIG-IP System Front and Rear View, Figure 2:  Installation








5

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

Software CDs and Floppy Disk.

At least three components of the F5 BIG-IP System were created after the ▮▮▮▮▮▮ priority date of the '319 and '374 patents.  First, the dates of the files within the 3DNS server in the BIG-IP System demonstration shows that they were either created or modified as recently as November 2014.  *Id.* Ex. 1 at ¶ 73.  A picture of one of the 3DNS files is shown here:



*Id.* Ex. 1 at ¶ 73, Figure 3: Files in the 3DNS Server D1.  Additionally, the dates of the files within the BIG/ip servers B1, B2 and B3 also indicate that they were created or modified as early as November 2014.  *Id.* Ex. 1 at ¶ 74.  A picture of one of these files for Server B1 is shown here:

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1   *Id.* Ex. 1 at ¶ 74, Figure 4: Files in Server B1.  Indeed, Dr. Alexander confirmed that ███

2   ████████████████████████████████████████████████████████████████████.

3   Yellin Decl. Ex. 7 at 81:22-83:3.  Even the ████████████████████████████

4   ██████████████████ *Id.* at 101:5-12.  In short, the F5 BIG-IP System that ████████████

5   ████████████████████████████████████████████████████████████████

6   ███████████████████████.  In fact, F5 employees Mr. Rick Masters and Mr. Peter

7   Thornewell confirmed during their depositions that ██████████████████████████

8   ██████████████████████████████.  Yellin Decl. Ex. 12 [Masters

9   Depo.] at 135; Ex. 13 [Thornewell Depo.] at 246:12-25.

10          **2.      Distributed Director System**

11          F5 also alleges that the Cisco DistributedDirector System ("Cisco DD System") is prior

12   art under 35 U.S.C. §§ 102(a) and (b) and anticipates claims 1-12, 24-25, and 29-32 of the '319

13   Patent and claims 8-12 and 14-15 of the '374 Patent.  *See* Yellin Decl. Ex. 6 at ¶ 329.  In addition,

14   F5 asserts that the Cisco DD System renders claims 13-23 and 26-28 of the '319 Patent and

15   claims 1-4 and 6-7 of the '374 Patent obvious under 35 U.S.C. § 103.  *Id.* at ¶ 330.

16          The Cisco DD System is ████████████████████████████████████████

17   ███████████████.  Yellin Decl. Ex. 7 at 69:12-70:16. Similar to the F5 BIG-IP System,

18   the Cisco DD System is a technical demonstration set up in order to test whether the system as

19   configured ***could*** perform link load balancing.  The hardware components of the test bed are: (1)

20   Cisco System's DistributedDirector DD2500 device, (2) Cisco routers (R1, R2, R4, R11, R12,

21   R13, R14, and R23), and (3) a Cisco Catalyst 2950 switch.  Rubin Decl. Ex. 1 at ¶ 96; Yellin

22   Decl. Ex. 6 at ¶¶ 159-161. ████████████████████████████████████████

23   ████████████████████████████████████████████████████████.  Yellin

24   Decl. Ex. 7 at 69:12-70:7. ██████████████████████████████████████

25   ████████████████████  *Id*. at 68:9-69:7.  Below is a picture of the Cisco DD System,

26   as assembled and configured by Dr. Alexander:

27

28

7                     MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW



Rubin Decl. Ex. 1 at ¶ 96, Figure 13: Cisco DD System Test Bed – Inbound.

At least two components of the Cisco DD System were created after the ███████

priority date of the patents.  First, the Cisco Catalyst 2950 switch was manufactured in May,

2004.  Rubin Decl. Ex. 1 at ¶ 96 (citing to

https://supportforums.cisco.com/discussion/10832396/cisco-serial-number-lookups).  Dr.

Alexander confirmed that ████████████████████████████████████████

████.  Yellin Decl. Ex. 7 at 119:3-23.  Second, ██████████████████████

██████████████████████████  *Id.* at 69:8-70:16.  █████████████████

███████████████████████████████████████████████████████

█████████████████████████

### 3.    Cisco DistributedDirector White Paper

F5 also claims that "Cisco DistributedDirector Materials" ("Cisco DistributedDirector

White Paper" or "White Paper") of "various" publication dates anticipates one or more claims of

the '319 and '374 Patents under 35 U.S.C. §102.  In boilerplate language, F5 also asserts that

each anticipatory reference it identifies (thus, presumably, including the Cisco

DistributedDirector White Paper) also renders the asserted claims of the '319 and '374 Patents

obvious under 35 U.S.C. § 103.  *See* Yellin Decl. Ex. 8 at 5, 20, 22, 31, 33.

