# Redacted Version of Document Sought to be Sealed

1  Christopher Kao, Cal Bar No. 237716
   CKao@perkinscoie.com
2  PERKINS COIE LLP
   3150 Porter Drive
3  Palo Alto, CA 94304-1212
   Tel: 650-838-4300 / Fax: 650-838-4350
4

5  Ramsey M. Al-Salam, Cal Bar No. 109506
   RAlsalam@perkinscoie.com
6  Nathaniel E. Durrance, Cal Bar No. 229210
   NDurrance@perkinscoie.com
7  Stevan R. Stark (*Admitted Pro Hac Vice*)
   SStark@perkinscoie.com
8  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
9  Seattle, WA 98101-3099
   Tel: 206-359-8000 / Fax: 206-359-9000
10

11 Daniel T. Keese, Cal Bar No. 280683
   DKeese@perkinscoie.com
12 PERKINS COIE LLP
   1120 NW Couch Street, Tenth Floor
13 Portland, OR 97209-4128
   Tel: 503-727-2000 / Fax: 503-727-2222
14

15 Attorneys for Defendant/Counterclaim-Plaintiff
   F5 Networks, Inc.

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18                   SAN JOSE DIVISION

19

20 RADWARE, LTD., and RADWARE, INC.,

21        Plaintiffs and Counterclaim
          Defendants,
22
      v.
23
   F5 NETWORKS, INC.,
24
          Defendant and Counterclaim
25        Plaintiff.

26

27

| Case No. 5:13-cv-02024-RMW |
| (Related Case No. C-13-02021-RMW) |

**DEFENDANT F5 NETWORKS, INC.'S RESPONSE TO PLAINTIFF RADWARE'S PARTIAL MOTION FOR SUMMARY JUDGMENT DISMISSING DEFENDANT F5'S INVALIDITY AFFIRMATIVE DEFENSE**

Date:     July 24, 2015
Time:     9:00 a.m.
Dept.:    Courtroom 6, 4th Floor
Judge:    Hon. Ronald M. Whyte

28

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ........................................................................................................... 1

4

II.     RADWARE'S MOTION SHOULD BE DENIED............................................................ 2

5

        A.      THERE ARE AT LEAST GENUINE ISSUES OF FACT AS TO
                WHETHER THE PATENTS ARE ENTITLED TO AN EARLIER
                PRIORITY DATE.................................................................................................. 2

6

7

                1.      Radware Has Not Sufficiently Corroborated ████████ as the
                        Date of Conception ................................................................................... 4

8

                2.      Radware Has Not Sufficiently Corroborated the Date It Reduced
                        its Inventions to Practice ........................................................................... 7

9

                3.      Radware Has Not Sufficiently Corroborated That It Diligently
                        Reduced the Inventions to Practice ........................................................... 9

10

                4.      Radware Has Not Established that Its Alleged Inventions Were
                        Before the Cisco DistributedDirector White Paper.................................. 11

11

                        a.      Cisco DistributedDirector White Paper (1999)............................ 11

12

                        b.      Cisco DistributedDirector White Paper (1997)............................ 14

13

                5.      Radware Has Not Established that Its Alleged Inventions Were
                        Before the Maki-Kullas Patent ................................................................ 14

14

        B.      RADWARE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
                THE DISTRIBUTEDDIRECTOR AND 3-DNS SYSTEMS.............................. 15

15

        C.      RADWARE IS NOT ENTITLED TO SUMMARY JUDGMENT ON
                THE PRIOR ART NOT DISCUSSED BY DR. ALEXANDER.......................... 18

16

III.    CONCLUSION .............................................................................................................. 18

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1

**TABLE OF AUTHORITIES**

2

Page

3

CASES

4

*Allergan Inc. v. Apotex Inc.*,
  754 F.3d 952 (Fed. Cir. 2014) .................................................................. 3, 6

5

6

*Brown v. Barbacid*,
  436 F.3d 1376 (Fed. Cir. 2006) ..................................................................... 4

7

*Burroughs Wellcome Co. v. Barr Lab., Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994) .............................................................. 3, 5, 6

8

9

*Coleman v. Dines*,
  754 F.2d 353 (Fed. Cir. 1985) ....................................................................... 3

10

*Cooper v. Goldfarb*,
  154 F.3d 1321 (Fed. Cir. 1998) ..................................................................... 4

11

12

*Eaton v. Evans*,
  204 F.3d 1094 (Fed. Cir. 2000) ..................................................................... 8

13

14

*Estee Lauder Inc. v. L'Oréal, S.A.*,
  129 F.3d 588 (Fed. Cir. 1997) ....................................................................... 4

15

*Gould v. Schawlow*,
  363 F.2d 908 (C.C.P.A. 1966) ...................................................................... 4

16

17

*In re Garner*,
  508 F.3d 1376 (Fed. Cir. 2007) ..................................................................... 8

18

19

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) ..................................................................... 6

20

21

*Mahurkar v. C.R. Bard, Inc.*,
  79 F.3d 1572 (Fed. Cir. 1996) ....................................................................... 9

22

*Medichem, S.A. v. Rolabo S.L.*,
  437 F.3d 1157 (Fed. Cir. 2006) ..................................................................... 3

23

24

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ................................................................ 2, 18

25

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002) ................................................................... 17

26

27

*Reese v. Hurst*,
  661 F.2d 1222 (C.C.P.A. 1981) ................................................................... 4

28

-ii-

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Shu-Hui Chen v. Bouchard,*
    347 F.3d 1299 (Fed. Cir. 2003) .......................................................................... 4, 11

