FABIO E. MARINO (SBN 183825)
fmarino@mwe.com
A. MARISA CHUN (SBN 160351)
mchun@mwe.com
L. KIERAN KIECKHEFER (SBN 251978)
kkieckhefer@mwe.com
NITIN GAMBHIR (SBN 259906)
ngambhir@mwe.com
BARRINGTON DYER (SBN 264762)
bdyer@mwe.com
TERI H.P. NGUYEN (SBN 267498)
thpnguyen@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004
Telephone:    650 815 7400
Facsimile:    650 815 7401

Attorneys for Plaintiffs and Counterclaim-Defendants
RADWARE, LTD. AND RADWARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., an Israeli company; RADWARE, INC., a New Jersey corporation,<br><br>     Plaintiffs, Counterclaim-Defendants,<br><br>     vs.<br><br>F5 NETWORKS, INC., a Washington corporation,<br><br>     Defendant, Counterclaim-Plaintiff. | CASE NO. 5:13-cv-02024 RMW<br>(Related Case No. 5:13-cv-02021 RMW)<br><br>**PLAINTIFFS RADWARE, LTD.'S AND RADWARE, INC.'S OPPOSITION TO DEFENDANT F5 NETWORKS, INC.'S MOTION FOR SUMMARY JUDGMENT RE INVALIDITY**<br><br>Date:     July 24, 2015<br>Time:     9:00 am<br>Judge:    Hon. Ronald M. Whyte<br>Location: Ctrm 6, 4th Floor |

**PUBLIC – REDACTED VERSION**

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ....................................................................................................... 2

I.   STATE OF THE ART BEFORE THE INVENTION OF LLB......................................... 2

   A.   GSLB .................................................................................................................. 2

   B.   BGP .................................................................................................................... 4

   C.   NAT .................................................................................................................... 5

   D.   Cisco DistributedDirector .................................................................................. 5

II.  INVENTION OF THE '319 AND '374 PATENTS ......................................................... 6

   A.   Outbound ISP LLB ............................................................................................. 7

   B.   Inbound ISP LLB ............................................................................................... 8

III. ACKNOWLEDGED IMPORTANCE OF THE LLB INVENTION ................................ 9

LEGAL STANDARD .............................................................................................................. 10

ARGUMENT ............................................................................................................................ 11

I.   F5 FAILS TO ASSERT VIABLE PRIOR ART ........................................................... 11

   A.   GSLB and BGP Cannot Be Relied Upon As Prior Art..................................... 12

   B.   The Cisco DD System Is Not Prior Art............................................................. 13

II.  THE INBOUND AND OUTBOUND CLAIMS ARE NOT ANTICIPATED BY
     GSLB NOR ARE THE OUTBOUND CLAIMS RENDERED OBVIOUS BY
     BGP ................................................................................................................................. 14

   A.   GSLB Does Not Anticipate Inbound ISP Link Selection ................................. 15

   B.   The Fact That "Route Metrics" Existed In The Prior Art Does Not
         Anticipate The Inbound Dependent Claims........................................................ 19

   C.   Outbound Claims are Not Anticipated By GSLB Or Rendered Obvious By
         BGP .................................................................................................................... 20
         1.   Anticipation By GSLB............................................................................. 20
         2.   Obviousness In Light Of BGP ................................................................. 22

   D.   Regardless, If GSLB Anticipates, The Asserted Patents Receive A New
         Priority Date That F5's Purported Prior Art Does Not Pre-Date ........................ 23

III. THE ASSERTED CLAIMS ARE NOT OBVIOUS....................................................... 24

IV.  CONCLUSION ............................................................................................................... 25

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Alexsam, Inc. v. IDT Corp.*,
   715 F.3d 1336 (Fed. Cir. 2013).............................................................................25

5

6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................23

7

8

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-00630-LHK, 2012 U.S. Dist. LEXIS 92314 (N.D. Cal. July 3,
   2012) (Koh, J.)...................................................................................................19

9

10

*CFMT, Inc. v. Yieldup Intern. Corp.*,
   349 F.3d 1333 (Fed. Cir. 2003).............................................................................24

11

12

*Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,
   No. C 03-1431 ...................................................................................................12

13

14

*Garter-Bare Co. v. Munsingwear, Inc.*,
   650 F.2d 975 (9th Cir. 1980).................................................................................23

15

*Good Technology Corp. v. MobileIron, Inc.*,
   No. 5:12-cv-05826-PSG, Dkt. No. 298 (N.D. Cal. May 4, 2015) (Grewal, J.) .......12

16

17

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008).............................................................................24

18

19

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007).............................................................................................11

20

*Kyocera Wireless Corp., et al. v. Intn'l Trace Comm'n*,
   545 F.3d 1340 (Fed. Cir. 2008).......................................................................11, 12

21

22

*Litecubes, LLC v. N. Light Prods., Inc.*,
   523 F.3d 1353 (Fed. Cir. 2008).............................................................................23

23

24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................................10

25

26

*Mediatek Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 22442 (N.D. Cal. Feb. 21, 2014)
   (Gonzalez Rogers, J.)...............................................................................12, 13, 14

27

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011).........................................................................................10

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH,*
  139 F.3d 877 (Fed. Cir. 1998)..............................................................................................25

*Orion IP, LLC v. Hyundai Motor Am.,*
  605 F.3d 967 (Fed. Cir. 2010)..............................................................................................11

*Pfizer, Inc. v. Apotex, Inc.,*
  480 F.3d 1348 (Fed. Cir. 2007)............................................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133 (2000)..............................................................................................................10

*Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,*
  637 F.3d 1269 (Fed. Cir. 2011)............................................................................................13

*SmithKline Beecham Corp. v. Apotex Corp.,*
  403 F.3d 1331 (Fed. Cir. 2005)............................................................................................11

*Therasense, Inc. v. Becton, Dickinson & Co.,*
  593 F.3d 1325 (Fed. Cir. 2010)..............................................................................11, 19, 21

**Statutes**

35 U.S.C. § 101 .............................................................................................................................6

35 U.S.C. § 102 ...........................................................................................................................10

35 U.S.C. § 103 ...........................................................................................................................11

35 U.S.C. § 282(a) .......................................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B)(i)......................................................................................................13

Fed.R.Civ.P. 56(a)........................................................................................................................10

Fed.R.Civ.P. 56(c)(1)(A) & (B)...................................................................................................10

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   F5's Motion summarily asserts that Global Server Load Balancing ("GSLB") anticipates

2   or renders obvious the inbound and outbound asserted claims of the Radware patents-in-suit and

3   that the Border Gateway Protocol ("BGP") renders the outbound claims obvious.

