Christopher Kao, Cal Bar No. 237716
CKao@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: 650-838-4300 / Fax: 650-838-4350

Ramsey M. Al-Salam, Cal Bar No. 109506
RAlsalam@perkinscoie.com
Nathaniel E. Durrance, Cal Bar No. 229210
NDurrance@perkinscoie.com
Stevan R. Stark (*Admitted Pro Hac Vice*)
SStark@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: 206-359-8000 / Fax: 206-359-9000

Daniel T. Keese, Cal Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Tel: 503-727-2000 / Fax: 503-727-2222

Attorneys for Defendant/Counterclaim-Plaintiff
F5 Networks, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., and RADWARE, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> F5 NETWORKS, INC., <br><br> Defendant and Counterclaim Plaintiff. | Case No. 5:13-cv-02024-RMW <br> (Related Case No. C-13-02021-RMW) <br><br> **DEFENDANT F5 NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** <br><br> Date: July 24, 2015 <br> Time: 9:00 a.m. <br> Dept.: Courtroom 6, 4th Floor <br> Judge: Hon. Ronald M. Whyte |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. THE CISCO DISTRIBUTEDDIRECTOR WHICH PERFORMS GSLB IS INVALIDATING PRIOR ART ...................................................................................... 1

    A. F5's Motion Is Based on Cisco DistributedDirector and Its GSLB Functionality ............................................................................................. 2

    B. Radware's Patents Are Not Entitled to a New Priority Date .................................. 3

    C. Cisco's DistributedDirector Was Disclosed by F5 ................................................. 4

    D. Cisco's DistributedDirector Is Prior Art ................................................................ 5

    E. Cisco's DistributedDirector Invalidates the Claims ............................................... 6

III. BGP IS INVALIDATING PRIOR ART ......................................................................... 8

IV. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING SECONDARY CONSIDERATIONS ............................................................................ 9

V. CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-00630-LHK, 2012 U.S. Dist. LEXIS 92314 (N.D. Cal. July 3,
   2012) (Koh, J.) ................................................................................................................ 8

*Lockwood v. American Airlines Inc.*,
   877 F. Supp. 500 (S.D. Cal. 1994), *aff'd*, 107 F.3d 1565 (Fed. Cir. 1997) .............................. 4

**RULES**

L.R. 3-1(f) ........................................................................................................................... 4

## I. INTRODUCTION

The asserted patent claims are invalid. As demonstrated in F5's motion for summary judgment, the claims are anticipated, or at least rendered obvious, by the Global Server Load Balancing ("GSLB") functionality in the prior art Cisco DistributedDirector systems, or by BGP, as admitted by Radware's expert.

In opposition, Radware attempts to distract the Court from the fundamental issue. With respect to GSLB, Radware argues: (1) GSLB is "an abstract concept"; (2) the asserted claims are entitled to a "new priority date" earlier than GSLB; (3) GSLB was not disclosed by F5 in its invalidity contentions; (4) DistributedDirector is not prior art; (5) GSLB does not anticipate or render obvious the claims because it does not disclose "multi-homing route selection"; and similarly, (6) even if a system might have been configured or capable to perform the claim methods, that does not render the claims invalid." With respect to BGP, Radware contends that F5's motion should be denied because (1) BGP was not disclosed in F5's invalidity contentions, and (2) BGP does not anticipate or render obvious the "outbound" claims because it does not disclose "route selection." Finally, Radware argues that F5's discussion of Radware's purported "evidence" of secondary considerations demonstrates that there is a disputed fact issue.

None of these arguments withstands scrutiny.

