UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., et al.,<br>　　Plaintiffs and Counterclaim Defendants,<br><br>　　v.<br><br>F5 NETWORKS, INC.,<br>　　Defendant and Counterclaim Plaintiff. | Case No.  5:13-cv-02024-RMW<br><br>**ORDER CONSTRUING CLAIMS OF U.S. PATENT NOS. 6,473,802; 7,831,712; 8,103,770; AND 8,392,563** |

On October 27, 2015, the court held a claim construction hearing for the purpose of construing the meaning of certain terms in four F5 patents. While the parties initially requested that the court construe seven disputed terms, the parties submitted a written stipulation construing two of the terms,[1] and at the hearing on this matter, the parties reached agreement regarding the construction of all but one remaining term. This order adopts the parties' agreed constructions and rules on the remaining disputed term, namely, "unspecific regarding."

**I.    BACKGROUND**

This is the second order construing claim language in this case. The first order, issued on April 18, 2014, construed certain language in patents that Radware has asserted against F5. Dkt.

---

[1] Dkt. No. 259.

No. 122. This order construes certain terms of four patents that F5 asserts against Radware. F5 alleges that Radware infringes claims 33, 42, 43, and 51 of U.S. Patent No. 6,473,802 ('802 patent); claims 1, 5-7, 10, 12, and 14-25 of U.S. Patent No. 7,831,712 ('712 patent); claims 1, 4, 6, 7, and 9-13 of U.S. Patent No. 8,103,770 ('770 patent); and claims 1-3, 5-6, 17-19, and 21-22 of U.S. Patent No. 8,392,563 ('563 patent). F5's asserted patents generally relate to enabling a device on a computer network to direct subsequent requests from a given client computer to a given destination server.

The '712 patent, the '770 patent, and the '563 patent all claim priority to the '802 patent by way of one or more continuations. The specifications of F5's asserted patents are substantially the same, and the '712 patent, the '770 patent, and the '563 patent incorporate the specification of the '802 patent by reference. *See* '802 patent; '712 patent col.1 ll.6-19; '770 patent col.1 ll.6-20; and '563 patent col.1 ll.6-25.

The technology at issue in F5's patents relates to maintaining persistent communication between at least one client and a plurality of servers in a computer network such as the Internet. Many data transmissions use HTTP, an application level protocol for transferring resources across the Internet. '802 patent col.5 ll.52-54. A server, when sending a web page or other HTTP object to a client, may also send a piece of "state" information that the client's web browser may store. *Id.* col.6 ll.1-3. This state object is called a "cookie," for no compelling reason. *Id.* col.6 ll.8-9. A cookie may be used, for example, to send back registration information so that a user does not have to retype a user ID number or indicate specific preferences each time the user connects to a website or service. *Id.* col.6 ll.10-18.

To meet user demand, some content providers host copies of content and applications on multiple servers. A device such as a "server array controller," in the language of F5's patents, might then balance the load among the servers. *See* '802 patent col.1 ll.26-34. In some cases, however, the saved state of the relationship between a client and server may create a load balancing problem. *Id.* col.6 ll.39-41. For example, each server that is managed by a server array controller may not share the same state relationship with a given client. *Id.* col.6 ll.41-44. In that

case, the controller must persistently send a repeated client HTTP request to the same node server because it is difficult to recreate the same state relationship in another server during the HTTP request/response session. *Id.* col.6 ll.44-47. The claimed inventions allow a network device to balance load and route clients to the proper server based on information in a cookie. Figure 1A of the asserted patents illustrates the major components described above:



**FIG. 1A**

1      Figures 2A and 2B of the asserted patents illustrate the basic cookie mechanism for load

2 balancing and persistence. *See, e.g.,* '802 patent Figs. 2A and 2B. Figure 2A describes how a

3 client issues an HTTP request without a cookie, and the request is routed to a server selected by

4 the server array controller. The client receives a response from the server, along with a cookie that

5 includes information that can be used by the server array controller to identify the server that it

6 selected for the client. *See, e.g., id.* col.8 ll.2-36. Figure 2B describes how subsequent requests

7 from the client are sent along with a copy of the cookie. When requests including the cookie are

8 received, they are routed to the server identified by the cookie. *See id.* col.8 l.36 – col.9 l.13.

9      F5's asserted patents describe four different "modes" of employing a cookie to persistently

10 direct HTTP connections or other requests to a server: associative, passive, rewrite, and insert.

