1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12   RADWARE, LTD., et al.,                    Case No.  5:13-cv-02024-RMW

             Plaintiffs,
13
                                               **[TENTATIVE] ORDER DENYING**
14       v.                                    **MOTION FOR RECONSIDERATION**

     F5 NETWORKS, INC.,                         Re: Dkt. No. 274-3
15
             Defendant.
16

17          This court granted plaintiff Radware leave to file a motion for reconsideration of the

18   portions of the court's October 15, 2015 summary judgment order dealing with lost profits. Dkt.

19   No. 266. In its motion for reconsideration, plaintiff asserts that this court committed clear error by

20   analyzing plaintiff's alleged lost profits under the incorrect assumption that there are acceptable

21   non-infringing substitutes to plaintiff's patented products. Dkt. No. 274-3. Defendant F5 filed an

22   opposition, Dkt. No. 284, and plaintiff filed a reply, Dkt. No. 290-3.

23          The court will hear oral argument on the instant motion, along with F5's separately filed

24   renewed motion for summary judgment of non-infringement, on January 8, 2015 at 9:00 a.m. The

25   parties should be prepared to critique the tentative order below. However, no further briefing will

26   be accepted.

27          For the reasons explained below, the court [TENTATIVELY] DENIES the motion for

28                                              1

United States District Court
Northern District of California

1    reconsideration.

2    **I.     BACKGROUND**

3          Radware alleges that F5 infringes certain claims of U.S. Patent Nos. 8,266,319 (the "'319

4    Patent") and 8,484,374 (the "'374 Patent"), both of which relate to link load balancing in a multi-

5    homed environment, that is, a network with multiple connections to the Internet. *See* '319 col.15

6    ll.34–37. "Link load balancing" is a process for allocating network communications across these

7    connections.

8          Radware accuses F5's "BIG-IP Application Delivery Controller" of infringement. The

9    infringement issues focus on three modules within F5's BIG-IP product: the Link Controller,

10   Local Traffic Manager ("LTM"), and Global Traffic Manager ("GTM"). Dkt. No. 179-3 at 10-11.

11   Radware asserts that these modules implement the claimed link load balancing feature.

12         "LTM's primary functionality is local server load balancing, not ISP load balancing. In

13   particular, an LTM can sit between a local network and the internet, and control the routing of

14   incoming messages to different servers." Dkt. No. 184-3 (Brewer Decl.) ¶ 8. "GTM's primary

15   functionalities are to provide DNS-related services and global server load balancing ('GSLB').

16   DNS services relate to responding to client requests for IP addresses associated with a domain

17   name (e.g., 'Amazon.com')." *Id.* ¶ 9. F5 claims that in December 2014, it made changes to the

18   accused products via a "hotfix" to remove the functionality Radware accuses of infringement. Dkt.

19   No. 207 at 3-4.

20         Radware seeks damages in the form of lost profits for F5's GTM and LTM sales.[1]

21   Radware asserts that, but for F5's sales of these allegedly infringing products, Radware would

22   have sold more of its competing Alteon and LinkProof products. Radware attempts to justify its

23   lost profits calculation based on a 2011 survey conducted by TechValidate. Dkt. Nos. 185-3,

24   274-17 (Malackowski Rep.) at 71-74. The survey targeted F5 customers that used an Oracle

25

26   _____

[1] Radware also seeks lost profits for F5's Link Controller sales, Dkt. No. 185-3 at 71, but F5's

27   summary judgment motion related only to GTM and LTM sales. Link Controller's "primary
     purpose is to provide, in part, ISP link load balancing functionality," but Link Controller is being

28   discontinued in the United States. Dkt. No. 190 at 3.

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS

1   solution and had 261 respondents. *Id.* at 71. The survey listed seventeen features of F5's BIG-IP

2   product, including link load balancing, compression, and advanced routing, among others, and

3   asked customers to select any and all features that they considered important to performance. *Id.* at

4   71–72. Twelve percent of respondents selected link load balancing as an "important" feature.

5   Based on these results, Radware's expert concluded that 12% of F5 customers who purchased

6   BIG-IP LTM and GTM devices would have alternatively purchased Radware products but for

7   F5's infringement. *Id.* at 71-73.

8         F5 moved to exclude Radware's lost profits theory on the basis that Radware's evidence

9   showing that Radware would be entitled to 12% of F5's sales is unreliable. Dkt. No. 187 at 10-18.