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

1    Interestingly, two versions of the White Paper have been produced by F5 in discovery: (i)

2    a complete version bearing a 1999 copyright notice that has been authenticated by its author,

3    Cisco's Kevin Delgadillo and (ii) a mutilated and unauthenticated version, with large swaths of

4    illegible white pages, bearing a 1997 copyright notice.  Yellin Decl. Ex. 14, Ex. 15.  While Mr.

5    Delgadillo testified recently suggesting that the White Paper might have been available on the

6    Cisco website "in late ████████," *id.* Ex. 16 at 31:10-17, he expressly qualified his testimony

7    as being based on a prior deposition.  *Id.*  In that prior deposition taken years ago and with the

8    benefit of documentary evidence, he admitted that the earliest date the White Paper would have

9    been available on Cisco's public website was ████████.  *Id.* Ex. 17 at 13:12-14:4.

10   **III.    LEGAL STANDARDS**

11   Under Federal Rule of Civil Procedure 56, a court may grant a motion for summary

12   judgment, if the pleadings and materials demonstrate that there is "no genuine issue as to any

13   material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v.*

14   *Catrett*, 477 U.S. 317, 323 (1986).  In order to prevail, a party moving for summary judgment

15   must show the absence of a genuine issue of material fact with respect to an essential element of

16   the non-moving party's claim. *Id.*  "Once the movant has made this showing, the burden then

17   shifts to the party opposing summary judgment to designate specific facts showing there is a

18   genuine issue for trial." *Id.* at 324.  To survive a motion for summary judgment, the nonmovant

19   must show that there are genuine factual issues that can only be resolved by the trier of fact.

20   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The nonmoving party may not rely

21   on the pleadings but must present specific facts creating a genuine issue of material fact. *T.W.*

22   *Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

23   Patents are presumed valid.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242

24   (2011).  Therefore, "[o]ne attacking the validity of a patent must present clear and convincing

25   evidence establishing facts that lead to the legal conclusion of invalidity." *Apple Computer, Inc.*

26   *v. Articulate Sys., Inc.*, 234 F.3d 14, 26 (Fed. Cir.  2000); *accord Takeda Chem. Indus., Inc. v.*

27   *Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007) (affirming finding that defendant

28   had not proved obviousness by clear and convincing evidence).  At summary judgment, "a

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

9                          MSJ RE AFF. DEFENSE OF INVALIDITY
                           CASE NO. 5:13-CV-02024 RMW

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

moving party seeking to have a patent held not invalid must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Laboratories, Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001).

A claimed invention must be novel. Thus, a patent claim is invalid as anticipated under Section 102(a), if "the invention was known or used by others in this country, or patented or described in a printed publication . . . before the invention thereof by the applicant for a patent." 35 U.S.C. § 102(a). "For prior art to anticipate under 35 U.S.C. § 102(a) because it is 'known,' the knowledge must be publicly accessible. . . . For prior art to anticipate because it has been "used," the use must be accessible to the public." *Minn. Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). Under Section 102(b), a patent claim is invalid as anticipated if "the invention was patented or described in a *printed publication* . . . or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (emphasis added). Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharmas.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003).

Pursuant to 35 U.S.C. § 103, patent claims are invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

"Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1217 (Fed. Cir. 2002). The purpose of "this requirement is to prevent fraud, namely to 'provide[] an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the events of the past through their testimony.'" *Martek Biosciences Corp. v. Nutrinova,* 579 F.3d 1363, 1374-75 (Fed. Cir. 2009) (internal citation omitted). Corroboration is required whether the witness claims to be a prior inventor under §102(g) or a prior user under §102(a) or (b). *Id.* at 1375 n.4.

1    "[A]n inventor's testimony respecting facts surrounding a claim of . . . priority of invention

2    cannot, standing alone, rise to the level of clear and convincing proof. . . . [A] witness's

3    uncorroborated testimony is equally suspect as clear and convincing evidence if he testifies

4    concerning the use of the invention in public before invention by the patentee (§102(a)), use of

5    the invention in public one year before the patentee filed his patent (§102(b)), or invention before

6    the patentee (§102(g))." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir.

7    1999) (internal quotation marks and citations omitted).

8    **IV.    ARGUMENT**

9       A.    **The Court Should Grant Partial Summary Judgment Dismissing Abandoned
10             Prior Art References Previously Cited in F5's Infringement Contentions**

11          Radware moves for partial summary judgment on twenty-six alleged anticipatory

12    references and nine alleged obviousness combinations.  F5 ultimately bears the high burden of

13    demonstrating invalidity by clear and convincing evidence and, to survive summary judgment, it

14    must identify with reasonable particularity evidence that precludes summary judgment.

15    *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1343648,

16    at *11 (N.D. Cal. May 16, 2006).  F5 cannot carry its burden because its own expert, Dr.