5

6

*Spectralytics, Inc. v. Cordis Corp.,*
    576 F. Supp. 2d 1030 (D. Minn. 2008), *aff'd*, 649 F.3d 1336 (Fed. Cir. 2011) ...................... 2

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
    726 F.3d 1306 (Fed. Cir 2013) .......................................................................... 2, 3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

Plaintiffs ("Radware") have moved for "an order granting partial summary judgment against F5's second affirmative defense of invalidity . . . ."  Radware does not seek summary judgment on invalidity in general, but only with respect to the following issues:  (1) Radware asserts the "Maki-Kullas patent" and the "Cisco DistributedDirector White Papers" are not prior art because they post-date Radware's purported conception and diligent reduction to practice of the claimed inventions; (2) Radware asserts that the F5 BIG-IP and Cisco DistributedDirector "Test Beds" are not prior art because they utilize components that post-date the patents' priority date and/or were not known or used to practice the claims in the prior art; and (3) Radware asserts that it is entitled to summary judgment on prior art that was not expressly relied upon in the report of F5's technical expert, Dr. Alexander.

The motion should be denied in its entirety.  First, with respect to the Maki-Kullas patent and Cisco DistributedDirector White Papers, there are at least genuine issues of fact as to whether Radware has sufficiently corroborated its alleged dates of conception and reduction to practice.  In fact, as discussed below, Radware has insufficient corroboration as a matter of law for its claims of conception in ████████ .

Second, Radware's arguments concerning the test beds are misguided.  There is no dispute that F5's 3-DNS product and Cisco's DistributedDirector product were in the prior art.  There is overwhelming documentary and testimony evidence that they were sold and used in the prior art, and there is no contrary evidence.  The test beds are evidence that the prior art 3-DNS and DistributedDirector systems were capable of performing link load balancing.  All material components of the test beds are prior art components, and the test beds themselves establish that such prior art components could perform link load balancing.

Finally, Radware's arguments about prior art not cited in Dr. Alexander's report are also misguided.  F5 will not rely on any such art to establish, on its own, the invalidity of Radware's patents.  That said, Radware is not entitled to "summary judgment" with respect to such prior art simply because it is not separately discussed in Dr. Alexander's report.  Such prior art can still

be introduced through fact witnesses or other means, and can still be considered by the jury for its understanding of the state of the art, which is directly relevant to obviousness.  *See Meyer Intellectual Props. Ltd.  v. Bodum, Inc.*, 690 F.3d 1354, 1373 (Fed. Cir. 2012) ("[T]he district court still erred in using the [expert's] report to limit [defendant's] ability to present, through other witnesses at trial, prior art that was previously disclosed during discovery.").  This response is supported by the declaration of Stevan R. Stark to authenticate cited exhibits.

## II.    RADWARE'S MOTION SHOULD BE DENIED

### A.    THERE ARE AT LEAST GENUINE ISSUES OF FACT AS TO WHETHER THE PATENTS ARE ENTITLED TO AN EARLIER PRIORITY DATE

Radware seeks, in essence, summary judgment that it conceived and diligently reduced the claimed inventions to practice long before the December 20, 1999 filing date of the patent application.  In particular, Radware claims that it conceived of the claimed inventions by ███████████, and diligently reduced them to practice by ███████████.  Based on these claims, Radware seeks summary judgment that certain publications are not prior art.

Radware is not entitled to summary judgment, however, because it has not provided sufficient *independent corroboration* for its alleged dates of conception and reduction to practice, or even its alleged diligence in reducing the inventions to practice.  Indeed, F5 is entitled to summary judgment that Radware has not corroborated its alleged dates of conception and reduction to practice.  At the very least, there is a genuine issue of fact as to whether such corroboration is sufficient.

Although F5 has the burden of establishing invalidity, Radware has the burden of proving that it conceived and/or reduced to practice the alleged inventions before the filing date of the patent application.  *Taurus IP, LLC  v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir 2013) ("After an accused infringer has put forth a prima facie case of invalidity, the burden of production shifts to the patent owner to produce sufficient rebuttal evidence to prove entitlement to an earlier invention date.") (emphasis omitted); *Spectralytics, Inc.  v. Cordis Corp.*, 576 F. Supp. 2d 1030, 1045-46 (D. Minn. 2008), *aff'd*, 649 F.3d 1336 (Fed. Cir. 2011) ("The patentee must do more than offer *some* evidence (such as an affidavit) supporting his pre-

-2-

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1   patent application invention date; the patentee must offer *corroboration* of that invention date.")

2   (emphasis in original).

3         "Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Lab.,*

4   *Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994).  "The issue of the conception date of an invention is a

5   legal conclusion based on underlying factual findings." *Taurus IP*, 726 F.3d at 1322.

6   Conception is the "formation, in the mind of the inventor of a definite and permanent idea of the

7   complete and operative invention, as it is thereafter to be applied in practice . . . ." *Coleman v.*

8   *Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985) (emphasis omitted).  The inventor must have "a

9   specific, settled idea, a particular solution to the problem at hand, not just a general goal or

10  research plan he hopes to pursue." *Burroughs Wellcome*, 40 F.3d at 1228.

11  
12        It is settled that in establishing conception a party must show possession of
    every feature recited in the [claim], and that every limitation of the [claim]
13  must have been known to the inventor at the time of the alleged
    conception.

14  *Coleman*, 754 F.2d at 359.

15        Because it is mental act, courts require corroborating evidence of a
    contemporaneous disclosure that would enable one skilled in the art to
16  make the invention.