4   F5's claims fail for a variety of reasons.  First and foremost, F5's Motion is not based on

5   any actual document, reference, patent, or tangible system alleged as prior art, but rather on the

6   abstract concepts of GSLB and BGP.  This is significant here because the Radware patents-in-suit

7   claim priority to parent applications disclosing and claiming GSLB.  As a result, even if F5 were

8   able to prove that GSLB as an abstract concept somehow meets all the elements of the asserted

9   claims—it does not—GSLB would not be invalidating prior art because, in that hypothetical

10  scenario, the Radware patents-in-suit would be entitled to the priority date of the parent

11  applications, removing GSLB as a potential prior art reference.  Further, Radware already

12  identified BGP and GSLB art, including the Cisco Distributed Director system that F5 moves on

13  in its motion as purportedly anticipatory art, to the patent examiner for both patents-in-suit and

14  the examiner granted the patents over that art.

15  In any event, because F5 failed to properly identify its new invalidity theories in its

16  invalidity contentions as required by the Patent Local Rules, and never sought leave to amend its

17  invalidity contentions to add these new, undisclosed theories, F5's new arguments are improper

18  and should be rejected.  Similarly, F5's own invalidity expert did not identify GSLB or BGP as

19  allegedly invalidating prior art in his expert report, thereby further waiving any invalidity

20  arguments based on GSLB and BGP as abstract concepts.  To the extent, F5 has identified

21  specific prior art references (e.g. Cisco's Distributed Director) in its invalidity contentions, as

22  required by the Patent Local Rules, F5 is, of course, entitled to pursue those properly disclosed

23  theories,[1] but that is not the issue presented in this Motion and, as a result, the Motion should be

24  summarily denied.

25

26  _____

[1] As explained in Radware's Motion for Summary Judgment on Invalidity, the Cisco Distributed
27  Director is not prior art to the Asserted Patents.  As a result, to the extent F5's arguments were
properly limited to the sole actual reference referred to in the Motion, the Motion should be
28  denied at least for the reasons described in Radware's Summary Judgment Motion of Invalidity.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

Even if the Court were to reach the substance of F5's new invalidity arguments, the Motion should still be denied because GSLB does not anticipate the asserted claims for at least the following reasons: (1) GSLB's ability to load balance server farms at separate geographic locations is entirely different and does not anticipate the ability to determine how to load balance different ISP links connecting the same location to the Internet required by the asserted claims; (2) allegations that a system *might* have been configured or constructed to perform a certain function are insufficient to prove invalidity as a matter of law; and (3) Radware's expert, Prof. Rubin confirmed that the Cisco Distributed Director System *as configured* by F5 used components created in 2014 and, in any event, could not perform ISP link load balancing. Similarly, GSLB does not render the inbound and outbound claims obvious, and BGP does not render the outbound claims obvious because F5 does not allege and could not demonstrate that these references could meet the "selecting a route" element of the claims. Finally, F5's arguments disputing the quality and probative value of Radware's evidence of secondary indicia of non-obviousness at most demonstrates the existence of disputed issues of fact precluding summary judgment. Accordingly, F5's motion for summary judgment of invalidity should be denied in its entirety.

**FACTUAL BACKGROUND**

## I.   STATE OF THE ART BEFORE THE INVENTION OF LLB

A variety of technologies such as GSLB, BGP, and NAT, are relevant to this Motion. In fact, overcoming the limitations inherent in these technologies created the need for and led to the invention of technology now commonly referred to as Link Load Balancing ("LLB") by Radware's founders.

### A.   GSLB

GLSB is a mechanism to direct a client computer to the appropriate server or server farm in the event servers (or server farms) responsible for serving content of a single domain are located at ¶ multiple different geographic locations. Dkt. 179-26 at ¶ 60. This functionality is typically achieved through the use of a DNS-based solution by allowing the authoritative DNS server for the domain name return a list of IP addresses (instead of only one) in response to DNS

queries. *Id.* DNS-based load balancing can be basic or sophisticated, whereby a load balancer manages which requests are directed to which servers based on the geographic proximity of the request to the locations. *Id.*

While both GSLB and LLB manage traffic and distribute loads using certain metrics, the similarities end there. The fundamental difference between GSLB and LLB is that GSLB uses a routing protocol that does not consider multiple candidate routes to a destination for the purpose of providing load balancing among multiple associated attached ISP links. Dkt. 195-1 at ¶ 6. In contrast, LLB permits the determination of multiple candidate routes to a given destination. *Id.* Further, the region and scalability of each is different: GSLB manages global traffic of servers whereas LLB is local traffic management on links. *Id.* Additionally, GSLB can only perform inbound server load balancing; GSLB cannot perform outbound server load balancing. *Id.* Notably, during prosecution of the patents-in-suit, the patent applicants identified GSLB art to the examiner and the examiner granted the patent over such art. Dkt. 24-2 at 3; Dkt. 24-3 at 3. For example, on page two of both the '319 and '374 patents, the Cisco DistributedDirector system—F5's only identified example GSLB system—was already identified to the examiner and the patents were granted over that art.

In fact, GSLB and LLB can be used together, thereby demonstrating the separate and complementary nature of each technology. Dkt. 195-1 at ¶ 7. For example, one could think of GSLB as a way to determine the best Starbucks to go to in a given area. *See id.* One may first assess the Starbucks stores that are closest to your current location and then determine which of those Starbucks is the most busy or congested. While a Starbucks on El Camino may be closest, one may choose to go to a Starbucks farther away because that Starbucks is less busy. On the other hand, one could think of LLB as a way to determine the fastest way to get to the selected Starbucks. *See id.* One would assess whether to use 101, 280, or surface streets to get to Starbucks. Then one would assess a variety of factors such as, for example, speed along the route, congestion, road construction, toll roads, and distance to select the best route to get to Starbucks. Also, an LLB type load balancer would distribute traffic of vehicles heading from a certain local location to a given destination point across a multitude of roads that connect to this

1  access point, in a manner that properly distributes traffic across the roads to prevent one of those

2  roads from becoming over-congested.  Each solution provides things that the other does not.

3  Accordingly, using GSLB with LLB would provide "a complete load balancing solution."  *See*

4  Declaration of L. Kieran Kieckhefer ("LKK Decl.") Ex. A at 13-0204_F5N_126816.

5  **B.   BGP**

6  BGP is a routing protocol used to exchange routing information and reachability

7  information between autonomous systems across the Internet.  Dkt. 179-26 at ¶ 67.  BGP allows

8  ISPs and Internet domains to connect to each other and makes routing decisions based on network

9  policies or rule-sets configured by a network administrator.

10  ████████████████████████████████████████████████████████████

11  ██████████████████████.  LKK Decl. Ex. B at RadwareF5_00198304; *see also id.* Ex. C at

12  RadwareF5_00007968.  ████████████████████████████████████████████

13  ███████████████████████████████████████████████████████.  *Id.*

14  Ex. B [RadwareF5_00198304] at RadwareF5_00198304; *see also id.* Ex. C at

15  RadwareF5_00007968.  ███████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████  *Id.* Ex. B at

18  RadwareF5_00198304; *see also id.* Ex. C at RadwareF5_00007968.

19  ████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████  *Id.* Ex. B at

21  RadwareF5_00198305.  ███████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████  *Id.* Ex. B at RadwareF5_00198305; *see also id.* Ex. C at RadwareF5_00007968.