## II. THE CISCO DISTRIBUTEDDIRECTOR WHICH PERFORMS GSLB IS INVALIDATING PRIOR ART

Radware does not dispute that prior art GSLB functionality teaches nearly every limitation of the asserted claims of patents in suit. Instead, Radware's arguments rest largely on an apparent misimpression that F5's motion is based on GSLB in the abstract, as opposed to GSLB as it is specifically embodied by the Cisco DistributedDirector system. After this "misimpression" is removed, Radware's opposition is premised on the assertion that Cisco DistributedDirector is not prior art and that the Cisco DistributedDirector test bed could not perform ISP load balancing. None of these arguments presents a material issue of fact.

**A.     F5's Motion Is Based on Cisco DistributedDirector and Its GSLB Functionality**

Radware argues that GSLB as discussed in F5's summary judgment motion is based on an abstract concept, not based on any actual prior art system. (*See* Opp. at 1). In its motion to strike, Radware contends that "F5 makes it clear that GSLB is the alleged anticipatory prior art, not the Cisco DistributedDirector System." (Dkt. 201 at 5:11-13). This is a "straw man," intended to distract the Court from the issues. F5 uses "GSLB" to refer to the prior art functionality performed by the Cisco DistributedDirector. Even Radware acknowledges that it understood that F5's motion presented Cisco DistributedDirector as an "example of a 'prior art GSLB system[]' that would purportedly invalidate the claims." (*Id.* at 10:18-20).

Although GSLB is a functionality that was in various prior art systems, there is no need to consider any systems other than the Cisco DistributedDirector.[1] There are no relevant aspects of GSLB that are not disclosed by Cisco DistributedDirector, as is clearly indicated in F5's motion. (*See, e.g.*, Mot. at 4:22-5:20 (describing Cisco DistributedDirector prior art); *id.* at 6:25-8:16 (same)). The entire analysis regarding invalidity of the inbound claims based on GSLB is expressly based on Cisco DistributedDirector. (*See, e.g.*, *id.* at 14:17-18 ("The asserted claims are invalid based on GSLB systems, such as the Cisco DistributedDirector….")). By way of example, the following are samples from the invalidity analysis of the outbound claims presented by F5 in its motion:

- "As discussed above, prior art GSLB systems, including the Cisco DistributedDirector, included DNS resolution for responding to client requests, route selection for determining which server to direct traffic to, and NATing of received packets, and could be configured to select between ISPs in a multi-homed network based on the load balancing metrics" (*Id.* at 15:3-7);

- "The underlying principles of determining route metrics (even though not required by claims 1 and 31) and directing traffic over a network are the same, regardless of whether the destination is one of multiple remote servers or through a particular router on a multi-homed network. This is evidenced by the fact that preexisting GSLB code was used by Radware and that prior art GSLB systems could be configured to perform ISP load balancing on multi-homed networks,

---

[1] In fact, F5 asserts that the patents in suit are invalid based on other systems that perform GSLB, such as F5's 3DNS with BigIP, but elected not to seek summary judgment with respect to that prior art system.

such as discussed above. (*See*, *e.g.*, Ex. 3, Delgadillo Dep. at 41:18-42:23 (describing how DistributedDirector could be configured to perform ISP load balancing.))  In fact, prior art GSLB systems were used to perform load balancing over multiple ISP networks in a multi-homed environment, as is discussed above with respect to the Cisco DistributedDirector." (*Id.* at 15:17-26);

- "Moreover, as demonstrated by Dr. Alexander, the prior art DistributedDirector and routers (the DD system) could easily be configured to perform all the limitations of claim 1." (*Id.* at 16:1-2);

- "As discussed above, GSLB, including DistributedDirector, was capable of performing the claimed functionality, regardless of whether someone used it in such a configuration." (*Id.* at 16:10-12);

- "The determination and use of these types of route metrics was present in prior art GSLB.  For example, Cisco's DistributedDirector 'transparently redirects end-user requests to the closest server as determined by client-to-server topological proximity and/or client-to-server link latency (round-trip time).'" (*Id.* at 16:19-22);

- *See also generally* 17:1-19:20 (discussing invalidity in light of previous analysis of Cisco DistributedDirector).)