11 '802 patent, Abstract. These four modes are significant because F5 granted a license for Radware

12 to sell products practicing the associative and passive modes as part of a settlement of prior

13 litigation. Dkt. No. 240 at 3; Dkt. No. 60-2. The main differences among the modes are (1) what

14 content is stored in the cookie and (2) which component in the system inserts the cookie into the

15 HTTP response.

16      Representative claim 33 of the '802 patent describes one possible method of achieving

17 persistency between a client and a server:

> 33. A method for load balancing access to requests from at least one client to a plurality of servers, comprising:
> (a) receiving a Hypertext Transfer Protocol (HTTP) request from a client, the HTTP request comprising a request for access to a resource provided by at least one of the plurality of servers;
> (b) determining whether the HTTP request includes a Cookie comprising information associated with a destination server of the plurality of servers;
> (c) if the HTTP request does not include said Cookie, selecting, by a server array controller, a server of the at least one of the plurality of servers based on a load balancing algorithm and forwarding the HTTP request to the selected server;
> (d) receiving, by the server array controller, an HTTP reply from the selected server, the HTTP reply comprising Cookie information and a command to create a Cookie;
> (e) writing, by the server array controller, in the Cookie information, identification data for identifying the selected server;
> (f) sending the HTTP reply with the identification data to the client; and

(g) if the determining of step (b) determines that the HTTP request includes said Cookie, forwarding the HTTP request to the destination server.

## II.   LEGAL STANDARD

Claim construction is exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal citation omitted). Claim terms "are generally given their ordinary and customary meaning," defined as "the meaning . . . the term would have to a person of ordinary skill in the art in question . . . as of the effective filing date of the patent application." *Id.* at 1313 (internal citation omitted). The skilled artisan reads the claim term "in the context of the entire patent . . . including the specification." *Id.*; s*ee also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). In determining the meaning of a disputed claim limitation, the intrinsic evidence, including the claim language, written description, and prosecution history, is the most significant. *Phillips*, 415 F.3d at 1315-17. The court reads claims in light of the specification, which is "the single best guide to the meaning of a disputed term." *Id.* at 1315. Furthermore, "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The words of the claims must be understood as the inventor used them as revealed by the patent and prosecution history. *Id.*

Although extrinsic evidence is less significant than the intrinsic record, the court may also reference extrinsic evidence to "shed useful light on the relevant art." *Id.* at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). "[T]echnical dictionaries may provide [help] to a court 'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms. . . . Such evidence . . . may be considered if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'" *Id.* at 1318 (internal citations omitted).

The patent statute requires claims to be definite by "particularly pointing out and distinctly claiming the subject matter" that the inventor regards as the invention. 35 U.S.C. §112 ¶ 2. The definiteness standard under Section 112 is met when a patent's "claims, read in light of the patent's specification and prosecution history, … inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, ---- U.S. ----, 134 S.Ct. 2120 (2014).

### III. CLAIM CONSTRUCTION

#### A. Terms with Stipulated Constructions

On October 23, 2015, the parties filed a joint statement indicating that they had agreed on constructions of the terms "application level" and "server array controller." Dkt. No. 259.

##### 1. "Application level"

| Stipulated Construction |
|---|
| "application level": application layer (including HTTP) |

This term appears in asserted claims 1, 9 and 11 of the '770 patent; asserted claims 1, 17 and 18 of the '563 patent; and asserted claims 1, 7, 15 and 16 of the '712 patent. The court adopts the parties' stipulated construction.

##### 2. "Server Array Controller"

| Stipulated Construction |
|---|
| "server array controller": hardware, or hardware with software, that distributes network traffic to server computers |

This disputed term appears in asserted claims 33 and 42 of the '802 Patent; claim 12 of the '770 Patent; and claim 19 of the '712 Patent. The court adopts the parties' stipulated construction.

#### B. Identification and Persistence Terms

At the October 27, 2015 claim construction hearing, the parties agreed that for purposes of evaluating the validity of F5's asserted patents, the parties would adopt F5's proposed constructions of the terms listed below that specify what information is stored in a cookie in the context of the claimed inventions. The court notes that for the three "identification" phrases listed below, F5 has proposed (and Radware has agreed) that the court assign the terms their "plain and

6

ordinary meaning." At the claim construction hearing, the court expressed concern that the parties' experts may have different interpretations of the plain and ordinary meanings of these terms. The court's adoption of plain and ordinary meaning constructions is premised on the parties' agreement that the terms are non-technical terms that can be readily understood and will not require specialized explanations from experts at trial.

The parties also agreed at the claim construction hearing that the issue of whether Radware has breached its license agreement with F5 depends upon an interpretation of the license agreement as applied to Radware's products. Interpretation of the parties' license agreement is beyond the scope of this claim construction order.

### 1. "Identification data for identifying the selected server"

| Agreed Construction |
| --- |
| "identification data for identifying the selected server": (plain and ordinary meaning) |

The phrase "identification data for identifying the selected server" appears in claim 33 of the '802 patent. The court adopts the parties' agreement that this language has its plain and ordinary, non-technical meaning and will not require specialized explanation at trial.

### 2. "Identification data comprises a server identifier"

| Agreed Construction |
| --- |
| "identification data comprises a server identifier": (plain and ordinary meaning) |

The phrase "identification data comprises a server identifier" appears in claim 43 of the '802 patent. The court adopts the parties' agreement that this language has its plain and ordinary, non-technical meaning and will not require specialized explanation at trial.