10   This court agreed and, on October 15, 2015, granted the motion for summary judgment for F5 on

11   Radware's claim for profits it lost as a result of LTM and GTM sales. Dkt. No. 294 (public

12   version) at 55-60. Radware now moves for reconsideration.

13   **II.   ANALYSIS**

14       **A.  Legal Standard**

15         Reconsideration is appropriate if the district court (1) is presented with newly discovered

16   evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is

17   an intervening change in controlling law. There may also be other, highly unusual, circumstances

18   warranting reconsideration. *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255,

19   1263 (9th Cir. 1993) (citations omitted). A motion for reconsideration is an "extraordinary

20   remedy, to be used sparingly in the interests of finality and conservation of judicial resources."

21   *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

22   "Likewise, as a general rule, such motions do not provide a vehicle for the introduction of new

23   evidence or affidavits." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (citing *Becton*

24   *Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797 (Fed. Cir. 1990)).

25       **B.   Radware Has Not Shown that the Alleged Infringement Caused the Loss of
        Profits for Which Radware Seeks Damages**

26         Radware claims that the court committed clear error in granting summary judgment

27

28
                                     3

United States District Court
Northern District of California

because it purportedly applied an incorrect legal standard. As explained below, the court disagrees.

### 1.  The *Panduit* Factors

To recover lost profits, a patentee "must prove a causal relation between the infringement and its loss of profits" by demonstrating a reasonable probability that that "'but for' the infringement, it would have made the infringer's sales." *Bic Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). A lost profits award cannot be speculative. *Id.* The *Panduit* factors are commonly, though not exclusively, used to show "but for" causation in a lost profits analysis by demonstrating: (1) demand for the patented product; (2) the absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit the patent owner would have made. *Id.* at 1217-18 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)). "The finding of the amount of damages for patent infringement is a question of fact on which the patent owner bears the burden of proof." *Id.* at 1217.

Radware argues that F5 only moved for summary judgment on *Panduit* Factor One. According to Radware, F5 argued that with the TechValidate survey, Radware failed to present sufficient evidence to prove demand for the patented feature. Dkt. No. 274-3 (Mot. for Reconsideration) at 3 (citing Dkt. No. 184-7 at 16-17). Radware asserts that "F5 challenged no other aspect of Radware's *Panduit* analysis, namely, Factors Two, Three and Four." *Id.* Nevertheless, Radware argues, "despite F5's Motion being limited to an alleged failure of proof as to Factor One, this Court granted summary judgment based on a presumed failure of proof as to Factor Two." *Id.*

In support of its argument, Radware cites a portion of the court's summary judgment order that explained how Radware could attempt to show that Radware would have captured all or a portion of F5's sales in the absence of infringement:

> If Radware is simply using the *Panduit* factors to show the number of sales Radware would have made but for F5's infringement, Radware may either show the absence of non-infringing alternatives under the second *Panduit* factor, or show what portion of customers would have rejected available non-infringing alternatives and

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS

United States District Court
Northern District of California

purchased Radware's products.

Dkt. No. 294 at 58 (citing Northern District of California Model Patent Jury Instruction 5.3). Based on Radware's position that Radware was "apportioning" the lost profits[2] rather than seeking 100% of F5's unit sales (as Radware might try to do if Radware products were the only non-infringing alternatives), the court explained its understanding of Radware's position: "Radware is attempting to do the latter: to show the number of sales made by F5 that Radware would have made despite the availability of acceptable non-infringing substitutes." *Id.* The order "next examine[d] whether Radware's evidence purporting to show that Radware would have recovered 12% of the sales of GTM and LTM is sufficiently reliable to justify an award." *Id.* The court granted summary judgment in part because it found that the TechValidate survey "does not support the conclusion that had F5 exited the market, 12% of F5 customers would have turned to Radware." *Id.* at 59. Radware claims that the court committed clear error regarding the second *Panduit* factor because the court purportedly "failed to consider Radware's actual lost profits theory, which is based on the absence of acceptable non-infringing alternatives." Dkt. No. 274-3 at 2.