17    Alexander, has failed to offer any opinions based on these alleged prior art references.  Absent

18    any evidence in support of F5's claim of invalidity with respect to the abandoned prior art, the

19    court should grant summary judgment that these abandoned prior art references do not invalidate

20    the asserted patents.  *See, e.g., Hilgraeve v. Symantec Corp.*, 271 F. Supp. 2d 964, 972 n.3 (E.D.

21    Mich. 2003) (granting plaintiff summary judgment with respect to eight prior art references as to

22    which defendant had "abandoned the defense of anticipation under 35 U.S.C. § 102").

23          In its Invalidity Contentions, F5 claimed that at least thirty-five purported prior art

24    references invalidate the asserted patents.  *See* Yellin Decl. ¶¶ 9-10, Exs. 8, 9.  The only evidence

25    upon which F5 can rely upon in support of its invalidity claim – which it must prove by clear and

26    convincing evidence – is the anticipated testimony of Dr. Alexander, which will be limited to the

27    opinions expressed in his report.  *See id.* Ex. 6; Fed. Rule Civ. Pr. 26(a)(2)(B) (limiting expert

28    testimony to all opinions and underlying bases to be set forth in his/her expert disclosure).  But

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1  Dr. Alexander does not rely upon or offer any invalidity opinion as to twenty-six of the references

2  F5 claims anticipate the Asserted Patents and nine of the combinations F5 claims render the

3  asserted claims obvious. *Id.* Specifically, Dr. Alexander does not offer any opinion regarding the

4  following references and combinations:

| Unsupported § 102 Anticipating References | Unsupported § 103 Obviousness Combinations |
|---|---|
| 1.  U.S. Patent 5,884,038 ("Kapoor")<br>2.  U.S. Patent 6,119,170 (Schoffelman)<br>3.  U.S. Patent 5,898,830 ("Wesinger")<br>4.  U.S. Patent 6,185,619 ("Joffe")<br>5.  U.S. Patent 6,304,913 ("Rune")<br>6.  U.S. Patent 6,449,647 ("Colby")<br>7.  U.S. Patent 6,480,508 ("Mwikalo")<br>8.  U.S. Patent 6,735,631 ("Oehrke")<br>9.  U.S. Patent 6,687,731 ("Kavak")<br>10. U.S. Patent 5,317,566 ("Joshi")<br>11. U.S. Patent 6,542,468 ("Hatakeyama")<br>12. Internet Routing Architectures ("Halabi")<br>13. "The Ins and Outs of Layer 4+ Switching" ("Alteon")<br>14. IP Network Address Translator (NAT) Terminology and Considerations, IETF Internet Draft draft-ietf-natterminology-01.txt ("RFC 2663 Draft")<br>15. WinRoute Pro 3.0 User's Manual ("WinRoute")<br>16. WinRoute Pro 3.0-4.0 (system)<br>17. Internet QoS: A Big Picture ("Xiao")<br>18. Pricing in computer networks: reshaping the research agenda ("Shenker")<br>19. QoS Routing Mechanisms and OSPF Extensions, IETF Internet-Draft draftguerin-qos-routing-ospf-00.txt ("QoS Routing Mechanisms")<br>20. Dynamic Server Selection using Bandwidth Probing in Wide-Area Networks ("Carter")<br>21. Application-Layer Anycasting ("Bhattacharjee")<br>22. Multi-homing Support in IPv6, IETF Internet-Draft draft-shand-ipv6-multihoming- | 1.  Oehrke in combination with QoS Routing Mechanisms and Guerin.<br>2.  Joffe in combination with QoS Routing Mechanisms and Guerin.<br>3.  Berkowitz in combination with Halabi and QoS Routing Mechanisms.<br>4.  Akkiraju in combination with Halabi and QoS Routing Mechanisms.<br>5.  Cisco WP in combination with Halabi and QoS Routing Mechanisms.<br>6.  WinRoute in combination with QoS Routing Mechanisms and Guerin.<br>7.  Yamamoto in combination with QoS Routing Mechanisms, Guerin, Akkiraju, and Cisco WP.<br>8.  Kapoor in combination with QoS Routing Mechanisms and Guerin.<br>9.  Kavak in combination with QoS Routing Mechanisms and Guerin. |

McDermott Will & Emery LLP<br>Attorneys At Law<br>Menlo Park

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

| Unsupported § 102 Anticipating References | Unsupported § 103 Obviousness Combinations |
|---|---|
| 00.txt ("Shand") | |
| 23. Multi-homed Sites in the IPv6 Environment ("Yamamoto") | |
| 24. A Solution to Redundant, Load Balanced Firewall Systems ("Varma") | |
| 25. LIRA: An Approach for Service Differentiation in the Internet ("Stoica") | |
| 26. Scalable Support for Multi-homed Multi-provider Connectivity, IETF RFC 2260 ("RFC 2260") | |

*See generally* Yellin Decl. Ex. 6.