17  *Burroughs Wellcome*, 40 F.3d at 1228; *Allergan Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed.

18  Cir. 2014) (the "definite and permanent" idea required for conception "must be supported by

19  corroborating evidence").  Corroboration cannot be based on "the oral testimony of an inventor,

20  which we must treat with skepticism due to the possibility of an inventor's self-interest in

21  obtaining or maintaining an existing patent." *Allergan*, 754 F.3d at 968 (finding clear error in

22  district court's finding that documents corroborated claim of conception); *see also Medichem,*

23  *S.A. v. Rolabo S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006) ("One consequence of the

24  independence requirement is that testimony of one co-inventor cannot be used to help

25  corroborate the testimony of another.").

26        To demonstrate actual (as opposed to constructive) reduction to practice, a party must

27  show that the inventor (1) constructed an embodiment or performed a process that met all the

28

-3-

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1  limitations and (2) determined that the invention would work for its intended purpose.  *Estee*

2  *Lauder Inc.  v. L'Oréal, S.A.*, 129 F.3d 588, 592-95 (Fed. Cir. 1997) (holding that reduction to

3  practice does not occur until inventor knows embodiment will work for its intended purposes).

4  As with conception and diligence, reduction to practice must be sufficiently corroborated.

5  *Cooper  v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998) ("In order to establish an actual

6  reduction to practice, an inventor's testimony must be corroborated by independent evidence.").

7  Although the Federal Circuit has adopted a "rule of reason" approach to corroboration, that "has

8  not altered the requirement that evidence of corroboration must not depend solely on the

9  inventor himself."  *Cooper*, 154 F.3d at 1330 (quoting *Reese  v. Hurst*, 661 F.2d 1222, 1225

10  (C.C.P.A. 1981)).

11        Further, a corroborated conception of an invention constitutes a priority date for a patent

12  only when the inventor has, following conception, diligently reduced the invention to practice.

13  *Gould  v. Schawlow*, 363 F.2d 908, 916-18 (C.C.P.A. 1966) (finding insufficient evidence of

14  diligence from conception to reduction to practice).  As with conception and reduction to

15  practice, diligence must be corroborated.  "The basic inquiry is whether, on all of the evidence,

16  there was reasonably continuing activity to reduce the invention to practice."  *Brown v.*

17  *Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006); *see also Shu-Hui Chen v. Bouchard*, 347 F.3d

18  1299, 1311-12 (Fed. Cir. 2003) (inventor had provided "absolutely no evidence of who worked

19  on what applications on which days for any day in the critical period") (emphasis omitted).

20        Based on these principles, Radware is not entitled to summary judgment as to its dates of

21  conception, diligence or reduction to practice, because they are insufficiently corroborated.

22     **1.     Radware Has Not Sufficiently Corroborated ██████ as the Date of
       Conception**

23

24  Radware asserts that it conceived of the inventions by ██████.  Other than the

25  unsupported testimony of the inventors, Radware relies on a single three-line email from one of

26  the inventors, Mr. Zisapel, to another of the inventors, Mr. Fuks.  The complete content of this

27  email is provided below:

28

1

2

3

4

5

6

7

8

9

10   (Dkt. 189-04.)  This email is insufficient, as a matter of law, to corroborate Radware's claim of

11   conception on ████████.  Indeed, neither Radware nor its expert offers any analysis as to

12   how this email relates to any of the limitations of the asserted claims, let alone all of them.  On

13   its face, the email is related to ████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ██████████████████████████████████  Although the

16   alleged invention differs for each claim, the "inbound" claims require, at the least, responding to

17   a DNS query with an IP address corresponding to one of multiple ISPs connecting the local

18   network to the internet.  This is in both of the independent claims, for example, of the '374

19   patent (i.e., claims 1, 9).  Many other claims require choosing an ISP based on certain load

20   balancing metrics (e.g., proximity).  *See, e.g.,* '374 patent, claims 2, 3, 4, 5.  The email above

21   does not corroborate the conception of any of these functionalities.

22          With respect to the outbound claims (claims 28-32 of the '319 patent), the functionality

23   requires, at the very least, using costing as the basis for selecting an ISP, and translating a

24   source address to correspond to the chosen ISP.  Again, the email above does not corroborate

25   the conception of any of such functionality.  *See Burroughs Wellcome*, 40 F.3d 1223, 1228

26   (conception involves "a specific, settled idea, a particular solution to the problem at hand, not

27   just a general goal or research plan he hopes to pursue").

28

1    Indeed, Mr. Zisapel's testimony regarding this email undermines Radware's arguments.

2    (*See, e.g.*, Dkt. 189-03 at 439:19-440:12 (emphasis added).)  Mr. Zisapel never testified that the

3    email proves that he had conceived of the complete invention as of that date.  In fact, he testified

4    ████████████████████████████████████████████████████████████████████████████

5    ████  (*Id.*)

6    Similarly, the testimony of the other inventor—Mr. Peles—also undermines Radware's

7    claim that the inventions were conceived by ██████████.  Mr. Peles only testified that ███

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████ (*See* Dkt. 189-05 at 83:2-5.)  His testimony is

10   apparently based on ██████████████████████████████████.  *Id.*  But again,

11   Radware, and its expert, fail to identify this written proof or explain how it relates to the claimed

12   limitations or supports a date of ██████████ for its conception.  Thus, Mr. Peles' testimony

13   offers nothing to corroborate conception by ██████████.  *See, e.g.*, *Allergan*, 754 F.3d at 968

14   (uncorroborated inventor testimony must be treated "with skepticism due to the possibility of an

15   inventor's self-interest in obtaining or maintaining an existing patent").