24  LLB was invented, in part, to address these limitations of BGP.  █████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  █████████████████████████████████"  LKK Decl. Ex. B at RadwareF5_00198305.

28  ████████████████████████████████████████████████████████

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW



1  . *Id.*

2

3

4  *Id.*

5

6  *Id.* at RadwareF5_00198306.

7

8  *Id.*

9          Similar to GSLB, the patent applicants made clear that the multi-homing solution

10  described by the Radware Patents did not relate to BGP during prosecution of the patents-in-suit.

11  Dkt. 186-24 at ¶ 37.

12          **C.     NAT**

13          NAT is a technology that effectively hides or masks the IP address of a person's computer

14  from being sent over the Internet.  NAT remaps one IP address space into another by modifying

15  network address information in IP datagram headers while it is still in transit across a routing

16  device.  *See* Dkt. 179-26 at ¶¶ 44-48.  NAT is used in a variety of technologies and protocols but

17  it does not balance load, nor does it balance load across IP links.

18          **D.     Cisco DistributedDirector**

19          The Cisco DistributedDirector System ("Cisco DD System") is a test bed system

20  comprised of the Cisco DistributedDirector DD2500 device combined with Cisco routers and a

21  Cisco Catalyst 2950 switch.  Dkt. 186-24 at ¶ 96.  As Cisco notes on its website, the Cisco

22  DistributedDirector DD2500 device is a GSLB product created by Cisco that utilizes Cisco IOS

23  software to "transparently direct clients to [the] closest available server[s] . . . ."[2]

24          As discussed in Radware's Motion for Summary Judgment on Invalidity, the test bed

25  system was created for the express purpose of determining if the Cisco DistributedDirector could

26

27  [2] *See* Cisco DistributedDirector product page, *available at*
    http://www.cisco.com/c/en/us/products/application-networking-

28  services/distributeddirector/index.html

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

be configured to perform LLB.  Dkt. 186-04 at 7-8.  At least two components of the Cisco DD System were created after the ███████ priority date of the patents.  First, the Cisco Catalyst 2950 switch was manufactured in May, 2004.  Dkt. 186-24 at ¶ 96.  Second, the configuration files necessary for the system to function as instructed were not available before the priority date of the patents because Dr. Alexander wrote them in the fall of 2014.  Dkt. 189-7 at 69:8-70:16.  As a result, the Cisco DD System that Dr. Alexander tested and asserts as purported prior art was never offered for sale or publicly available as configured.

F5 also relies on the Cisco DistributedDirector white paper ("Cisco DD WP") to prove certain functionality of the Cisco DD System.  The Cisco DD WP was created by Cisco employee Kevin Delgadillo and published on Cisco's website no earlier than ███████.  Dkt. 186-04 at 20.

## II.   INVENTION OF THE '319 AND '374 PATENTS

Roy Zisapel, Amir Peles, and Smadar Fuks invented the '319 and '374 patents (collectively "Asserted Patents" or "Patents-in-Suit") and assigned them to Radware.  Both patents are entitled "Load Balancing" and describe technology for managing network traffic from data centers by balancing network traffic load between two or more Internet Service Providers ("ISPs").  The '319 patent, issued on September 11, 2012, is a division of the '702 patent and the '374 patent, issued on July 9, 2013, is a continuation of the '319 patent.

The Asserted Patents relate to techniques and systems for selecting a specific ISP route from the multi-homed network to the Internet and from the Internet into the multi-homed network, a technique Radware refers to as "link load balancing" or "LLB."  Dkt. 182-1 at 54:5-55:11.  The inventions take advantage of having multiple links to the Internet and load balancing traffic across the different ISP links.

The Asserted Patents describe "outbound" and "inbound" link load balancing, depending on where the initial request is received from.[3]  **Outbound link load balancing** refers to the outbound request sent *from a host* that is destined for an external network via the Internet.

---

[3] As discussed in Radware's Opposition to F5's Motion to Strike under 35 U.S.C. § 101, the requests are all received by the network controller.

1   **Inbound link load balancing** refers to inbound requests for services *received by the host* from an

2   external network via the Internet.  Claims 24-28 of the '319 Patent are directed to outbound link

3   load balancing, while Claims 1-23 and 29-32 of the '319 and the claims of the '374 Patent are

4   directed to inbound link load balancing.

5          A.     **Outbound ISP LLB**

6        A key aspect of the invention disclosed in the Asserted Patents is the technique for

7   balancing a plurality of routes connecting a client to a remote server through a plurality of ISPs.

8   Figure 3E of the Asserted Patents illustrates an outbound link load balancing configuration where

9   the content router (145) sends requests issued from client (160) via router (135) to a remote server

10  computer (165) through a selected ISP route.  '319 Patent at col. 16:14-18.  The content router

11  selects an ISP route to the remote server on the basis of "costing information."  '319 Patent at col.

12  10:35-42.  The Court's construction of "costing information" clarifies that in addition to monetary

13  cost, "'cost' can represent an array of non-monetary resources."  As the Court noted, "something

14  can 'cost' bandwidth or be 'expensive' in terms of time."  Dkt. 122 at 26:16-18.  The content

15  router selects a route based on the cost of the routes and sends the client's request to the server via

16  the router associated with the selected route.  *See e.g.*, '319 Patent at Claim 24 and Col. 12:1,

17  17:25.  For example, Figure 3E illustrates that if the content router selects the route through ISP

18  120, it sends requests issued from the client via router 135.  '319 Patent at Col. 16:14-23.

19       When the content router sends the client request out to a remote server, it also sets the

20  client IP address to correspond to the specific ISP route chosen.  '319 Patent at Col. 16:19-23.  In

21  Figure 3E, for example, the content router sets the source address of the request to an address

22  associated with the router 135, therefore replacing the client's address of 10.2.2.2 with router's

23  address of 30.1.1.1.  In this fashion, the content router translates the source IP address to an IP

24  address corresponding to a selected route.  '319 Patent at Col. 16:14-18.  Claim 24 of the '319

25  patent is drawn to a device: for selecting routes for sending data between two nodes on the basis

26  of costing information of the routes.  '319 Patent at Col. 11:51-54.  Further detail is provided in

27  ¶¶ 86-87 of Dkt. 179-26.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1

## B.    Inbound ISP LLB

2    Another key aspect of the invention as disclosed in the Asserted Patents are the techniques

3    for ISP link load balancing inbound request from a remote client to a server in a multi-homed

4    network.  Figure 4A of the Asserted Patents illustrates an inbound link load balancing

5    configuration where content  router (145) receives a DNS resolution query from a remote client

6    (175) and balances the load among three ISPs (115, 120, and 125) for incoming connections to

7    server (170) in the multi-homed network.  '319 Patent at col. 16:26-37, 51-55; '374 Patent at Col.