Similarly, the invalidity analysis of the "outbound" claims is also clearly based on Cisco DistributedDirector.  (*See, e.g.*, *id.* at 20:4-10 ("As was discussed above, prior art GSLB systems, such as the Cisco DistributedDirector, included functionality for route selection based on load balancing metrics (including latency, i.e., an expense in terms of time) and NATing. . . . Similar to as discussed above with respect to the inbound claims, as the outbound claims recite nothing more than these known GSLB techniques applied in the context of multi-homed networks, they are invalid.")).

For these reasons, Radware's argument that the Court should not consider the GSLB functionality of the DistributedDirector is meritless.

**B.   Radware's Patents Are Not Entitled to a New Priority Date**

Radware's argument that the patents are entitled to a new priority date also fails.  In particular, Radware's argument that the "patents-in-suit [are] entitled to the priority date of the parent applications, removing GSLB as a potential prior art reference" is premised on GSLB being an abstract concept.  (*See* Opp. at 1:6-11).  Moreover, the argument is based on a misunderstanding of the law.  The priority date of claims in a patent arising from a continuation-

in-part application is based on the timing of the new matter that supports the claims.  *See, e.g.*, *Lockwood v. American Airlines Inc.*, 877 F. Supp. 500, 507 (S.D. Cal. 1994), *aff'd*, 107 F.3d 1565 (Fed. Cir. 1997) ("If even a single feature of a claimed invention was first disclosed in the claimed new materials added to the CIP, and if it is not inherent in the parent application, then the claim is not entitled to the filing date of the parent application and the filing date is the date the CIP was filed.").[2]  While Radware's earlier application disclosed GSLB, the asserted claims are based on the new matter disclosed on December 20, 1999.  The fact that the claims were written in a manner that would encompass the use of GSLB in the prior art DistributedDirector system does not change the priority date of Radware's claims.

      Radware should also be precluded from making this new argument, particularly when the Local Patent Rules require a patent owner to disclose its claimed priority date for a patent.  Patent L.R. 3-1(f) ("For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled.")  Radware has never previously argued that it is entitled to a 1998 priority date, even when confronted with GSLB art, such as the Cisco DistributedDirector.[3]

      For the reasons above, Radware's arguments regarding a new priority date for the patent application should be rejected.

**C.    Cisco's DistributedDirector Was Disclosed by F5**

      Again, once Radware's "straw man" argument that the motion is premised on GSLB in the abstract falls, its argument that it was not disclosed as prior art also falls.  There is no dispute that F5 disclosed and charted the Cisco DistributedDirector as invalidating prior art in both its preliminary invalidity contentions and in Dr. Alexander's invalidity report.  (*See, e.g.*, Stark

---

[2] U.S. Patent No. 6,718,359, which is a continuation of the application that the '801 patent is based on, was found invalid by the U.S. Patent Office Board of Patent Appeal and Interferences based on GSLB technology.  (*See, e.g.*, Mot. at 8:20-23).

[3] Radware separately argues that Cisco DistributedDirector is not prior art, but not based on an alleged 1998 priority date. (*See, e.g.*, Opp. at 13:9-14-19).  That argument is discussed below, and has been addressed in F5's Opposition to Radware's Motion for Partial Summary Judgment Regarding Invalidity.

1   Decl. Ex. 1, F5's 2013-09-30 Preliminary Invalidity Contentions at 21 and 32; Mot. Ex. 9 at ¶¶

2   158-238; *see also* Mot. Ex. 10 and 11).  As Radware concedes, "[t]o the extent, [sic] F5 has

3   identified specific prior art references (e.g., Cisco's Distributed Director) in its invalidity

4   contentions, . . . F5 is, of course, entitled to pursue those properly disclosed theories."  (Opp. at

5   1:20-24).  Thus, Radware's argument that GSLB was not disclosed should be disregarded.