### 3. "Information indicating the one of the plurality of [destination] servers"

| Agreed Construction |
| --- |
| "information indicating the one of the plurality of [destination] servers": (plain and ordinary meaning) |

The language above appears in claim 1 of the '770 patent and in claim 7 of the '712 patent. The court adopts the parties' agreement that this language has its plain and ordinary, non-technical

meaning and will not require specialized explanation at trial.

### 4. "Persistence information"

| Agreed Construction |
|---|
| "persistence information": information that indicates a relationship between a previously selected destination and a client's request |

The term "persistence information" appears in asserted claim 51 of the '802 patent and claims 23-25 of the '712 patent. The court adopts the parties' agreed construction.

### C. "Unspecific regarding"

| F5's Proposed Construction | Radware's Proposed Construction | Court's Construction |
|---|---|---|
| "unspecific regarding": does not contain information identifying | "unspecific regarding": (term is indefinite under 35 U.S.C. § 112 or construe as "unspecific regarding") | "unspecific regarding": unspecific regarding |

This term—the only remaining term in dispute—appears in asserted claims 1 and 9 of the '770 patent; claims 1, 9 and 17 of the '563 patent; and asserted claims 1, 7, 15, and 23 of the '712 patent. For example, Claims 1, 7, 15, and 23 of the '712 patent recite that the client's "request is unspecific regarding the [at least] one destination server that provides access to the network domain resource." Claims 1 and 9 of the '770 patent recite that the client's "request is unspecific regarding the at least one server." Similarly, claims 1, 9, and 17 of the '563 patent recite that a client device's "request is unspecific regarding the at least one server device."

Radware argues that the disputed term is indefinite. Dkt. No. 245 at 18-23. Radware raises two principal arguments. First, Radware argues that the term introduces a negative limitation without support in the specification. This argument is without merit because the specification has abundant support for the "unspecific regarding" limitation. As the specification explains, a request from a client, such as the initial request, may not include persistence information that can be used to identify a specific destination server. *See, e.g.,* '770 patent at Figs. 1A, 2A, 3A, 4A, 5A, and 6A.

Second, Radware argues that "unspecific regarding" is a term of degree that lacks objective

bounds. This argument also misses the mark. "Unspecific regarding," in the context of the asserted patents, is not a term of degree. Either a request has a cookie with information about a particular server, or it does not. Further, under *Nautilus*, a claim need only provide "reasonable clarity." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "Absolute precision is unattainable." *Id.* Even if "unspecific regarding" were a term of degree, the Federal Circuit does not require absolute precision.

This court finds that in the context of F5's asserted patents, a person of ordinary skill in the art would readily understand that a request that is "unspecific regarding" the destination server is simply a request that does not contain persistence information directing it at a particular destination server within a group of servers.

Radware argues that aside from the issue of indefiniteness, F5's proposed construction is inconsistent with the specification because even a request made without persistence information in a cookie must contain *some* information identifying the server to which the request is directed "in the form of the domain name or the IP address of the destination server." Dkt. No. 245 at 21. While Radware's brief does not fully develop this argument, Radware is apparently drawing a distinction between not having *any* information identifying a destination server, as F5's proposed construction suggests, and not having *specific* information about the destination server, as "unspecific" requires. The underlying rationale for Radware's argument appears to be that it would be impossible even to send a request to a server if the request contains *no* information about the destination server (such as the server's domain name or IP address) either in the form of a cookie or elsewhere within the request. Radware concedes that a request for content from a website might really be a request directed to "the virtual IP address of a load balancing device that routes the request to the optimal destination server." *Id.* Such a request would not be specific to a particular server, but, to a person of ordinary skill in the art, the request would seem to fit within the context of the claims in which the disputed term appears. Accordingly, Radware's criticism is not a reason for finding claims that recite the term "unspecific regarding" indefinite.

Nevertheless, Radware's concern that F5's proposed construction might cause confusion

between a complete lack of information and a lack of specific information is well-taken. Accordingly, the court construes "unspecific regarding" simply as "unspecific regarding." At the claim construction hearing, F5 indicated that it does not object to this proposed alternative construction.

## IV. ORDER

For the reasons set forth above, the court construes the claims as follows:

| Claim Language | Construction |
|---|---|
| Application level | Application layer (including HTTP) |
| Server Array Controller | Hardware, or hardware with software, that distributes network traffic to server computers |
| Identification data for identifying the selected server | (Plain and ordinary meaning) |
| Identification data comprises a server identifier | (Plain and ordinary meaning) |
| Information indicating the one of the plurality of [destination] servers | (Plain and ordinary meaning) |
| Persistence Information | Information that indicates a relationship between a previously selected destination and a client's request |
| Unspecific regarding | Unspecific regarding |

**IT IS SO ORDERED.**

Dated: November 6, 2015

_____
Ronald M. Whyte
United States District Judge