The court initially questions a premise of Radware's reconsideration motion: It is not clear that F5 **only** moved for summary judgment on the first *Panduit* factor. For example, the motion discusses case law that applies the entire market value rule and not the *Panduit* factors. Dkt. No. 187 at 11 (citing case law for the proposition that "any award must not be based on the entire value of a device that contains both patented and unpatented components unless the patented component is the basis for customer demand"). Moreover, Radware asserted in its opposition brief that some of the case law cited in F5's motion applied to the second and third *Panduit* factors— purportedly **not** the first. *See* Dkt. No. 204-3 at 13-14. This suggests that Radware suspected that F5's motion covered more than *Panduit* Factor One. Additionally, at the hearing on F5's motion, counsel for F5 argued that Radware's evidence was insufficient under the first *Panduit* factor, the

---

[2] *See* Dkt. No. 204-31 (Malackowski Dep.) at 56:21-57-19 (describing how Radware's expert "conservatively apportioned the lost profits," reducing Radware's purported entitlement from 100% to 12% of F5's sales).

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS

second *Panduit* factor, and the entire market value rule. *See* Dkt. No. 332, MSJ Hr'g Tr. 104:10-19, 106:7-10, 107:6-9 (July 24, 2015). Rather than presenting evidence on the other factors in its opposition, Radware simply argued that issues other than the first *Panduit* factor were not before the court. *See* Dkt. No. 204-3 at 13-14. To the extent that Radware misunderstood the scope of F5's motion, however, F5's subsequent briefs have not limited the basis of F5's motion to a particular *Panduit* factor. While the court could deny Radware's motion for reconsideration solely on the basis that Radware failed previously to present evidence that it satisfied the remaining *Panduit* factors,[3] the court declines to do so here.

The parties have presented dueling interpretations of the court's summary judgment order that go beyond the order's intended scope. Accordingly, the court takes this opportunity to clarify its order regarding lost profits.

### a.    Factor One: Demand for the Patented Product

In an attempt to downplay the significance of the TechValidate survey, Radware reiterates its position that it was not required to prove demand for the patented feature under the first *Panduit* factor. Dkt. No. 274-3 at 7. Indeed, this court's summary judgment order agreed that the first *Panduit* factor requires showing demand for the patented product, not necessarily the patented feature. Dkt. No. 294 at 57. This court cited *DePuy Spine v. Medtronic* for the proposition that "whether demand exists for the patented feature is analyzed either under the second *Panduit* factor—the existence of non-infringing alternatives—or when the patentee seeks to invoke the entire market value rule in the context of lost profits." *Id.* (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330-31 (Fed. Cir. 2009)).

Upon further review, however, the court finds it necessary supplement its prior order to clarify that *DePuy* did not hold that demand for the patented feature is irrelevant to the *Panduit* analysis ***as a whole***, as Radware seems to argue.[4] It is true that the *DePuy* court did not require a

---

[3] *See Sch. Dist. No. 1J*, 5 F.3d at 1263 (affirming denial of reconsideration where plaintiff submitted 21,000 pages of documents in support of reconsideration that it had failed to submit in opposition to summary judgment).

[4] *See* Dkt. No. 274-3 at 8 (arguing that "[t]he relative importance of various features, however, is

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS

United States District Court
Northern District of California

1  plaintiff to show "demand for the specific feature (i.e., claim limitation) that distinguishes the

2  patented product from a noninfringing substitute" under *Panduit* Factor One. 567 F.3d at 1330.

3  However, *DePuy* is distinguishable from the present case. The patented product at issue in *DePuy*

4  was a surgical screw, and both parties in that case agreed that the polyaxial capability of the

5  screws—"an inherent feature of the patented screws, not a feature of some other, unpatented

6  device that may also be used in the surgery"—drove demand for the screws. *Id.* at 1331. The

7  *DePuy* court did not consider a case such as the present one in which the products at issue

8  incorporate numerous, distinct features that are not covered by the asserted patents. Moreover, in

9  *DePuy*, the defendant only challenged the sufficiency of the evidence for the first two *Panduit*

10  factors, whereas in the present case, Radware claims that it is using the TechValidate survey in

11  support of the fourth *Panduit* factor as well. *See id.* at 1329; Dkt. No. 274-3 at 9-12.