F5's claims of invalidity based on the references and combinations identified above are thus unsupported by evidence.  In particular, F5 has no evidence that any of the above-listed references discloses each and every limitation of either of the Asserted Patents and, therefore, summary judgment of no anticipation is appropriate.  *Fresenius,* 2006 WL 1343648, at \*20-21 (granting summary judgment of no anticipation as to prior art reference that failed to meet each limitation of an asserted claim).  Similarly, there is no evidence that the hypothetical combinations of prior art references identified above would have rendered obvious to a person of ordinary skill in the art the subject matter of the Asserted Patents at the time the invention was made; therefore, summary judgment of non-obviousness is appropriate as well.  *Id.* at \*23-\*25 (granting summary judgment of non-obviousness as to prior art reference not included in expert's invalidity report).

Despite this failure of evidence, F5 has thus far refused to stipulate that it will not rely on the abandoned prior art references, thereby leaving Radware no choice but to move for summary judgment as to these references.  *See* Yellin Decl. ¶¶ 11-12, Exs. 10, 11.  Because F5 cannot point to any evidence in support of its claim that the abandoned references and combinations invalidate the asserted patents, Radware is entitled to partial summary judgment that the unsupported references do not invalidate the asserted patents.

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**B.    The Court Should Grant Partial Summary Judgment As To The Non-Prior Art Test-Bed Systems**

Radware is also entitled to partial summary judgment that the Cisco DD System and the F5 BIG-IP System (collectively, the "Test-Bed Systems") do not anticipate or render the asserted claims obvious as a matter of law.  As an initial matter, the Test-Bed Systems *did not exist as configured* before the priority date of the patents.  Indeed, F5's expert and F5 employees created the Test-Bed Systems after litigation had commenced and over a decade after the priority date of the patents by using components that *did not exist* as of the priority dates of the patents.  Further, such Test-Bed Systems were not known or used to practice link load balancing – the subject matter of the Asserted Patents – before the priority date of the Patents.  F5's Test-Bed Systems are not prior art as a matter of law.

**1.    Components Of The Test-Bed Systems Post-Date The Priority Date Of The Patents**

F5 presents the Test-Bed Systems as alleged anticipatory art, even though it concedes that hardware and software components of those systems did not even exist before the priority date of the patents.  To show anticipation, a party must show that the invention was disclosed in a single patent or printed publication, or that the invention was known, used, in public use, or on sale.  35 U.S.C. § 102(a), (b); *see also Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989) (anticipation requires that the "identical invention," including all limitations, be described in a single prior art reference.).  A "post-hoc, reconstructed interpretation" of how a system "*might* have been constructed" is not prior art. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2012 U.S. Dist. LEXIS 92314, at *14-15 (N.D. Cal. July 3, 2012) (Koh, J.) (emphasis in original).  Accordingly, F5's Test-Bed Systems *cannot* be prior art because multiple components of the Test-Bed Systems did not exist in 1999.

Regarding the F5 BIG-IP System, three components of that system were dated well after the priority date of the patents.  First, the files within the 3DNS server were either created or modified in November 2014, approximately fifteen years after the 1999 priority date of the Asserted Patents.  Rubin Decl. Ex. 1 at ¶ 73.  Second, certain files in the BIG/ip servers were

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

created or modified in November 2014, not in 1999 or before.  *Id.* at ¶ 74.  Finally, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Yellin Decl. Ex. 7 at

81:22-83:3.



████████████████████████████████████████████. Rubin Decl. Ex.

1 at ¶ 96; Yellin Decl. Ex. 7 at 119:3-23. ████████████████████████

████████████████████████████████████████. Yellin

Decl. Ex. 7 at 69:8-70:16.

 Absent evidence that all software and hardware components of the Test-Bed Systems

existed before the priority date of the patents, such Test-Bed Systems do not constitute prior art as

a matter of law.  *Apple*, 2012 U.S. Dist. LEXIS 92314, at *14-15.  As a result, such Test-Bed

Systems cannot anticipate the claims of the Asserted Patents or render them obvious in

combination with other references.

  **2.**   **Test-Bed Systems Were Not Publicly Known Or Used For Link Load Balancing**

 The Test-Bed Systems also fail as prior art for the additional reason that, as of the priority

date of the Patents, no one knew that the Test-Bed Systems could practice link load balancing and

no one used the Test-Bed Systems to practice link load balancing.  To show anticipation, a party

must show that the invention was disclosed in a single patent or printed publication, or that the

invention was known, used, and in public use, or on sale. 35 U.S.C. § 102(a), (b).  By relying on

specifically configured systems as prior art, F5 must prove that each system (1) was known, used,

or on sale, and (2) contains every element of the asserted claims.  For anticipation, it is not

sufficient to show what could have been done, or could have been known by one skilled in the art

at the time of the invention.  Instead, F5 must show that the claimed invention was, in fact,