16   Moreover, Radware's expert's opinion does not provide any independent evidence as to

17   the date of conception.  Dr. Rubin, who does not even explain his understanding as to

18   conception, simply makes the conclusory statement that he "reviewed the inventor testimony

19   and various documents cited and referenced in the depositions" to reach his conclusions

20   regarding conception.  (Dkt. 189-29 at ¶ 39.  The courts have routinely rejected the sufficiency

21   of such "expert evidence."  *See, e.g.*, *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052,

22   1068 (Fed. Cir. 2005) ("The declaration from Clontech's expert … gives the Court no

23   substantive factual guidance.  [The expert] states, 'based on my review, … [i]t is clear from [the

24   inventor's] testimony and his lab records that he conceived of the invention in 1984.' . But such

25   wholly conclusory assertions on a legal issue cannot carry Clontech's burden on summary

26   judgment.").

27

28

-6-

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

Thus, for all these reasons, Radware cannot establish ████████ as the date of conception for the claims of the patents.

### 2. Radware Has Not Sufficiently Corroborated the Date It Reduced its Inventions to Practice

The purported inventions were *constructively* reduced to practice as of December 20, 1999, the date the underlying patent application was filed. Radware asserts, however, that it *actually* reduced its purported invention to practice by ████████. As alleged corroboration, Radware has provided a Radware press release "on or about" ████████, uncorroborated testimony of one of its inventors, and conclusory testimony of its technical expert. Again, this evidence is insufficient, as a matter of law, to corroborate the reduction to practice of all of the inventions claimed in the '319 and '374 patents. At the very least, a reasonable juror could easily conclude that the purported invention was not actually reduced to practice on ████████.

Radware cites to a single press release that it purports was released "on or about" ████████, as evidence of its reduction to practice. (Dkt. 189 at 3:1; *see also*, *e.g.*, Dkt. 189-06.) First, Radware's motion does not state with certainty when the press release was actually issued—saying it was released "on or about"—and provides no evidence corroborating when it was released, if at all. Second, the press release makes no mention that an embodiment of all the claimed inventions had been created. At most, it simply indicates that a product will be shipped in the future: "LinkProof will begin shipping in Q4 1999." (*See* Dkt. 189-06.) This suggests, if anything, that Radware was still working on the product. Such advertising copy, alone, does not demonstrate that a prototype or product encompassing all the asserted claims of the patents was constructed and operated adequately. Again, this vague press release is insufficient, as a matter of law, to corroborate the alleged reduction to practice.

Radware also offers the following uncorroborated assertion of one of the named inventors, Mr. Peles:

██ ████████████████████████████████

[REDACTED]

(Dkt. 189-05 at 84:14-18.)  Again, Mr. Peles is simply referring to [REDACTED]

[REDACTED]"  Announcing the coming of a product is not corroboration that a product

encompassing all of the claimed inventions had already been reduced to practice.  *See Eaton v.*

*Evans*, 204 F.3d 1094, 1097 (Fed. Cir. 2000) ("[T]here can be no actual reduction to practice if

the constructed embodiment or performed process lacks an element … or uses an equivalent of

that element.").  Indeed, even if a product had been pictured, this would be insufficient to

establish reduction to practice.  *See In re Garner*, 508 F.3d 1376, 1381 (Fed. Cir. 2007) ("At

most the Fondon declaration corroborates the existence of a device purportedly shown in the

photographs.…  [C]orroboration of the existence of the device is not sufficient in this case to

establish corroboration of reduction to practice.  It is also necessary to corroborate that the

device worked for its intended purpose.").

Radware's expert's opinion also fails to provide any independent corroboration.  Instead,

Dr. Rubin once again offers an unsupported conclusion that based on evidence he reviewed,

including the press release and Mr. Peles testimony, he understands that actual reduction to

practice occurred by [REDACTED].  Dr. Rubin's complete opinion regarding actual reduction

to practice is found in paragraph 40 of his report, reproduced below:

> Similarly, in reviewing inventory [sic] testimony, documents, and
> Radware's infringement contentions, I understand that Radware reduced to
> practice its invention at least as early as [REDACTED]. I base my
> opinion on the fact that Radware issued a press release highlighting the
> invention. *See* RadwareF5_00004758.  To confirm, Radware inventor
> Amir Peles (also the 30(b)(6) corporate witness on the topic of reduction to
> practice) testified to the same.  *See* Peles Depo. Tr. at 84:14-23; *see also*
> RadwareF5_00004646; RadwareF5_00004686; RadwareF5_00004758;
> RadwareF5_00009610.

(Dkt. 189-29 at ¶ 40.)  As can be seen, Dr. Rubin provides no analysis to explain how any of the

evidence supports reduction to practice on that date.  He does not describe the scope or meaning

of any of the documents or how they relate to any of the elements of the asserted claims, let

1  alone all the limitations, or how they demonstrate that a prototype or product was actually

2  constructed and operated.

3        Radware has thus failed to sufficiently corroborate the actual reduction to practice of the

4  inventions claimed in the patents.