8    7:25-37.  Each of the ISPs illustrated (115, 120, and 125) assign a range of IP addresses to the

9    multi-homed network.  '319 Patent at col. at 16:31-21; '374 Patent at col. 7:52-55.  This is

10    depicted by the IP address ranges 20.X.X.X, 30.X.X.X, and 40.X.X.X, respectively, in Figure 4A

11    of the Asserted Patents.

12    Upon receiving the DNS request, the content router identifies the best choice of ISP route

13    between the server and client.  '319 Patent at Col. 16:41-44.  Selection of the route is based on

14    variety of load balancing criteria including proximity, latency, cost, link pricing, load,

15    availability, and data packet loss, among others, as well as weighted and non-weighted

16    combinations of such criteria.  *See, e.g.,* '319 Patent at Col. 4:54-60, 12:1, 17:25; '374 Patent at

17    Col. 8:24 (explaining "link pricing").  In resolving the DNS query (i.e., "DNS resolution"), the

18    content router provides the address of the router corresponding to the selected route as the address

19    for the server.  '319 Patent at Col. 16:44-46.  This ensures that requests from the client are sent to

20    the server with the destination IP address of 30.3.3.3, which in turn ensures that the client

21    requests are transmitted through ISP 120.  '319 Patent at Col. 16:46-19.  When subsequent

22    packets are received by the content router on the selected route (e.g. through router 135 on ISP

23    120), it translates, using NAT, the destination address associated with selected route to an address

24    within the network (e.g. 30.3.3.3 to 10.3.3.3).  *See, e.g.*, Fig. 4B of the Asserted Patents; *see also*,

25    Dkt. 179-26 at ¶¶ 86-87.  This last step is often referred to as "destination NAT."

26    The asserted claims of the '374 Patent also cover a device for inbound link load balancing

27    except that the '374 Patent does not require the additional limitation of destination NATing

28    required by the '319 Patent.  Dkt. 186-7 at 137:17-21.

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

III.   **ACKNOWLEDGED IMPORTANCE OF THE LLB INVENTION**

Before the introduction of LinkProof (and the filing of the patents-in-suit), there was no intelligent, efficient, and cost effective means for selecting a route through an ISP in a network with more than one ISP.  Dkt. 182-02 at 136:8-20.  LLB was critical because "businesses los[t] billions of dollars annually due to downtime of their IT systems."  Dkt. 179-26 at ¶ 64.  Having multiple internet connections was viewed as expensive and internet connectivity often considered something "beyond our control."  LKK Decl. Ex. D at 2.  The advent of LLB, however, allowed multi-homed businesses to maintain high availability and provide for an optimal use of their resources.  Dkt. 179-26 at ¶ 64.  Such invention is even more important in today's world, where "downtime or failure of online applications/services for even a few sections" is something that can lead to "business failures."  *Id.* at ¶ 65.

Radware received universal industry praise for solving the problem of intelligently managing multiple ISP links to the Internet.  *Network Magazine* reported "[Radware's] LinkProof is the first load balancer to make running parallel links to the internet easy and cost effective."  Dkt. 182-06 at RadwareF5_00009629.  *Internet Traffic Management Center* declared Radware's LinkProof "innovative and clever."  Dkt. 182-07 at RadwareF5_00009628.  Another publication declared it an elegant solution to the complexities and pitfalls of trying to use BGP for multi-homing.  Dkt. 182-06 at RadwareF5_00009630.  Multiple other articles confirmed LinkProof's innovation and importance in today's multi-homing environment.  *See* Dkt. 186-24 at ¶¶ 44-49.



Dkt. 179-7 at F5 029107-029108.

Dkt. 179-9 at F5 039442.

*Id.*

 *Id.* at F5 039434.

. *Id.*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████. Dkt. 186-24 [Rubin Rebuttal] at ¶ 53. ████

4 ████████████████████████████████████████

5 ████████████ *Id.* at ¶¶ 53-54.

## LEGAL STANDARD

Summary judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Patents are presumed valid. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). A party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp.*, 131 S. Ct. at 2241; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007). For a claim to be anticipated under 35 U.S.C. § 102, and thus invalid, "each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

- 10 -

elements must also be disclosed, either expressly or inherently, in that same prior art reference."
*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010).  The law requires that anticipation must be based on the teachings of a single reference, and—as a matter of binding Federal Circuit precedent—multiple related references cannot form a single reference for anticipation purposes.  *Kyocera Wireless Corp., et al. v. Intn'l Trace Comm'n*, 545 F.3d 1340, 1351 (Fed. Cir. 2008).  Whether prior art anticipates the accused device is fundamentally a question of fact.  *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010).  However, if there are no genuine factual disputes to underlie the anticipation inquiry, "the issue is ripe for judgment as a matter of law."  *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

Under 35 U.S.C. § 103, a patent claim is invalid as obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  To determine whether this test is met, the court examines four factors: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) any relevant secondary considerations (i.e., objective indicia of non-obviousness).  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17-18, (1966)).  Significantly, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."  *KSR*, 550 U.S. at 418.

## **ARGUMENT**

### I.    **F5 FAILS TO ASSERT VIABLE PRIOR ART**

F5 contends that GSLB anticipates or renders obvious all inbound claims and outbound claims of the '319 and '374 patents.  F5 also contends that the outbound claims are rendered obvious in light of BGP.  For the following reasons, neither GSLB (including the Cisco DD System) nor BGP invalidate the asserted claims.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**A.    GSLB and BGP Cannot Be Relied Upon As Prior Art**

F5 cannot rely on GSLB or BGP as prior art because F5 never disclosed GSLB or BGP in its invalidity contentions.  In its invalidity contentions, F5 did not chart GSLB or BGP as references "identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found" as required by Patent Local Rule 3-3.  F5 also failed to identify GSLB or BGP in any obviousness combinations identified in its invalidity charts.[4]

As eloquently stated by Judge Grewal: "In this district, the rules are clear: a party opposing a claim of patent infringement must include in its invalidity contentions '[a]ny grounds of invalidity….'"  *Good Technology Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, Dkt. No. 298 (N.D. Cal. May 4, 2015) (Grewal, J.).  The purpose of this rule is to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*, No. C 03-1431 SBA, 2006 U.S. Dist. LEXIS 90856, at *12 (N.D. Cal. 2006) (Armstrong, J.) (citations omitted).  Failure to disclose an invalidity theory in invalidity contentions renders it "barred, accordingly, from presentation at trial (whether through expert testimony or otherwise)." *Mediatek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 U.S. Dist. LEXIS 22442 at *3 (N.D. Cal. Feb. 21, 2014) (Gonzalez Rogers, J.).  This pertains both to anticipatory invalidity theories and obviousness theories under Patent Local Rule 3-3.[5]  As a result, F5 cannot rely on GSLB or BGP as anticipatory or obviousness prior art.[6]

F5 expert, Dr. Alexander, is also prevented from testifying about GSLB or BGP as prior art because he failed to identify the technologies as either anticipatory or obviousness prior art in

---

[4] F5's invalidity claim charts comprise thousands of pages.  Because of how voluminous the claim charts are, Radware has declined to submit them to the Court but is able to lodge them with the Court if requested.