6   **D.     Cisco's DistributedDirector Is Prior Art**

7            Radware's argument that the Cisco DistributedDirector is not prior art should also be

8   rejected.  As is discussed in F5's Response to Radware's Motion for Partial Summary Judgment

9   Regarding F5's Second Affirmative Defense of Invalidity (Dkt. 197), there is no dispute that

10  Cisco's DistributedDirector product was in the prior art.  The documentary and testimony

11  evidence confirms that it was sold and used in the prior art, and there is no evidence to the

12  contrary.  There is undisputed testimony and documentary support that Cisco was selling and

13  offering for sale its DistributedDirector system, prior to April 1999 and that the

14  DistributedDirector system was capable of performing ISP load balancing.  (*See, e.g.*, Dkt. 197

15  at 15:7-18:2).  Mr. Delgadillo, Cisco's employee, testified that the DistributedDirector system

16  could accomplish ISP load balancing, and was likely used for that purpose.  (*See* Dkt. No. 183-

17  05, Ex. 3 at 42:12-23 and 73:5-19).[4]  And Mr. Darwin, a former Cisco employee, testified that

18  DistributedDirector was sold for such purposes. (*See* Dkt. No. 183-10, Ex. 8 at 257:10-258:19).

19  In addition, the test bed assembled by Dr. Alexander, F5's technical expert, is further evidence

20  that the prior art DistributedDirector system was capable of performing link load balancing.

---

[4] Radware argues in a footnote that Mr. Delgadillo testified that he was unaware of any Cisco products that were capable of performing "link load balancing." (Opp. at 14, n.8).  This is misleading, as the testimony that Radware refers to was based on the witness having an understanding of "link load balancing" that was not related to ISP load balancing, which he later clarified. (*See* Dkt. No. 183-05, Ex. 3 at 42:12-15 ("Q  What does link load balancing mean to you?  A  Link load balancing to me has to do with balancing traffic across physical links of a device, not across local ISPs.  It's about physical links.")).  He then went on to confirm that DistributedDirector could accomplish ISP load balancing. (*See id.* at 42:16-20 ("Q  I see.  That was -- that was -- that was part of my confusion.  I should have asked you to clarify your understanding at that time.  Would you agree [DistributedDirector] could accomplish ISP load balancing?  A  Yes.")).

1  With respect to the Cisco DistributedDirector white paper, it was publically available before the

2  invention date of the patents in suit.  Radware cannot establish a priority date as a matter of law

3  that predates this the white paper (even if that date were April 12, 1999, as Radware believes).

4  (*See, e.g.*, Dkt. 197 at 11:4-14:14).

5  **E.    Cisco's DistributedDirector Invalidates the Claims**

6        The asserted claims are invalid as a matter of summary judgment for the reasons set

7  forth in F5's motion.  In response, Radware argues that the Cisco DistributedDirector does not

8  invalidate the claims because it does not have "the ability to select one of the plurality of routes

9  or load balance multiple ISP links."  (Opp. at 15:5-9)  With regard to the "inbound" claims,

10 Radware argues that its GSLB functionality does not invalidate the claims because it does not

11 select one of the plurality of routes.  (Opp. at 15:5-9; *see also id.* at 17:5-6).  Apart from arguing

12 that the prior art does not disclose "route metrics" with regard to dependent claims, Radware

13 does not dispute that it discloses the other limitations of the "inbound" claims.

14       Radware's argument essentially boils down to the fact that prior art GSLB selected

15 between routes had different destinations, not a single destination.  This is true, but does not

16 address the question of whether such prior art devices were *capable* of comparing two routes to

17 the same destination or, at the least, whether it would have been obvious to configure the

18 DistributedDirector in that manner.  In that regard, F5 has presented direct evidence that Cisco

19 DistributedDirector was capable of performing such functionality and had been sold for such

20 purposes.[5]  In fact, Radware fails to explain why the Cisco DistributedDirector system would be

21 incapable of performing ISP load balancing or why it would have been nonobvious to use it in