12        Accordingly, even if Radware has presented sufficient evidence to create an issue of fact

13  regarding demand for the patented product as a whole, Radware must still present evidence in

14  support of the remaining factors.

15                 **b.**      **Factor Two: Absence of Acceptable Non-Infringing Alternatives**

16        Radware claims that "at a minimum, there are disputed issues of fact for the jury to decide

17  as to the existence of acceptable non-infringing alternatives." Dkt. No. 274-3 at 1. Radware offers

18  testimony from its technical expert, who allegedly relied "on a variety of factors, including but not

19  limited to his experience in the industry, the objective evidence of non-obviousness of the patented

20  inventions, F5's own documents and witness testimony" to conclude that there are no acceptable

21  non-infringing alternatives. *Id.* at 5-6.

22        F5 disagrees, arguing that the court's summary judgment order necessarily found "no

23  genuine dispute that non-infringing versions of GTM and LTM would have been available and

24  acceptable." Dkt. No. 284 at 4; *see* Northern District of California Model Patent Jury Instruction

25  5.3 ("An acceptable non-infringing substitute may involve modifying the [alleged infringer's]

26

27

28  not relevant to the *Panduit* analysis when there are no acceptable non-infringing alternatives").

United States District Court
Northern District of California

1  product to avoid infringement by adding an available alternative or by removing the patented

2  feature from the product altogether."). F5 points out that in opposing summary judgment,

3  "Radware has offered no argument or evidence that GTM and LTM, without the infringing

4  technology, would be unacceptable substitutes for the accused versions of those products." Dkt.

5  No. 284 at 9. In reply, Radware argues that such versions of GTM and LTM without the accused

6  functionality are merely "hypothetical." Dkt. No. 290-3 at 2.

7  Based on the foregoing, the court finds that there is a material issue of fact as to the

8  existence of acceptable non-infringing alternatives. As discussed below, however, this finding

9  does not end the inquiry.[5]

10  ### 2.  Radware's Proffered Evidence of Causation and the Amount of Lost Profit

11

12  The parties' arguments about Radware's specific burdens with respect to each *Panduit*

13  factor mask the fundamental purpose of the *Panduit* test: determining whether a plaintiff has

14  shown that, "but for" infringing conduct, the plaintiff would have made additional sales. "To

15  recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the

16  infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v.*

17  *Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).[6] Moreover, "the ***amount*** of

18  damages for patent infringement is a question of fact on which the patent owner bears the burden

19  of proof." *Bic Leisure*, 1 F.3d at 1217 (emphasis added). Proving the amount of lost profits

20  remains the plaintiff's burden even if the fact finder ultimately concludes that there are no

21  acceptable non-infringing alternatives. *See, e.g.*, *Panduit*, 575 F.2d at 1156-57 (reversing district

22  court's finding that there were acceptable non-infringing alternatives but nevertheless affirming

23  decision to deny lost profits because plaintiff failed to present competent evidence of its fixed

24  costs under the fourth factor).

25  _____

26  [5] F5's summary judgment motion did not appear to argue that Radware lacked the manufacturing
and marketing capability to exploit the demand under *Panduit* Factor Three. The parties'
arguments regarding the fourth *Panduit* factor, the amount of profit, are addressed below.

27  [6] Notably, while the *Panduit* factors are a means of showing causation, "*Panduit* is not the *sine qua non* for proving 'but for' causation." *Id.* at 1548.

28

The central argument of F5's summary judgment motion was that "[t]here is insufficient evidence, as a matter of law, for a reasonable jury to find that Radware would have made sales of its products 'but for' the accused ISP load balancing functionality in LTM and GTM." Dkt. No. 187 at 6. Accordingly, regardless of how much emphasis the parties placed on each *Panduit* factor, Radware's burden to defeat summary judgment was to create an issue of fact as to whether, but for F5's infringing sales, Radware would have sold a non-speculative quantity of Radware's own products.