***actually known or used***.  35 U.S.C. § 102(a) and (b); *Minnesota Min.  Mfg. v. Chemque, Inc.*, 303

F.3d at 1306-07 ("both [§ 102(a) and (b)] require actual use by someone at some point");

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

*Continental Can Co.USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed. Cir. 1991)

("[a]nticipation under § 102(a) requires that the identical invention that is claimed was previously

known to others and thus is not new."); *see also Netscape Commc'ns Corp. v. Konrad*, 295 F.3d

1315, 1321 (Fed. Cir. 2002) (public use under 35 U.S.C. § 102(b) includes any use of the claimed

invention by a person other than the inventor who is under no limitation, restriction or obligation

of secrecy to the inventor); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371

(Fed. Cir. 1998) ("[W]hen an asserted prior use is not that of the applicant, § 102(b) is not a bar

when that prior use or knowledge is not available to the public."); *Carella v. Starlight Archery*

*and Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986) (holding that §102(a)'s command "known

or used by others in this country" "means knowledge or use which is accessible to the public.")

F5 has no evidence of such actual use or knowledge and, thus, cannot show anticipation.

As to the Cisco DD System, F5 does not and has not presented evidence either that: (1) F5

adapted, tested, or released the Cisco DD System for link load balancing by the relevant date; (2)

anyone knew that the Cisco DD System could have practiced link load balancing by the relevant

date; or (3) that anyone did use the Cisco DD System to practice link load balancing by the

relevant date.  In fact, Dr. Alexander ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████  Yellin Decl. Ex. 7 [Alexander Depo.] at 70:24-71:10 (emphasis

added).  Such testimony makes clear that, as of the relevant date, the Cisco DD System (1) *did*

*not* practice link load balancing; (2) was *not known* to practice link load balancing; and (3) was

*not used* by anyone to practice link load balancing.

Similarly, F5 failed to present evidence that the BIG-IP System was known or used to

practice link load balancing as of the relevant date.  F5's expert plainly states that he's ██████

████████████████████████████████████████████████████████████████████

███████████████████████████  *Id.* at 99:24-100:4 (emphasis added); *see also id.* at

100:25-101:4.

As discussed above, a "reconstructed interpretation of how [Test-Bed Systems] *might*

have been constructed does not constitute prior art for purposes of anticipation."  *Apple*, 2012

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   U.S. Dist. LEXIS 92314, at *14-15.  Further, such Test-Bed Systems are also not prior art as a

2   matter of law because they were not known or used to practice link load balancing as of the

3   priority date.  *Minnesota Min. & Mfg. Co.*, 303 F.3d at 1307.  Because F5 failed to prove that

4   such Test-Bed Systems were known or used to practice link load balancing by the relevant date,

5   the BIG-IP System cannot anticipate the '319 or '374 Patents.

6   **C.** **The Court Should Grant Partial Summary Judgment As To The References**
       **Which F5 Has Failed To Demonstrate Were Published Prior to the**
7       **Conception of the Patents-In-Suit**

8       **1.** **The Maki-Kullas Patent ("'621 Patent") Is Not Prior Art**

9       F5 asserts that Claims 24-28 of the '319 Patent and one or more claims of the '374 Patent[2]

10  are invalid, as anticipated under 35 U.S.C. § 102 by, *inter alia*, U.S. Patent No. 6,650,621

11  ("Maki-Kullas").  *See* Yellin Decl., Ex. 8 at 19, 30; Ex. 6 at 162-63; Ex. 18 ['621 Patent] at F5N-

12  PA_0000157.  However, F5's invalidity challenge must fail, because there is no genuine issue of

13  material fact that the Maki-Kullas patent is not prior art.

14      The Maki-Kullas patent application, called "Load Balancing Routing Algorithm Based

15  upon Predefined Criteria," was filed on October 5, 1999.  Yellin Decl., Ex. 6 at ¶¶ 375-376; Ex. 7

16  at 160:15-25.  Further, F5's expert, Dr. Alexander, conceded that the Maki-Kullas patent is

17  Section 102(e) art and not entitled to any earlier priority date than its ████████ filing date.

18  *See id.*, Ex. 6 at 163; Ex. 7 at 160:15-161:6.