5        **3.    Radware Has Not Sufficiently Corroborated That It Diligently Reduced the
               Inventions to Practice**

6

7        Further, as Radware concedes, a conception date creates priority only if the inventor

8  "'connects the conception with its reduction to practice by reasonable diligence on his part, so

   that there is substantially one continuous act.'"  (Dkt. 189 at 18:2-3 (quoting *Mahurkar  v.  C.R.*

9  *Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996)).)  Radware has not only failed to adequately

10  corroborate either conception or actual reduction to practice, it has also not corroborated that it

11  engaged in continuous diligence from its conception date to its reduction to practice (whatever

12  those dates might be).  Radware's entire argument regarding diligence is as follows: "the

13  deposition testimony of the inventors and various contemporaneous documents amply

14  corroborate Prof. Rubin's opinion that the Radware inventors worked diligently from the date of

15  conception of at least as early as ███████████ towards an actual reduction to practice of the

16  invention on December 20, 1999.  *See* Rubin Decl., Ex. 1 at ¶ 41; Yellin Decl., Exs. 19-26."

17  (*Id.* at 19:8-12.)

18        Dr. Rubin's testimony is conclusory and unhelpful, as are all of his priority "opinions."

19  His entire opinion regarding diligence, found in paragraph 41 of his  report, is as follows:

20

21            Lastly, it is my opinion that the inventors of the Radware Patents invested
              considerable efforts (from the date of conception) to work diligently
22            towards an actual reduction to practice of the invention. This is clearly
              evident from testimony of the inventors as well as the various documents
23            that I reviewed.  For example, see RadwareF5_00004652;
              RadwareF5_00004656; RadwareF5_00004740; RadwareF5_00004749;
24            RadwareF5_00004782; RadwareF5_00004785; RadwareF5_00004786;
              RadwareF5_00004790.
25

26  (Dkt. 189-29 at ¶ 41.)  Dr. Rubin does not even set forth his understanding of the meaning of

27  "diligence" in this context.  Accordingly, it is impossible to know whether he even applied the

28  correct legal standards.  Further, Dr. Rubin does not identify the testimony he purportedly relies

1   on and does not explain what the inventors were doing as part of their "considerable efforts."

2   He simply cites to "various" documents and concludes that diligence is "clearly evident."  Yet,

3   he fails to address the scope of any of the documents, how they relate to the claims, how they

4   relate to efforts to reduce the invention to practice, or any date(s) to which they apply.

5         The eight documents cited (Yellin Decl., Exs. 19-26 (Dkt. 189-20 to 189-27)) are also

6   insufficient to establish corroboration of continuing diligence from the time of conception to the

7   time of reduction to practice.  Radware does not explain why these documents are relevant, how

8   they show diligence, or even any evidence about any date(s) they apply (other than to broadly

9   assert that they show diligence from ███████████ to December, 20, 1999).  Of these

10  documents, Yellin Decl. exhibits 20, 23 and 25 appear to be revisions to the same document,

11  and Yellin Decl. exhibits 21 and 22 appear to be the same exact document with slightly different

12  formatting.  Radware does not establish when the documents were written, by whom, or how, if

13  at all, they relate to the patents claims or activities of Radware during the alleged diligence

14  period.

15        Moreover, even if one were to assume, for the sake of argument, that the dates appearing

16  in the documents showed that Radware was working on its purported invention, they still fail to

17  account for the entire diligence period from the alleged ███████████ conception to the

18  December 20, 1999 filing date of the patents.  For example Yellin Decl. Ex. 19 has a ████████

19  ████████████████████; Yellin Decl. Ex. 20 has ██████████████████████████

20  ████████████████; Yellin Decl. Exs. 21 and 22 are dated ████████████████; Yellin Decl. Ex. 23

21  has a ██████████████████████; Yellin Decl. Ex. 24 is dated ████████████; Yellin Decl.

22  Ex. 25 has ██████████████████████████; and Yellin Decl. Ex. 26 is dated ████████████

23  ████.  On the bases of these assumed dates alone, these documents still fail to account for any

24  diligence during the following long periods:  April 1st to June 2nd; June 14th to August 19th;

25  August 22nd to October 10th; and October 15th to December 20th.  Thus, even with the

26  assumption that these documents indicate work on the purported invention at the time of the

27  indicated dates, taken in a light most favorable to F5, Radware fails to provide any evidence to

28

1    account for any diligence during several months of the purported diligence period. *Cf. Shu-Hui*

2    *Chen v. Bouchard*, 347 F.3d 1299, 1311 (Fed. Cir. 2003) (inventor had provided "absolutely *no*

3    evidence of who worked on what applications on which days for *any* day in the critical period").

### 4.    Radware Has Not Established that Its Alleged Inventions Were Before the Cisco DistributedDirector White Paper

Because Radware is not entitled to summary judgment as to any specific dates of

conception or reduction to practice, it is not entitled to summary judgment that the Cisco White

Papers are not prior art.  There is substantial evidence that would allow a fact finder to

reasonably conclude that the Cisco DistributedDirector White Papers were published prior to the

alleged inventions, and thus summary judgment should be denied.

### a.    Cisco DistributedDirector White Paper (1999)

Radware asserts that Cisco DistributedDirector White Paper (1999) (Dkt. 189-15) is not

prior art.  In particular, Radware disputes that the 1999 White Paper was published before ████

████.  As is discussed above, however, the ████████ date is not the proper date to apply.

Because Radware has not sufficiently corroborated any alleged conception, reduction to

practice, or diligence, the proper date is December 20, 1999, the date the applications were filed.

Even assuming, for the sake of argument, that there was sufficient corroboration for the ████

date, there is still at least a genuine issue of fact as to whether the Cisco White Paper was

published before then.  In particular, there is evidence indicating that the 1999 White Paper was

published in March of that year, and Cisco's representative, who is within the subpoena power

of the Court, is anticipated to testify to such at trial.