[5] To the extent F5 intends to argue that GSLB or BGP can be proved by relying on some combination of the multitude of prior art references it identified in its invalidity contentions, such argument also fails as a matter of law.  *Kyocera Wireless Corp.*, 545 F.3d at 1350 (rejecting claim that multiple separate references could be used together to prove an abstract technological concept).

[6] Radware moves separately for an order precluding F5 from relying on GSLB or BGP as purportedly invalidating prior art.

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

his invalidity expert report.  Dr. Alexander was required to provide "a complete statement of all

opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P.

26(a)(2)(B)(i).  As a result of this failure, Dr. Alexander is precluded from offering an opinion at

trial regarding GSLB or BGP as anticipatory prior art.  *See Siemens Medical Solutions USA, Inc.*

*v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1285-86 (Fed. Cir. 2011) (affirming

district court's grant of a motion to exclude that limited expert testimony to the substance

contained in his report).[7]

### B.     The Cisco DD System Is Not Prior Art

As discussed in Radware's Motion for Partial Summary Judgment Dismissing Defendant

F5's Invalidity Affirmative Defense, neither the Cisco DD System nor the Cisco DD WP are prior

art to the patents-in-suit.  Dkt. 189 at 7:10-9:9; 14:1-17:5; 19:20-22:28.  The Cisco DD System is

not prior art as a matter of law because certain hardware and software components of the test bed

system post-date the priority date of the patents-in-suit by several years.  *Id.* at 7:10-8:20; 14:1-

17:5.  The Cisco DD WP is also not prior art because F5 cannot prove by clear and convincing

evidence that the Cisco DD WP was published before the conception date of the patents-in-suit.

*Id.* 8:21-9:9; 19:20-22:28.

F5 contends that Prof. Rubin "quibbled about certain technical details," but otherwise has

"never opined that the DistributedDirector could not perform the claimed ISP load balancing as

proffered by Dr. Alexander."  OB at 7.  Not so.  In Professor Rubin's Rebuttal Expert Report, he

makes clear that—even if all components of the Cisco DD System had pre-dated the priority date

of the patents-in-suit—the Cisco DD System still would not anticipate because the system could

not perform either inbound LLB or outbound LLB.  Dkt. 186-24 [Rubin Rebuttal Report] at ¶¶

97-109.

The first reason Prof. Rubin described is that the test bed system was not connected to the

Internet, which necessarily fails to meet the requirements of the asserted claims.  *Id.* at ¶¶ 101,

107.  Dr. Alexander does not factually dispute it in his declaration, but instead contends that

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

---

[7] Radware moves separately for an order precluding F5's expert, Dr. Alexander, from relying on
GSLB or BGP as purportedly invalidating prior art.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1    connection to the Internet—a limitation of the claims—is somehow "not relevant to the capability

2    of the DD system test bed to operate as claimed. . . ."  Dkt. 183-2.  Prof. Rubin further explained

3    how the system did not perform inbound LLB because, when running a test scenario where the

4    LAN cable connecting the router R1 to the system was disconnected and a DNS resolution was

5    requested to the DD2500 device, the client terminal always returned the specific virtual address

6    assigned to routers R1-R11, and never R3-R12, in response to issued commands.  *Id.* at ¶¶ 103-

7    104.  Similarly, Prof. Rubin explained how the system did not perform outbound LLB for the

8    same reason: the virtual address assigned to Cisco routers R1-R11, not R2-R12, was always

9    returned even when the round-trip delay time ("RTT") of route R1-R11 was greater than the RTT

10   of route R2-R12.  *Id.* ¶¶ 105-108.

11        At best, the test bed systems could demonstrate the capability of the distributed devices

12   assembled for this purpose to perform ***GSLB***, not ***LLB***.  This is not just because the

13   demonstration did not have an Internet connection (thereby failing to meet a critical requirement

14   for the claimed LLB operation), and not just because it included hardware and software

15   components that were created after the priority date of the patents.  *Id.* at ¶¶ 97-109.  The Cisco

16   DD System and the Cisco DD WP fail to demonstrate the capability to perform LLB because

17   neither the system nor the white paper show that the Cisco Distributed Director could load

18   balance among or select routes to different ISP links, as required by the asserted claims of the

19   patents-in-suit.[8]  *Id.* at ¶¶ 97-116.

20   **II.    THE INBOUND AND OUTBOUND CLAIMS ARE NOT ANTICIPATED BY**
21   **GSLB NOR ARE THE OUTBOUND CLAIMS RENDERED OBVIOUS BY BGP**

22        F5 contends that GSLB anticipates all inbound claims and outbound claims of the '319

23   and '374 patents.  F5 also contends that the outbound claims are rendered obvious in light of

24

---

25   [8] While F5 contends that Kevin Delgadillo, the author of the Cisco DD WP, testified that the
26   Cisco DD System "could be used for link load balancing," Mr. Delgadillo actually testified that
     he was "not aware of" any Cisco products, including the Cisco DistributedDirector, that would
27   "enable a company or enterprise to do link load balancing.  LKK Decl. Ex. E [Delgadillo Depo.]
     at 31:2-32:11 (emphasis added).  Mr. Delgadillo also confirmed that Cisco "never marketed
28   Distributed Director as a link load balancing solution."  *Id.* at 41:25-42:10.

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

1    BGP.

2          For all inbound claims (independent and dependent) for the '374 and '319 patents, F5

3    repeats the same arguments: (1) GSLB prior art systems purportedly included server load

4    balancing and were "capable of being configured" to perform ISP link load balancing; and (2)

5    load balancing metrics existed in the prior art.  Even if this Court were to consider GSLB

6    (including the Cisco DD System, and the Cisco DD WP) prior art—they are not—such references

7    would not anticipate the claimed invention because GSLB cannot perform a necessary limitation

8    in each of the claims: the ability to select one of the plurality of routes or load balance multiple

9    ISP links.  Similarly, even if this Court were to consider BGP prior art, F5 has failed to

10   demonstrate that BGP cures the basic deficiencies of GSLB with respect to selecting one of the

11   plurality of routes or load balancing multiple ISP links.  Dkt 195-1 at ¶ 6.  Indeed, Radware's

12   rounders invented LLB, at least in part, to overcome the limitations inherent in BGP.