22 that configuration.  F5's expert, Dr. Alexander, presented a detailed description of the

23 capabilities and configuration of the Cisco DistributedDirector system (*see, e.g.*, Ex. 9 ¶¶ 158-

---

[5] Although the relevance is unclear, Radware contends that GSLB always returns the best server, until that best server stops being the best available server. (Opp. at 17:24-28). Radware goes on to cite to an F5 document and says that when GSLB switches to the next best available, it can cause "long and unpredictable failover times" and that GSLB only works in the inbound direction. (*Id.* at 17:26-18:2).  However, the document cited is discussing BGP link failure and does not state either of these propositions.

238) and presented a detailed analysis for why it taught all the aspects of the claims (*see, e.g.*, Exs. 10 and 11), Radware has not argued that the system was technologically incapable of performing the claims, instead resorting to Dr. Rubin's quibbles about the inspection of the testbed—all of which are insignificant as discussed in F5's motion.  The bottom line is that the prior art contained devices that could choose the best route, including based on metrics such as hops and latency, between a source and two equivalent destinations (i.e., destinations that provide the same services).  Radware has never explained why it is an invention to modify the device such that it chooses the best route, using the same metrics, between the source and the *same* destination.

Instead of addressing the actual capabilities of DistributedDirector or whether DistributedDirector was actually used for ISP load balancing, Radware argues that even if DistributedDirector could have been configured to perform ISP load balancing, that is insufficient to prove invalidity.  As discussed in F5's response to Radware's motion for summary judgment regarding invalidity (Dkt. 197), this argument is inconsistent with the Court's construction of the device and apparatus claims as merely requiring software *capable* of performing the claim elements.  Radware has consistently argued that the claims do not require that a system be actually used to perform ISP load balancing.  During claim construction, Radware convinced the Court that "infringement of the system or device claim occurs: when one makes, uses, offers to sell or sells the claimed apparatus capable of performing the claimed functions."  (Dkt. 145 at 9; *see also* Dkt. 122 at 21 (construing "configure to" in claims 19 and 14 of the '374 patent as not requiring "user intervention if the feature claimed is included in the product as supplied")).  Yet, if infringement occurs based on sale of a system that is capable of performing the claimed functions, then the claims necessarily must be invalid if prior art systems were capable of performing the claimed functionality.  Radware's arguments are also contrary to its pending motion for summary judgment of infringement (Dkt. 182 at 13), where it asserts infringement so long as the "functionality is already present in the underlying . . . software." (*Id.* at 13:11).  Radware cannot assert that the prior art is not invalidating, even if it

1   was capable of performing the claimed functionalities, but F5's products infringe even with the
2   relevant software is not enabled.[6]

3       Radware also argues that "inbound" dependent claims include "metrics" not disclosed by
4   DistributedDirector.  However, as discussed in F5's motion, the Cisco DistributedDirector
5   included selecting a route based on availability, proximity, latency and the use of weighted
6   metrics (Dkt. 183 at 5:10-20), and thus anticipates dependent claims that use such information
7   for route selection.  Moreover, to the extent that any of the claimed "metrics" were not used by
8   DistributedDirector, such would still be obvious in light of Radware's admission that all the
9   metrics for route selection were previously known in the art.  Radware does not dispute the
10  presence of any other elements of the dependent claims in the prior art.

11      Radware's arguments regarding the outbound claims mirror its arguments regarding the
12  inbound claims, and thus also fail for the reasons discussed above.

### III.     BGP IS INVALIDATING PRIOR ART

14      Radware claims that that BGP is not viable prior art because it was not previously raised
15  by F5 in its disclosures.  As is discussed in F5's response to Radware's motion to strike,
16  Radware cannot complain that it is prejudiced by the use of BGP as invalidating prior art.  This
17  is not a case where Radware has been surprised by some previously undisclosed prior art.
18  Rather, F5's motion regarding BGP is based on Radware's expert's own recent admissions.