The court's previous order explained why Radware's only cited evidence in support of its 12% lost profits figure, the TechValidate survey, was insufficient to meet Radware's burden regarding lost profits as a matter of law. Dkt. No. 294 at 59. The court explained that "the survey demonstrates that multiple features, including features unrelated to the Asserted Patents, drive the demand for the accused products. For example, 72% of participants selected 'local load balancing methods' and 48% of participants selected 'SSL offload' as functionalities important to performance." *Id.* (citing Dkt. No. 185-3 at 72). Moreover, the survey listed some functionalities that are proprietary to F5, such as iRules and iControl. *Id.* The court found that "[s]imply put, the survey does not support the conclusion that had F5 exited the market, 12% of F5 customers would have turned to Radware." *Id.*

Radware's reconsideration motion attempts to downplay Radware's reliance on the TechValidate survey. First, Radware repeats its previous argument that "Radware did not rely on the TechValidate study in isolation" but rather considered it in conjunction with other evidence. Dkt. No. 274-3 at 8; *see* Dkt. No. 204-3 at 24 ("Mr. Malackowski considered the totality of the evidence, including testimony of F5 and Radware witnesses and discussions with Professor Rubin."). Second, Radware now seeks to supplement the record with additional evidence, including Mr. Malackowski's complete expert report (excluding exhibits),[7] Dkt. No. 274-17, and a new declaration from Mr. Malackowski, Dkt. No. 274-5.

---

[7] Previously, only excerpts of the expert report had been filed with the court. Dkt. No. 185-3.

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS

1    The court finds Radware's attempt to downplay the survey inconsistent with Radware's

2    own reliance on the survey in Radware's efforts to satisfy multiple *Panduit* factors. In opposing

3    summary judgment, for example, Radware argued that the survey could be relevant to *Panduit*

4    Factors One and Two. *See* Dkt. No. 204-3 at 24 (arguing that the TechValidate survey "serves as a

5    'quantitative benchmark' relevant to the issues, such as demand for the patented product and/or

6    the absence of commercially acceptable non-infringing alternatives"). In its motion for

7    reconsideration, Radware attempts to argue that it is appropriate to use the survey for a different

8    purpose: "Radware's use of the TechValidate survey is appropriate to help quantify damages

9    under Factor Four." Dkt. No. 274-3 at 9-10 (noting that Radware's expert used the survey "to

10   determine what percentage of users of the infringing products considers the patented technology

11   important in order to calculate the amount of profit that Radware would have made.").

12   Moreover, procedurally, Radware could have submitted its new evidence months ago in

13   opposition to summary judgment, and thus the new evidence is not properly before the court. *E.g.*,

14   *Dixon*, 741 F.3d at 1378 (reconsideration motions "do not provide a vehicle for the introduction of

15   new evidence or affidavits"). However, even if the court were to consider these additional

16   materials, and even if the court viewed them under *Panduit* Factor Four as a mechanism for

17   quantifying lost sales as Radware requests, F5 would still be entitled to summary judgment on lost

18   profits. The court has reviewed Radware's expanded analysis in support of its lost profits theory,

19   *see* Dkt. No. 274-17 at 60-81, and the only evidence reflecting Radware's requested 12% figure is

20   still the TechValidate survey. If Radware's expert considered other evidence that supports a 12%

21   figure, his report does not cite it or explain how he used it to arrive at his calculation. Radware's

22   submissions in support of reconsideration have presented no basis other than the legally

23   insufficient survey from which a 12% figure can be derived without speculation. As previously

24   explained, the survey might show which features are desirable, but it provides no insight into the

25   number of customers Radware purportedly lost due to F5's alleged infringement.

26   Regardless of whether one attempts to use the survey to determine demand for the patented

27   product, the availability of non-infringing alternatives, or the quantity of additional units that

28

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS

Radware would have sold, the survey still does not support the conclusion that had F5 removed the LTM and GTM modules from the market, 12% of F5 customers would have turned to Radware. Accordingly, Radware has presented no reason to depart from the court's prior ruling.

**III.    ORDER**

For the reasons explained above, the court [TENTATIVELY] DENIES plaintiff's motion for reconsideration.

**IT IS SO ORDERED.**

Dated: January 5, 2016

_Ronald M. Whyte_
_____

Ronald M. Whyte
United States District Judge

United States District Court
Northern District of California

11

5:13-cv-02024-RMW
[TENTATIVE] ORDER DENYING MOTION FOR RECONSIDERATION
RS