19      This filing date precedes the December 20, 1999 priority date for the '319 (and '374)

20  Patents.  However, it is more than six months ***after*** the ████████ ***conception date*** for

21  Radware's '319 and '374 Patents.[3]  Rubin Decl. Ex. 1 at ¶ 39.  The person "who first conceives,

22  

23  [2] F5 contends that "[o]ne or more of the asserted claims of the '374 Patent are invalid as
    anticipated" by the Maki-Kullas Patent. *See* Yellin Decl., Ex. 8 at 30.  However, F5 has
24  abandoned this contention, because Dr. Alexander expresses no such opinion.  *See generally id.*,
    Ex. 6.  Radware thus moves for summary judgment that the Maki-Kullas Patent does not
25  anticipate the '374 Patent on the separate and independent basis that F5 has also abandoned this
    contention.
26  [3] The '319 Patent was filed on June 2, 2003, but it enjoys the filing date of December 20, 1999,
27  because the '319 patent is a division of application No. 09/467,763 (now Patent No. 6,665,702).
    *See* Dkt. 24 at Ex. B.  The '374 Patent was filed on August 3, 2012, but also enjoys the filing date
28  of December 20, 1999, because it is a continuation of the '319 Patent application filed on June 2,

17

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1   and, in a mental sense, first invents . . . may date his patentable invention back to the time of its

2   conception, if he connects the conception with its reduction to practice by reasonable diligence on

3   his part, so that they are substantially one continuous act." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d

4   1572, 1577 (Fed. Cir. 1996) (*quoting Christie v. Seybold*, 55 F. 69, 76 (6th Cir. 1893) (Taft, J.);

5   *accord Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993) (priority of invention goes to the

6   first party to reduce an invention to practice unless the other party can show that it was the first to

7   conceive the invention and that it exercised reasonable diligence in later reducing that invention

8   to practice).

9         Thus, Radware is entitled to a date of invention before the filing date of the '319 and '374

10   patents, if it can show (1) a prior conception date of ██████    and (2) diligent reduction to

11   practice from a date just prior to the other party's conception to its reduction to practice. *See*

12   *Golden Bridge Technology Inc., v. Apple, Inc.*, No. 5:12-cv-04882, 2014 WL 1928977 at *6

13   (N.D. Cal. May 14, 2014) (Grewal, J.); *Mahurkar*, 79 F.3d at 1577-78.  Therefore, Radware must

14   show conception prior to ██████    and diligent reduction to practice from ██████

15   to December 20, 1999.

16         Radware easily meets this test.  *First*, the evidence is undisputed that the invention

17   disclosed in the Asserted Patents was conceived at least as early as ██████.  Radware co-

18   inventor Roy Zisapel testified that he instructed co-inventor Smadar Fuks to ██████

19   ██████    An ██████ e-mail from Mr.

20   Zisapel to Ms. Fuks corroborates Mr. Zisapel's testimony.  *See* Yellin Decl., Ex. 2 at 438:2-

21   440:12, Ex. 3.  Radware co-inventor and CTO Mr. Peles testified that the date of conception for

22   the inventions claimed in the '319 and '374 patents was prior to ██████.  *See id.* Ex. 4 at

23   82:20-83:19.  Further, Radware's technical expert Prof. Rubin opined that he understood that the

24   inventors of the Asserted Patents had conceived the invention as early as ██████.  *See*

25   Rubin Decl. Ex. 1 at ¶ 39 (citing RadwareF5_0028269; RadwareF5_00004778 to

26   RadwareF5_00004780; RadwareF5_00011016).  *Second*, the invention was reduced to practice at

27

28   2003, which in turn is a division of application No. 09/467,763, filed on December 20, 1999.  *See*
     *id.* at Ex. C.

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   least as early as ███████████, when Radware issued a press release, announcing LinkProof as

2   the first IP load balancing solution for networks with multiple ISP connections.  *See* Yellin Decl.,

3   Ex. 5.  Both co-inventor Amir Peles and Prof. Rubin also testified that the invention was reduced

4   to practice at least as early as ███████████.  *See* Yellin Decl., Ex. 4 at 84:14-18; Rubin Decl.,

5   Ex. 1 at ¶ 40.  *Third,* Radware constructively reduced to practice its invention on December 20,

6   1999, the date on which it filed Application No. 09/467,763 (the '702 patent application).  *See*

7   Rubin Decl. Ex. 1 at ¶¶ 39-41; Yellin Decl. Ex. 6 at ¶¶ 52-54; MPEP § 2138.05 (9th ed. Mar.

8   2014).  *Fourth,* the deposition testimony of the inventors and various contemporaneous

9   documents amply corroborate Prof. Rubin's opinion that the Radware inventors worked diligently

10  from the date of conception of at least as early as ███████████ towards an actual reduction to

11  practice of the invention on December 20, 1999.  *See* Rubin Decl. Ex. 1 at ¶ 41; Yellin Decl. Exs.

12  19-26.  *Finally,* all of Radware's evidence above establishing the conception date and its diligent

13  reduction to practice of its invention is unrebutted:  F5's expert Dr. Alexander admitted that he

14  ████████████████████████████████████████████████████

15  ███████████████.  Yellin Decl., Ex. 7 at 33:10-17.

16          Given the above evidence, Radware has established that the date of its invention is ████

17  ████████████████████████████████████ date on which the Maki-Kullas

18  patent was filed.  Accordingly, F5 cannot meet its high burden of producing clear and convincing

19  evidence to overcome the presumption of validity of Radware's '319 and '374 patents.