First, the White Paper bears a copyright date of 1999 on bottom of every page.  (*See*

*generally* Dkt. 189-15)  In addition, the last page of this document bears the date "3/99," as

shown below:

(*See Id.* at 20 (circled).)

As Radware acknowledges, Cisco's witness, Mr. Delgadillo, testified in a deposition taken in this case that the 1999 White Paper was publicly available on Cisco's website in March 1999. (*See* Dkt. 189 at 20:4-9.)[1]  Mr. Delgadillo is an employee of Cisco Systems, Inc., a non-party to this litigation. (Stark Decl. Ex. 1, Delgadillo Dep. at 10:10-11:8.)  He was produced by Cisco as a 30(b)(6) witness to authenticate certain documents produced by Cisco in response to a third-party subpoena from F5, including the disputed 1999 White Paper. (*Id.* at 10:10-11:8 and 30:19-31:17; Stark Decl.Ex. 3, Delgadillo Dep. Ex. 1).  Mr. Delgadillo is also the author of the DistributedDirector White Papers. (*See, e.g.*, Stark Decl. Ex. 1 at 30:19-31:17; *see also* Dkt. 189-15 and 189-16.)

---

[1] Radware implies that Mr. Delgadillo did not have "the benefit of documentary evidence" when he testified to the publication date of the 1999 White Paper, but this is incorrect.  Mr. Delgadillo had the 1999 White Paper (it is Exhibit 6 to his deposition), and he testified that he was "very familiar with this version" of the 1999 White Paper. (Stark Decl. Ex. 1 at 30:19-31:17; Stark Decl. Ex. 2, Degadillo Dep. Ex 6.)  Furthermore, Mr. Delgadillo had a copy of his previous deposition testimony from the other litigation that Radware relies on (Exhibit 3 to his deposition), and which he refers to in his deposition in this case when discussing the publication date of the 1999 White Paper.  In addition, Mr. Delgadillo testified that his previous deposition was accurate and truthful. (Stark Decl. Ex. 1 at 12:5-20.)

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1    Radware contends that Mr. Delgadillo previously testified in another case that the

2    document was published on April 12, 1999.  (Dkt. 189 at 20:9-19.)  This contention is

3    misleading at best.  In his previous deposition, Mr. Delgadillo was testifying as to a different

4    document.  Furthermore, Mr. Delgadillo testified in that deposition that the White Paper at issue

5    in the instant motion was published in March 1999.  In particular, Mr. Delgadillo previously

6    testified about two Cisco DisbributedDirector documents, which were exhibits 2 and 3 to that

7    deposition.  (*See* Dkt. 189-18 at 3:16-18.)  The portion of the testimony that Radware cites is

8    with reference to the exhibit 2 document, which bears the date "April 12, 1999" on its last page.

9    (*See id.* at 11:23-12:2 and 13:11-24.)  Radware conveniently ignores Mr. Delgadillo's testimony

10   with respect to exhibit 3, which he indicates is "substantively identical" to the exhibit 2

11   document.  (*See id.* at 16:3-15.)  The exhibit 3 document bears "3/99 LW" in the lower right

12   corner of its last page, which Mr. Delgadillo testified indicates that the document was posted on

13   Cisco's external website in March 1999.  (*See id.* at 17:19-18:22.)  The Cisco

14   DistributedDirector White Paper that Radware is now challenging does not have "April 12,

15   1999" on its last page—it does, however, have "3/99 LW" in the lower right corner of its last

16   page.  (*See* insert above; Dkt. 189-15 at 20).

17       As such, Mr. Delgadillo's prior testimony substantiates his  testimony in this case that

18   the White Paper was published in March 1999.  Thus, there is substantial evidence that this

19   paper is prior art to the purported ████████ conception date: the document bears a copyright

20   date of 1999 on each page, a date of March 1999 (i.e., "3/99") on its final page, and Cisco's

21   witness testified in deposition that it was published in March 1999.  At the very least, there is a

22   genuine issue of fact as to the publication date.

23       Moreover, even if the publication date was April 12, 1999, as Radware alleges, it would

24   still qualify as prior art, because Radware cannot establish that it patents are entitled to a priority

25   date that is earlier than that date.  As discussed above, Radware's uncorroborated assertion that

26   it conceived its invention by ████████ is insufficiently corroborated.

27

28

**b.    Cisco DistributedDirector White Paper (1997)**

Radware also refers to a 1997 Cisco White Paper, and contends the Court should grant summary judgment with respect to it because "F5 had the opportunity to question Mr. Delgadillo about the alleged 1997 document during his deposition, but chose not to do so." (Dkt. 189 at 22:22-23.)  Again, Radware's arguments are misguided.  First, because Mr. Delgadillo is within the subpoena power of the Court, there was no obligation to depose Mr. Delgadillo about any of these subjects.  Absent him becoming unavailable, the evidence will be based on his *trial testimony*, not his deposition testimony.

Further, Radware concedes that the 1997 document "contain[s] some of the material in the [1999] Cisco DistributedDirector White Paper."  (*Id.* at 22:17-19.)  Accordingly, Dr. Alexander should be able to rely on either the 1999 or 1997 documents with respect to their common subject matter.

For these reasons, Radware's motion for summary judgment regarding the Cisco DistributedDirector prior art should be denied.

**5.    Radware Has Not Established that Its Alleged Inventions Were Before the Maki-Kullas Patent**

As Radware concedes, the Maki-Kullas patent was filed before the filing date of the asserted patents, and thus, unless Radware can establish an earlier priority date for its patents, Maki-Kullas is prior art to the asserted patents.  As discussed above, Radware cannot establish on summary judgment that it is entitled to an earlier priority date, and thus the Maki-Kullas patent remains viable prior art.