13         **A.    <u>GSLB Does Not Anticipate Inbound ISP Link Selection</u>**

14         F5 contends that, because GSLB involves *server* load balancing, it anticipates *ISP link*

15   load balancing.  As discussed above, server load balancing is not link load balancing and cannot

16   perform the multi-homing route selection required by the inbound claims.  Each asserted inbound

17   claim for both the '319 and '374 patents includes the limitation that, for a multi-homed network,

18   the system selects one of the plurality of routes connecting the network controller to the Internet.

19   GSLB (as demonstrated by the Cisco DD System) does not meet this limitation and, therefore,

20   GSLB fails to anticipate all asserted inbound claims as a matter of law.

21         The '319 patent is comprised of six independent claims, five of which (claims 1, 13, 29,

22   31, and 32) are inbound claims.  Each of these five claims contains a multi-homing limitation and

23   the limitation of selecting one of the plurality of routes:

| Claim of '319 Patent | Relevant Claim Language |
|---|---|
| Claim 1 (device claim) | "said device connected to the Internet through a plurality of routes … said network controller selecting one of the plurality of routes connecting said device to the Internet" |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

| Claim of '319 Patent | Relevant Claim Language |
|---|---|
| Claim 13 (method claim) | "having a device connected to the Internet through a plurality of routes … selecting one of a plurality of routes connecting said device to the Internet in accordance with one or more criteria of the plurality of routes" |
| Claim 29 (system claim) | "a system for managing a computer network connected to the Internet through a plurality of routes … a network controller … selecting one of a plurality of routes based on the proximity determination" |
| Claim 31 (device claim) | "each router supporting one or more routes for connecting to the Internet … said network controller selecting one of the plurality of routes connecting said device to the Internet through a router supporting the selected route" |
| Claim 32 (system claim) | "each router supporting one or more routes for connecting to the Internet said network controller selecting one of a plurality of routes based on the proximity determination" |

Similarly, the '374 patent is comprised of two independent claims, both of which are inbound claims. Both of these two claims contain a multi-homing limitation and the limitation of selecting one of the plurality of ISP links:

| Claim of the '374 Patent | Relevant Claim Language |
|---|---|
| Claim 1 (method claim) | "a method for load balancing client requests among a plurality of internet service provider (ISP) links in a multi-homed network, comprising … selecting, based on at least one load balancing criterion, one ISP link from the plurality ISP links" |
| Claim 9 (device claim) | "a device for load balancing client requests among a plurality of internet service provider (ISP) links in a multi-homed network, comprising … a balancer module configured to select, based on at |

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

| Claim of the '374 Patent | Relevant Claim Language |
|---|---|
| | least one load balancing criterion, one ISP link from the plurality ISP links" |

F5's motion identifies an exemplary GSLB system—the Cisco DD System—which cannot select one of the plurality of routes (or ISP links) in a multi-homed environment. F5's own recitation of the prior art belies its claims that GSLB could perform the required LLB functionality. F5 notes that GSLB prior art systems included "route selection for determining *which server* to direct traffic to." OB at 15:5-7. And, as explained by Prof. Rubin, GSLB *cannot* perform ISP link selection in a multi-homed network because GSLB (using an IP routing algorithm) uses a routing protocol that does not consider multiple candidate routes to a destination for the purpose of providing load balancing among the associated attached ISP links. Dkt. 195-1 at ¶ 6. Contrary to F5's claim that Professor Rubin only "quibbled" about technical details, Professor Rubin's opinion (as expressed in his Rebuttal Report), in fact, is that the Cisco DD System could not perform multi-homed ISP link selection because the system's terminal only returned the specific virtual address assigned to Cisco routers R1-R11, not R2-R12. Dkt. 186-24 at ¶¶ 102-104.

F5 contends that the "concept of choosing a server based on well-known route metrics for GSLB is the same as choosing a route based on the same metrics for ISP link load balancing." OB at 15:13-14. F5 further argues that LLB is purportedly even "simpler because both routes lead to the same destination, and do not require a device to collect metrics from remote servers or their agents." OB at 15:14-16. Both statements are incorrect. First and foremost, GSLB uses a routing protocol that does not consider multiple candidate routes to a destination for the purpose of providing *load balancing* among associated attached ISP links. Dkt. 195-1 at ¶ 6. GSLB selects the best server, period. It continues selecting that best server until that best server stops being the best available. When that server stops being the best available, GSLB switches to the next best available—which can cause "long and unpredictable failover times and does not meet the high availability requirements for a business." LKK Decl. Ex. C at RadwareF5_00007968.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1    Further, GSLB only works in the inbound direction and cannot perform outbound server load

2    balancing. *Id.*

3        For example, GSLB determines the selection of termination server A vs. termination

4    server B considering the states of the servers.  In contrast, the determination of an ISP link and

5    associated route to support a message flow or a connection under LLB involves the selection of a

6    route from the claimed controller device to a single remote entity (which is the facility of the

7    client that produced the DNS request for inbound LLB; and is the facility of the destination

8    computer in the case of outbound LLB).  Inbound LLB does not entail a selection to be made

9    among different destination servers:  the server is always the same, what is selected is the route

10   (or ISP link) used to reach that server.  It involves balancing traffic among ISP links attached to

11   the system for the purpose of reaching a specified computer or server.  LLB is thus a very

12   different function than GSLB, requiring the use of very different methods, systems, algorithms

13   and mechanisms.

14       F5 next argues that whether GSLB actually selects ISP links in a multi-homed

15   environment is immaterial because GSLB ***could have been*** "configured to select between ISPs in

16   a multi-homed network based on the load balancing metrics."  OB at 15:3-7.  Proving a system

17   could have been configured to select ISP links in a multi-homed environment, according to F5,

18   would meet this Court's requirement that device claims only need to include software that can

19   perform the claimed functionality.  *Id.* at 16 (citing to Dkt. 145 at 15-17).  F5 is incorrect again.

20   As made clear by this Court, "configured to" does not mean that the system ***could have been***

21   programmed to meet the limitations of the claims; it means that the system already ***was***

22   programmed to meet the limitations of the claims.  Dkt. 122 at 22:11-15 (citing *Fantasy Sports*

23   *Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) ("merely being

24   'capable of' performing a function is not enough," the device must come "programmed with

25   specific claimed functions" to fall within the claims).  Here, F5 did not prove that the system—as

26   it existed before the priority date of the patents-in-suit—included software that could have

27   performed ISP link selection F5's expert had to write the software necessary to configure the

28   system in 2014 precisely because the Cisco DD System, as it existed in 1999, was not ***already***

- 18 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   *programmed* to perform LLB.[9]  As made clear by Judge Koh regarding a similar test bed system,

2   a "post-hoc, reconstructed interpretation" of how a system "*might* have been constructed" is not

3   prior art.  *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2012 U.S. Dist. LEXIS

4   92314, at *14-15 (N.D. Cal. July 3, 2012) (Koh, J.) (emphasis in original).