19      Radware contends "F5 asserts that Prof. Rubin 'concedes that prior art BGP could have
20  been used for outbound ISP link load balancing,' yet provides no citation to this purported
21  testimony."  (Opp. at 22:4-6).  This is wrong.  Dr. Rubin's admissions with respect to prior art
22  BGP are discussed in the F5's motion on page 6, lines 5-16.  Tellingly, Radware did not deny

---

[6] Radware's reliance on *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2012 U.S. Dist. LEXIS 92314, (N.D. Cal. July 3, 2012) (Koh, J.), does not apply to the facts of this case.  In *Apple*, Samsung's expert reconstructed an alleged prior art system based on his interpretation of six prior art documents related to a particular technology.  None of the documents disclosed all the limitations of the claims or where known to have been used together.  *Id.* at *14-15.  Here, Dr. Alexander demonstrated that the Cisco DistributedDirector, as it existed in the prior art, was capable of performing the claims.  Also, in the *Apple* case, Samsung had not alleged obviousness.  *Id.*

any of Dr. Rubin's admissions made in his deposition.  Instead, Radware argues that its expert believes that "BGP does not disclose, teach or suggest 'selecting one of said routes for sending data between the first node and the second node on the basis of costing information of said respective routes'." (*Id.* at 22:6-11).  The alleged distinctions that Radware contends exists between BGP and the claims are irrelevant to the claimed functionality.  In particular, Radware argues that BGP is "weaker/more expensive/more complicated/less efficient," "complex," "required substantial networking expertise and expensive routers," and "was unable to provide the 'granular control' to 'dynamically' manage ISP link load" (*Id.* at 15-22), none of which is related to any actual claim limitations.  Thus, Radware fails to raise any valid disputed issues with respect to BGP, and for the reasons presented in F5's motion, the "outbound" claims are invalid.

## IV.     THERE ARE NO GENUINE ISSUES OF MATERIAL FACT REGARDING SECONDARY CONSIDERATIONS

Radware does not raise any disputed issues of material fact related to secondary considerations of nonobviousness.  Radware's only argument regarding secondary considerations is that it "cited reams of evidence" and "F5's efforts to dispute Radware's evidence of commercial success, long felt need, industry praise only make clear that, at minimum, a disputed issue of fact remains." (Opp. at 25:6-18).  Radware does not, however, refute any of the arguments presented in F5's motion, which demonstrate that Radware's alleged "evidence" is insufficient as a matter of law.  Radware also does not dispute the simultaneous invention disclosed by the Maki-Kullas patent, which is strong evidence of obviousness.

## V.     CONCLUSION

For all the reasons above, Radware's opposition fails to raise any disputed issues of material fact, and F5's motion for summary judgment of invalidity should be granted.

| | | |
|---|---|---|
| 1 | DATED: July 7, 2015 | By: */s/ Ramsey M. Al-Salam* |
| 2 | | Ramsey Al-Salam, Cal Bar No. 109506 |
| | | RAlSalam@perkinscoie.com |
| 3 | | Nathaniel E. Durrance, Cal Bar No. 229210 |
| | | NDurrance@perkinscoie.com |
| 4 | | Stevan R. Stark *(Admitted Pro Hac Vice)* |
| | | SStark@perkinscoie.com |
| 5 | | PERKINS COIE LLP |
| | | 1201 Third Avenue, Suite 4900 |
| 6 | | Seattle, WA 98101 |
| | | Tel: 206-359-8000 / Fax: 206-359-9000 |

Christopher Kao, Bar No. 237716
CKao@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel: 650-838-4300 / Fax: 650-838-4350

Daniel T. Keese, Cal Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, Tenth Floor
Portland, OR  97209-4128
Tel: 503-727-2000 / Fax: 503-727-2222

*Attorneys for Defendant/Counterclaim-Plaintiff F5 Networks, Inc.*