20                  **2.      The Cisco Distributed Director White Paper Is Not Prior Art**

21          F5's laundry list of prior art documents also includes "Cisco DistributedDirector

22  Materials" (hereinafter "Cisco DistributedDirector White Paper" or "Cisco DistributedDirector

23  WP"), to support its position that the asserted claims of the '319 and '374 patents are invalid as

24  anticipated under 35 U.S.C. § 102 and/or obvious under § 103.  *See* Yellin Decl., Ex. 8 at 5:11-

25  18, 10:5, 20:14-15, 31:14.[4]  This is incorrect.  To the contrary, there is no clear and convincing

26  ─────────────────────

27  [4] F5's expert Dr. Alexander also relies on this Cisco DistributedDirector WP, in combination with
    other purported prior art (Akkiraju), as a basis for his opinion that claims 3-9, 11, 15-21, 24, 25
    and 27-30 of the '**319 patent** would have been rendered obvious under Section 103.  Alexander

28  also opines that unspecified claims of the '**374 patent** would have been rendered obvious under

19                                                              MSJ RE AFF. DEFENSE OF INVALIDITY
                                                                CASE NO. 5:13-CV-02024 RMW

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

evidence that the Cisco DistributedDirector White Paper was published before the ███████

conception date of the Asserted Patents.

Two versions of the Cisco DistributedDirector White Paper, with different purported

publication dates, have been produced in discovery.  The only version that is complete and has

been authenticated by its author, Cisco's Kevin Delgadillo, bears a "1999" copyright notice.

Yellin Decl., Ex. 16 at 30:19-31:17; Ex. 14.  While F5 elicited testimony from Mr. Delgadillo

suggesting that the white paper might have been available on the Cisco website "in late March

1999," *id*. Ex. 16 at 31:10-17, he expressly qualified his testimony as being based on a "previous

deposition."  *Id.*  In fact, in that deposition, taken years earlier and with the benefit of

documentary evidence, Mr. Delgadillo admitted that the earliest date the white paper would have

been available on Cisco's public website was ███████:

> A.     . . . My recollection – yes, so this, this at this time was standard Cisco policy –
>
> Q.     Okay.
>
> A.     -- that when the marketing team posted it to the web site they would put a time stamp on it.
>
> Q.     Okay.  And so that – the time stamp ██████, is the time stamp indicating that that was the time when it was posted on Cisco's external web site?
>
> A.     Correct.  This time stamp indicates when this particular version was posted to the web site.

Yellin Decl. Ex. 17 at 13:20-14:4.  Moreover, Mr. Delgadillo testified that the copyright

information on Cisco materials was not necessarily reliable, because the Cisco copyright date did

not always correspond to when the document was actually publicly available.  *Id*. Ex. 16 at 15:1-

9, 78:16-79:10.  Significantly, F5 failed to show Mr. Delgadillo either the relevant excerpts of his

---

35 U.S.C. § 103 by the combination of Cisco DistributedDirector WP and another reference,
Cisco White Paper, as well as by the combination of Cisco DistributedDirector WP and Akkiraju.
*See* Yellin Decl. Ex. 6 at ¶¶ 326, 352-355. *See also* Rubin Decl., Ex. 1 at ¶ 110 (after noting that
F5's expert Dr. Alexander relies on the Cisco DistributedDirector White Paper for his opinion
that the Radware Patents are invalid, Dr. Rubin opines that the White Paper and Delgadillo
deposition testimony "do not suggest or teach the invention disclosed in the Radware Patents").
The Court need not reach this issue if, as a threshold matter, it concludes that Radware is entitled
to summary judgment of no invalidity because the identified references do not qualify as prior art
under 35 U.S.C. § 102.

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1   prior sworn testimony or the exhibits used in the prior testimony that established the earliest

2   possible publication date as ████████. *Id.* Ex. 17 at 30:19-31:23. This is hardly surprising,

3   given that this publication date post-dates Radware's priority date of ████████, thereby

4   disqualifying the Cisco DistributedDirector White Paper as prior art.