Moreover, even if Radware could establish ███ as the conception date, it failed to establish that it diligently reduced its inventions to practice for the entire period before the Maki-Kullas patent was filed on October 5, 1999.  Even if one were to assume that the "documentary" evidence identified by Radware indicated that it was working on its invention at the times indicated on those documents, it still fails to account for any activity between August 22, 1999 and October 5, 1999 (the filing date of the Maki-Kullas patent).

-14-

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1

2

3

4

        In addition, as is also discussed above, Radware cannot establish as a matter of law that

it actually reduced its invention to practice on ██████████████ before the filing of the

Maki-Kullas patent.  In particular, Radware offers nothing more than the conclusory opinion of

its expert and a press release that may have been released "on or about" ██████████.

5

6

        Thus, for these reasons, Radware cannot establish on summary judgment that its

invention was prior to the Maki-Kullas patent's filing date, and its motion should be denied.

7

8

**B.     RADWARE IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE
        DISTRIBUTEDDIRECTOR AND 3-DNS SYSTEMS**

9

10

11

12

13

14

        Radware seeks summary judgment that the "Test-Bed Systems" do not anticipate or

render the asserted claims obvious as a matter of law.  Radware asserts two grounds for the

motion:  (1) some of the components of the Test Bed System did not exist in 1999, and thus

cannot be prior art; and (2) "no one knew that the Test-Bed Systems could practice link load

balancing and no one used [them] to practice link load balancing."  (Dkt. 189 at 14-15).  This

portion of Radware's motion should also be denied.

15

16

17

18

19

20

21

22

23

24

25

26

27

        First, there is no dispute, or should be no dispute, that the material components of the

Test-Bed Systems were in the prior art.  In particular, there is undisputed testimony and

documentary support that F5 was selling and offering for sale its 3-DNS system, and Cisco was

selling and offering for sale its DistributedDirector system, prior to April 1999.  F5 contends

that these prior art systems anticipate and/or render the claims obvious because, among other

things, they were used or could have been used for ISP link load balancing.  As explained in

detail in F5's motion for summary judgment that the Cisco DistributedDirector system

invalidates the claims, there is overwhelming evidence, both in terms of documents and

testimony, that the DistributedDirector system was capable of performing ISP load balancing.

A Cisco employee, Mr. Delgadillo, for example, testified that Cisco's DistributedDirector

system could accomplish ISP load balancing, and was likely used for that purpose.  (*See* Dkt.

183-05 at 42 (testifying it "likely" would have been used for ISP load balancing), *see also* at *id.*

at 73:5-19.)  Second, F5 has never asserted that all of the components of the Test-Bed System

28

1  were used together in the prior art.  Instead, the Test-Bed System simply evidences that the prior

2  art 3-DNS and DistributedDirector systems could perform ISP load balancing.

3  As might be obvious, there are no systems from 16 years ago that are still in their

4  original form.  Still, F5's expert, Dr. Alexander, will explain that the Test-Bed System

5  establishes that these prior art products, when combined with prior art components, could have

6  performed the claimed methods.  The fact that some immaterial components were not

7  manufactured before 1999 is immaterial to the purpose of the Test-Bed Systems.[2]

8  Radware also asserts it is entitled to summary judgment because F5 cannot show that the

9  Test-Bed Systems were actually known to be capable of ISP link load balancing, or actually

10  used for those purposes.  (Dkt. 189 at 15-16.)  The argument fails for two reasons.  First, even if

11  the components were not specifically used for performing ISP load balancing, they would still

12  be relevant to obviousness.  Obviousness turns on whether it would have been obvious to use

13  the systems for ISP load balancing (if that was the motivation) and/or to combine it with other

14  components for that purpose.

15  Second, and perhaps more importantly, Radware has consistently argued that the claims

16  do not require that a system be actually used to perform ISP load balancing.  During claim

17  construction, for example, Radware successfully convinced the Court that "infringement of the

18  system or device claim occurs: when one makes, uses, offers to sell or sells the claimed

19  apparatus *capable of performing the claimed functions*."  (Dkt. 145 at 9 (emphasis added); *see*

20  *also* Dkt. 122 at 21 (construing "configure to" in claims 19 and 14 of the '374 patent as not

21  requiring "user intervention if the feature claimed is included in the product as supplied")).)  If

22  infringement occurs when a system or device is sold or offered for sale that is *capable* of

23  performing the claimed functions, then the claims necessarily must be invalid if systems or

24  devices capable of performing the claimed function were sold or offered for sale in the prior art.

25  In fact, Radware's arguments are directly contrary to its pending motion for summary judgment

26
27
28

---

[2] As Dr. Alexander has explained in his deposition and will explain at trial, the core software and components are from the prior art.  Although Radware refers to the fact that configuration files and a switch were more recent, these are immaterial to the issue of whether the prior art products could have performed ISP load balancing.  (*See e.g.*, Dkt. 183-02)

1    of infringement.  (Dkt. 182 at 13.)  In its motion, Radware argues that there is infringement so

2    long as the "functionality is already present in the underlying . . . software."  (*Id.* at 13:11.)[3]

3    Radware cannot have it both ways.  Radware cannot assert that the prior art is not invalidating,

4    even if it was capable of performing the claimed ISP load balancing functionalities, but F5's

5    products infringe even with the relevant software is not even enabled.

6         Radware's reliance on the *Chemque* case decision is misplaced.  *See Minn. Mining &*

7    *Mfg. Co.  v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002).  In *Chemque*, the patent related to

8    "compositions of encapsulants used for protecting signal transmission devices, such as electrical

9    or optical cables."  303 F.3d at 1298.  The claims required that the signal transmission device be

10   encompassed by an "anhydride functionalized compound and [a] cross-linking agent."  *Id.*

11            When mixed, the cross-linking agent reacts with anhydride reactive sites
12            on the anhydride functionalized compound to form a cross-linked polymer
             structure which is gel-like, thus protecting the signal transmission devices
13            from contaminants.

14   *Id.*  Defendant relied on a "two-part composition known as Ricoseal."  *Id.* at 1305.  The Federal

15   Circuit found, however, that the distribution of Ricoseal samples were not enabling, because

16   they did not teach one of ordinary skill in the art the underlying composition.  Similarly, the

17   defendants "presented no evidence that any third party or the inventors ever mixed the two parts

18   of Ricoseal or that the mixture was applied to a signal transmission device."  *Id.* at 1307.

19        These facts are in sharp contrast to the claims of the patents in the instant case and the

20   distribution and use of the prior art 3-DNS and Cisco DistributedDirector products.  There is no

21   genuine question that those products were known, sold, offered for sale and used in the prior art.

22   Although Radware argues that there is no evidence that they were expressly used for link load

23   balancing, its argument is inconsistent with the Court's construction of the device and apparatus

24   claims as merely requiring software that is *capable* of performing the claim elements.  This is

25

26

27   _____

     [3] F5 disagrees with Radware's analysis or suggestion that the software is "capable" of
28   being used in an infringing manner where it is not enabled without additional code.  That issue
     is addressed, however, in connection with Radware's infringement motion.

1   not a case where the claim relates to a specific type of chemical formulation, which is not

2   enabled by the distribution of other formulations.

3   **C.      RADWARE IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE PRIOR ART NOT DISCUSSED BY DR. ALEXANDER**

4

5          Radware is also not entitled to summary judgment with respect to prior art not expressly

6   relied upon in Dr. Alexander's report.  At most, Radware's motion should be postured as a

7   motion *in limine*, not a motion for summary judgment.  Even as a motion *in limine*, however, the

8   motion has no merit.  The Federal Circuit has expressly held that a district court should not

9   exclude prior art evidence simply because such evidence is not in an expert's report.  In

10  particular, in *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354 (Fed. Cir. 2012), the

11  Federal Circuit held that the District Court had erred in excluding prior art simply because it

12  was not in defendant's expert report:

13              Even assuming we agree with the district court that Anders relied only on
                the specific prior art listed in Part C for his obviousness opinion, the

14              district court still erred in using the Anders' report to limit Bodum's ability
                to present, through other witnesses at trial, prior art that was previously

15              disclosed during discovery.  If anything, the scope and content of Anders'
                report should operate only to limit his testimony at trial—not the testimony

16              of any other witnesses.

17  690 F.3d at 1373.

18         Although F5 might not raise such prior art at trial, there is still no basis for granting

19  summary judgment based on such art.

20                                    **III.      CONCLUSION**

21         For all the reasons above, Radware's motion for partial summary judgment should be

22  denied.

23

24

25

26

27

28

1

2      DATED: June 23, 2015               By:  */s/ Ramsey M. Al-Salam*
                                               Ramsey Al-Salam, Cal Bar No. 109506
3                                              RAlSalam@perkinscoie.com
                                               Nathaniel E. Durrance, Cal Bar No. 229210
4                                              NDurrance@perkinscoie.com
                                               Stevan R. Stark *(Admitted Pro Hac Vice)*
5                                              SStark@perkinscoie.com
                                               PERKINS COIE LLP
6                                              1201 Third Avenue, Suite 4900
                                               Seattle, WA 98101
7                                              Tel: 206-359-8000 / Fax: 206-359-9000

8                                              Christopher Kao, Bar No. 237716
                                               CKao@perkinscoie.com
9                                              PERKINS COIE LLP
                                               3150 Porter Drive
10                                             Palo Alto, CA  94304-1212
                                               Tel: 650-838-4300 / Fax: 650-838-4350

11                                             Daniel T. Keese, Cal Bar No. 280683
                                               DKeese@perkinscoie.com
12                                             PERKINS COIE LLP
                                               1120 NW Couch Street, Tenth Floor
13                                             Portland, OR  97209-4128
                                               Tel: 503-727-2000 / Fax: 503-727-2222

14                                             *Attorneys for Defendant/Counterclaim-
                                               Plaintiff F5 Networks, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on June 23, 2015, I caused copies of the foregoing document to be
served in the manner indicated below to the following counsel of record:

4

**VIA ECF & EMAIL**

5     Fabio E. Marino
      Nitin Gambhir
6     Barrington Dyer
7     Teri H.P. Nguyen
      Sruli Yellin
8     McDermott Will & Emery, LLP
      275 Middlefield Road, Suite 100
9     Menlo Park, CA 94025-4004
      F5-Radware Service@mwe.com
10

11    *Attorneys for Plaintiffs and Counterclaim*
      *Defendants Radware, Ltd. and Radware, Inc.*

12

13

14
                                          */s/ Ramsey M. Al-Salam*
15                                         Ramsey M. Al-Salam

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:13-cv-02024-RMW
F5 NETWORKS, INC.'S RESPONSE TO RADWARE'S
MOTION FOR SUMMARY JUDGMENT DISMISSING
AFFIRMATIVE DEFENSE OF INVALIDITY