5           Because F5's purported prior art does not meet necessary claim limitations of the inbound

6   independent claims of the '319 and '374 patents, those independent claims (claims 1, 13, 29, 31,

7   and 32 of the '319 patent and claims 1 and 9 of the '374 patent) are not anticipated.  Further, all

8   claims that depend on those independent claims (claims 2-12, 14-23 of the '319 patent and claims

9   2-4, 6-8, 10-12, 14-15) are also not anticipated.

10    **B.**     **The Fact That "Route Metrics" Existed In The Prior Art Does Not Anticipate**

11   **The Inbound Dependent Claims**

12           F5 contends that the inbound dependent claims are anticipated because such dependent

13   claims require route metrics and such route metrics were known in the prior art and not invented

14   by Radware.  In addition to the route selection limitation for all inbound independent claims, the

15   dependent claims also require that selecting one of the routes be (1) "in accordance with one or

16   more criteria of the plurality of routes" or (2) "based on the proximity determination."  F5

17   contends GSLB anticipates these limitations because the use of route metrics was well known in

18   the prior art.  OB at 16.

19           The dependent claims cannot be anticipated by the sheer fact that the alleged route metrics

20   were purportedly present in GSLB and the Cisco DD System.  *Therasense*, 593 F.3d at 1332-33.

21   F5 must prove that such route metrics were used by a "device for managing a computer network,

22   said device connected to the Internet through a plurality of routes," wherein that device then

23   "select[s] the one of the plurality of routes" for purposes of link load balancing in a multi-homed

24   environment, which it did not and cannot demonstrate.

25

26

27

28

---

[9] As discussed above, even after the new software was written by F5 in 2014, the "re-configured" Cisco DD System still failed to meet the elements of the claims at issue.

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**C.    Outbound Claims are Not Anticipated By GSLB Or Rendered Obvious By BGP**

F5 contends that the outbound claims (claims 24-28 of the '319 patent) are anticipated by GSLB or rendered obvious by BGP.  F5's claims as to anticipation fail because, similar to the inbound claims, the outbound claims have a multi-homing route selection limitation that is not met by GSLB.  F5's claims as to obviousness similarly fail because substantial differences exist between BGP and LLB and F5 has provided no evidence that a person skilled in the art would be motivated to combine them.

**1.    Anticipation By GSLB**

Just like the inbound claims, each independent outbound claim contains a multi-homing limitation and the limitation of selecting one of the plurality of routes; however, for the outbound claims, the client is located at the multi-homed network and is sending packets to a remote server:

| Claim of the '319 Patent | Relevant Claim Language |
|---|---|
| Claim 24 (device claim) | "a routing device for routing data via a network from a first node to a second node, said network having a plurality of available routes from said first node to said second node … comprising … a route selector operable to select one of said routes for sending data between said first node and said second node on the basis of costing information of said respective routes" |
| Claim 26 (method claim) | "a method for routing data via a network from a first node to a second node, said network having a plurality of available routes from said first node to said second node … said method comprising the steps of … selecting one of said routes for sending data between the first node and the second node on the basis of costing information of said respective routes" |
| Claim 28 (method claim) | "a method for routing data by a content routing system from a first node to a second node via a network and comprising the steps of … |

| Claim of the '319 Patent | Relevant Claim Language |
|---|---|
| | providing a plurality of available routes from said first node to said second node … selecting one of said routes for sending data between said first node and said second node on the basis of costing information of said respective routes" |

F5 contends that GSLB anticipates these claims because GSLB "included functionality for route selection based on load balancing metrics (including latency, *i.e.*, an expense in terms of time) and NATing." OB at 20:4-6. For the reasons discussed *supra* at Section 2.A., GSLB only includes the functionality for *server selection*, which does not meet the claim limitations for *ISP link selection* in a multi-homed environment. Dkt. 195-1 ¶¶ 5-7.

Professor Rubin made clear in his declaration that "GSLB cannot perform outbound server load balancing." Dkt. 195-1 at ¶ 6. Further, Prof. Rubin confirmed that the Cisco DD System—F5's purported model GSLB system—does not perform outbound link load balancing. Not only was there no Internet connection for the test-bed system, thereby failing an essential element of the claims, Prof. Rubin explained how the system did not perform outbound LLB because the virtual address assigned to Cisco routers R1-R11, not R2-R12, was always returned even when the round-trip delay time ("RTT") of route R1-R11 was greater than the RTT of route R2-R12. *Id.* Dkt. 186-24 at ¶¶ 105-109. Because each independent outbound claim includes the route selection limitation, all outbound claims are similarly not anticipated by either GSLB or by the Cisco DD System.

The claims are additionally not anticipated because each independent claim includes the limitation that such route selection must be based on costing information of the routes and NAT-ing. F5 contends that this limitation is satisfied by GSLB because GSLB purportedly "included functionality for route selection based on load balancing metrics (including latency, *i.e.*, an expense in terms of time) and NATing. OB at 20:4-6. As discussed above, F5 cannot meet its burden by simply asserting that load balancing metrics and NATing were purportedly present in GSLB and the Cisco DD System. *Therasense*, 593 F.3d at 1332-33. F5 must prove that such

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1    route metrics and NATing were used to "select the one of the plurality of routes" for purposes of

2    load balancing among associated attached ISP links, which it did not and cannot demonstrate.

3    **2.    Obviousness In Light Of BGP**

4    F5 separately contends that such outbound claims are invalid as obvious in light of BGP.

5    F5 asserts that Prof. Rubin "concedes that prior art BGP could have been used for outbound ISP

6    link load balancing," yet provides no citation to this purported testimony.  In fact, Prof. Rubin

7    disagrees that BGP could have been used for outbound ISP link load balancing as claimed by the

8    patents-in-suit.  Particularly, as Prof. Rubin explains, BGP does not disclose, teach, or suggest

9    "selecting one of said routes for sending data between the first node and the second node on the

10   basis of costing information of said respective routes" as recited in the asserted outbound claims

11   of the '319 patent.  Dkt. 195-1 ¶¶ 9-11.  Further, ████████████████████████████

12   ████████████████████████████████████████████████  LKK Decl. Ex.

13   B at RadwareF5_00198304-05; *id.* Ex. C [Ex 71 to Brain Depo] at RadwareF5_00007968.

14   Accordingly, the asserted outbound claims of the '319 are not rendered obvious by BGP.

15   Moreover, both Prof. Rubin and ████████████████████████████

16   ██████████████████████████████████████████████████████

17   ███.  Dkt. 179-26 [Infringement Report] at ¶¶ 41-43, 68-75; LKK Decl. Ex. B at

18   RadwareF5_00198304-05; *id*. Ex. C at RadwareF5_00007968.  ████████████████

19   ████████████████████████████████████████████████████.  LKK

20   Decl. Ex. B at RadwareF5_00198304-05; *id*. Ex. C at RadwareF5_00007968.  ███████

21   ██████████████████████████████████████████████████████

22   █████████████████████████.  Ex. B at RadwareF5_00198304-05.  Prof. Rubin also

23   explains that, for this reason, one of ordinary skill in the art would not have been motivated to

24   combine BGP, GSLB, and NATing and one of ordinary skill in the art would not have expected

25   such combination to work to accomplish the LLB claimed in the patents.  Dkt. 195-1 ¶¶ 9-11.

26   Prof. Rubin explains that it would not have been obvious, or feasible, to combine GSLB, BGP,

27   and NATing to perform the LLB recited in the asserted claims.  *Id.*

28

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1    F5 has presented its motion to the Court without addressing or refuting Prof. Rubin's

2 opinions on the limitations of BGP or F5's previous acknowledgement of such limitations, which

3 precludes summary judgment. S*ee, e.g., Garter-Bare See Garter-Bare Co. v. Munsingwear, Inc.*,

4 650 F.2d 975, 982 (9th Cir. 1980) (reversing finding of summary judgment where "the testimony

5 of experts and others has not been put to the scrutiny of an orderly and coherent process of

6 examination and cross-examination."); *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353,

7 1374 (Fed. Cir. 2008) (finding that, in the face of conflicting evidence, the jury is entitled to

8 credit one expert's testimony over that of another when determining whether a claim limitation is

9 met). Because there are many disputed issues of material fact (i.e., disagreement between the

10 experts), F5's motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

11          **D.    Regardless, If GSLB Anticipates, The Asserted Patents Receive A New**
**Priority Date That F5's Purported Prior Art Does Not Pre-Date**

12

13    If this Court were to find that somehow GSLB could be considered as proper prior art and

14 meets all the elements of the asserted claims, F5 would still not be entitled to summary judgment

15 of invalidity of the '374 and '319 patents because those patents would then be entitled to the

16 earlier priority date of Radware's related U.S. Patent No. 6,249,801 ("the '801 patent") GSLB

17 patent and pre-date all asserted prior art.

18    The '319 patent, issued on September 11, 2012, is a division of the '702 patent and the

19 '374 patent, issued on July 9, 2013, is a continuation of the '319 patent. The '702 patent, which

20 issued on December 16, 2003, is a continuation-in-part of the '801 patent, which issued on June

21 19, 2001. The '801 patent has a priority date of July 15, 1998. If, according to F5, GSLB

22 anticipates LLB, then the subject matter for the current claims would necessarily have been

23 sufficiently disclosed in the '801 patent (which describes GSLB) such that the '374 and '319

24 patents would be entitled to the '801 July 15, 1998 priority date.

25    There is no dispute that F5's alleged prior art would post-date a July 15, 1998 priority

26 date, rendering the patents valid and infringed.

27

28

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW

1

### III.    THE ASSERTED CLAIMS ARE NOT OBVIOUS

2         F5 next asserts that, to the extent the Court does not find the claims anticipated, the claims

3   are obvious in light of the "core networking functionality" that purportedly existed in the prior

4   art.  F5 does not cite any evidence in support of its claim that it would be obvious to create LLB

5   in light of the prior "core networking functionality" other than the purported testimony of Mr.

6   Delgadillo and Mr. Darwin that GSLB could potentially be repurposed for ISP link load

7   balancing and the allegation that Radware ████████████████████████████████████████

8   ███████████ .

9         As discussed above, Radware's expert Prof. Rubin disputes this.  Prof. Rubin contends

10  that the prior "core networking functionality" that existed in the prior art does not disclose, teach,

11  or suggest ISP load balancing.  Dkt. 195-1 ¶¶ 9-11.  As Prof. Rubin explained, GSLB server load

12  balancing is distinct from ISP load balancing and GSLB server load balancing does not disclose,

13  teach, or suggest ISP load balancing.  *Id.*  Similarly, Prof. Rubin explained that BGP is distinct

14  from ISP load balancing and BGP does not disclose, teach, or suggest ISP load balancing.  *Id.*

15  Further, Prof. Rubin explains that repurposing software modules is common in the industry as

16  such modules are universally shared through designs implemented by networking equipment,

17  which has been done by F5 itself.  *Id.* ¶ 12.  Thus, the combination of GSLB and BGP

18  hypothesized by F5 (and any other purported "core networking functionality") does not disclose,

19  teach, or suggest each and every feature of the independent inbound and outbound claims of the

20  asserted patents.  Therefore, these claims and their dependent claims are not obvious over GSLB

21  and BGP.  *CFMT, Inc. v. Yieldup Intern. Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (citing *In*

22  *re Royka*, 490 F.2d 981, 985 (CCPA 1974) (to establish obviousness of a claimed invention, all

23  the claim features must be taught or suggested by the prior art combination)).

24         F5's argument similarly fails because it is unsupported by any expert opinion that LLB is

25  obvious in light of prior "core networking functionalities."  Federal Circuit law requires that

26  "there must be some articulated reasoning with some rational underpinning to support the legal

27  conclusion of obviousness."  *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir.

28  2008) (citations and quotation marks omitted).  It has further stated that, where "the technology

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

was complex and the prior-art references were not easily understandable without expert testimony[,]" "[e]xpert testimony was required not only to explain what the prior-art references disclosed, but also to show that a person skilled in the art would have been motivated to combine them in order to achieve the claimed invention." *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1348 (Fed. Cir. 2013).

As to secondary considerations of non-obviousness, F5's own discussion of such secondary considerations makes clear that there remain extensive disputed issues of fact regarding the commercial success, long felt need and failure of others, and industry praise Radware received as a result of its invention.  Radware cited reams of evidence in support of the commercial success, long felt need and failure of others, and industry praise, including testimony from Radware inventors, F5 white papers, F5 internal documents, a variety of third party news articles, and the opinion of Radware expert, Professor Rubin.  *See* Section III, *supra*.

F5's efforts to dispute Radware's evidence of commercial success, long felt need, and industry praise only make clear that, at minimum, a disputed issue of fact remains as to the secondary considerations of non-obviousness, which preclude resolution on summary judgment of the question of the existence of secondary considerations.  *See Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 886 (Fed. Cir. 1998).  For this separate reason, F5's motion for summary judgment on invalidity based on obviousness should be denied.

## IV.   CONCLUSION

For the above-stated reasons, F5's motion for summary judgment as to invalidity should be denied.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   Dated: June 23, 2015                   Respectfully submitted,

2                                     McDERMOTT WILL & EMERY LLP

4                                     By:*/s/ Fabio E. Marino*

5                                       Fabio E. Marino

6                                     Attorneys for Plaintiffs and Counterclaim-Defendants RADWARE, LTD. and RADWARE, INC.

RADWARE'S OPPOSITION TO F5'S
MSJ RE INVALIDITY
CASE NO. 5:13-CV-02024 RMW