5       F5 contends that the White Paper is Section 102(a) or 102(b) prior art. *See* Yellin Decl.

6   Ex. 8 at 5. To qualify as prior art under Section 102(a), the white paper would have to have been

7   published before ████████. To qualify as a "printed publication" under Section 102(b), the

8   white paper would have had to have been published before December 20, 1998 (i.e., one year

9   prior to the date of application for the Asserted Patents). In addition, uncorroborated oral

10  testimony is insufficient as a matter of law to clear the requisite "clear and convincing evidence"

11  hurdle which F5 must overcome. *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 738,

12  740-43 (Fed. Cir. 2002) (oral testimony of defendant's six witnesses was insufficient to prove

13  invalidity; district court erred in denying plaintiff's motion for JMOL on anticipation); *Finnigan*

14  *Corp. v. Int'l Trade Commission*, 180 F.3d 1354, 1366-68 (Fed. Cir. 2002) ("[u]ninterested

15  witnesses are also subject to the corroboration requirement" with respect to mere testimony

16  concerning invalidating activities); *accord Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993)

17  ("an inventor's testimony, standing alone, is insufficient to prove conception – some form of

18  corroboration must be shown."). Significantly, "[w]hile there is no corroboration requirement for

19  expert testimony asserted to defend against a finding of invalidity by pointing to deficiencies in

20  the prior art, corroboration is generally required for testimony that is asserted to invalidate a

21  patent." *CNET Networks, Inc. v. Etilize Inc.,* 584 F. Supp. 2d 1260, 1272 (N.D. Cal. 2008) (J.

22  Patel) (genuine issues of material fact precluded summary judgment for defendant on invalidity)

23  (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004).

24      Here, F5 has pointed to no admissible, corroborating evidence that the Cisco

25  DistributedDirector White Paper was in fact published prior to the Radware Asserted Patents'

26  conception date of ████████. Critically, Mr. Delgadillo's testimony, taken in its entirety, at

27  best would support an ████████ publication date, which is insufficient as a matter of law to

28  satisfy F5's burden. *See Juicy Whip*, 292 F.3d at 742-43 (finding interested witnesses' testimony

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1  regarding prior art insufficient to overcome JMOL); *Finnigan Corp.,* 180 F.3d at 1367 (finding a

2  third party witness's uncorroborated testimony regarding invalidating prior art insufficient to

3  support a finding of anticipation).

4        Nor does the purported 1999 copyright notice date help F5: the copyright date citing an

5  entire year cannot prove by clear and convincing evidence that the Cisco DistributedDirector

6  White Paper was publicly accessible prior to ███████, one year before the earliest filing date

7  of the '319 and '374 Patents.  *See, e.g., CNET Networks*, 584 F. Supp. 2d at 1273-74 (finding that

8  a 2001 copyright date does not prove that the claimed prior art of a user guide was publicly

9  accessible prior to April 10, 2001, one year before the earliest filing date of the asserted patent);

10  *Hilgraeve, Inc.* , 271 F. Supp. 2d at 974-75 (granting plaintiff summary judgment on issue of

11  whether references which allegedly rendered patent invalid qualified as prior art; 1989 copyright

12  dates imprinted on documents offered by defense were hearsay or, at best, simply established the

13  date of copyright but, without more, were "insufficient as a matter of law" to establish "invalidity

14  by clear and convincing evidence that the documents  were known or used by others in this

15  country prior to February 1990.").

16        F5's expert, Dr. Alexander, on the other hand, offers no opinion as to the Cisco

17  DistributorDirector White Paper that Mr. Delgadillo was deposed about.  Instead, he relies on the

18  ████████████████████████████████████, that appears to

19  contain some of the material in the Cisco DistributorDirector White Paper.  Yellin Decl. Ex. 6 at

20  ¶ 326; Ex. 15; Ex. 7 at 151:10-155:13.  Mr. Delgadillo's testimony, however, shows that the

21  Cisco DistributedDirector White Paper was certainly not published in 1997. *See id.* Ex. 16 at

22  30:25-32:23, Ex. 17 at 13:20-14:4.  Once again, F5 had the opportunity to question Mr.

23  Delgadillo about the alleged 1997 document during his deposition, but chose not to do so.  On

24  this record, there is simply no evidence that Cisco DistributedDirector White Paper was published

25  before the priority date of the Asserted Patents; therefore, summary judgment is appropriate.

26        The Court should grant summary judgment to Radware that both the 1999 and 1997

27  versions of the Cisco DistributedDirector White Paper are not prior art which anticipate or render

28  obvious the Asserted Patents.

MSJ RE AFF. DEFENSE OF INVALIDITY
CASE NO. 5:13-CV-02024 RMW

**V.**     <u>**CONCLUSION**</u>

      F5 cannot provide clear and convincing evidence that Radware's asserted '319 and '374 patents are invalid for the reasons discussed above.  There is no genuine issue of material fact that the evidence is insufficient as a matter of law to overcome the presumption of validity accorded to these Asserted Patents duly granted by the U.S. Patent and Trademark Office.  For all the foregoing reasons, Radware is entitled to judgment as a matter of law that the above-cited references do not constitute prior art for purposes of demonstrating invalidity of the Asserted Patents.

Dated: May 29, 2015               Respectfully submitted,

                                 McDERMOTT WILL & EMERY LLP

                                 By:*/s/ Fabio E. Marino*
                                    Fabio E. Marino

DM_US 61626724-7.092004.0012

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK