UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>F5 NETWORKS, INC.,<br><br>    Defendant. | Case No. 5:13-cv-02024-RMW<br><br>**ORDER REGARDING MOTION FOR CLARIFICATION ON LOST PROFITS**<br><br>Re: Dkt. No. 466 |

Plaintiff Radware seeks clarification regarding whether this court's February 13, 2016 order on motions in limine allows Radware to pursue lost profits for 12% of F5's sales of GTM software "add-ons" to BIG-IP devices that were previously sold with F5's LTM module enabled. Dkt. No. 466. For the reasons set forth below, the court concludes that Radware may not pursue such profits.

This court's prior order concluded that "[b]ecause LTM alone cannot perform cost-based, outbound link load balancing, [Radware's expert] Mr. Malackowski's methodology requires him to exclude damages calculations aimed at LTM alone." Dkt. No. 456 at 18. A customer wanting to enable the accused link load balancing would not have purchased a license to LTM alone because LTM alone does not enable the accused link load balancing. The court noted, however, that "its ruling does not preclude Radware from seeking lost profits or a reasonable royalty for BIG-IP

1
5:13-cv-02024-RMW
ORDER REGARDING MOTION FOR CLARIFICATION ON LOST PROFITS

units in which both GTM and LTM were licensed and enabled." *Id.* at 19.

Mr. Malackowski's expert report argues that 12% of the customers who bought an F5 BIG-IP device with GTM and LTM[1] enabled would have purchased both an Alteon and a LinkProof product from Radware but for F5's infringement and that Radware is entitled to lost profits for such F5 device sales. Dkt. No. 274-17 at 72. Radware argues that it should be able to base its lost profits claim not only on BIG-IP units that were initially sold with GTM and LTM enabled, but also on BIG-IP devices that were originally sold with only LTM enabled and onto which a user later enabled GTM as "add-on" software. Dkt. No. 466 at 1.

A fatal flaw with Radware's position, however, is that Mr. Malackowski's report does not argue that Radware is entitled to lost profits for standalone software sales (i.e., add-ons or virtual editions) of the LTM, GTM, or Link Controller modules independent of the sale of a BIG-IP device. Rather, Mr. Malackowski argues that Radware is entitled to lost profits only for device sales and a reasonable royalty for add-on or virtual edition sales. *See* Dkt. No. 445-6 (Malackowski Ex. 3.1, Summary of Radware's Damages). Radware's counsel confirmed that this was Mr. Malackowski's methodology at the pretrial conference in this matter. *See* Dkt. No. 453 at 6:24-7:25. Radware's attempt to have Mr. Malackowski present a new theory at trial thus violates Federal Rule of Civil Procedure 26(a)(2).

In an apparent attempt to argue that its proffered damages theory is not untimely, Radware asserts that "GTM 'add-ons' were excluded from Radware's lost profits calculation to avoid double counting because the underlying device sale had already been included in Radware's lost profits damages calculation for LTM devices." Dkt. No. 479 at 1. Even if Radware was merely trying to avoid double counting, Mr. Malackowski provides no analysis for why Radware is entitled to lost profits based on 12% of F5's GTM add-on sales, as opposed to another figure. Radware's argument assumes that but for the accused functionality, which was not added until after the initial purchase of a device with LTM enabled, the customer would not have bought the

---

[1] Radware argues that the sales figures Mr. Malackowski cites under the heading of "GTM" cover units with both GTM and LTM licensed and enabled.

2
5:13-cv-02024-RMW
ORDER REGARDING MOTION FOR CLARIFICATION ON LOST PROFITS

device with LTM in the first place. Radware's assumption is tenuous, at best, especially considering that some of the BIG-IP devices on which GTM was later licensed and enabled may have been sold before Radware was even entitled to damages.

Moreover, Radware has presented no evidence or analysis for why the combination of an Alteon device and a LinkProof device is an appropriate substitute for GTM add-on software. *See BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("If the patentee's and the infringer's products are not substitutes in a competitive market, *Panduit's* first two factors do not meet the 'but for' test -- a prerequisite for lost profits."). Even if one assumes that Radware's experts have adequately explained why the purchaser of a BIG-IP *device* with GTM and LTM would have turned to the combination of an Alteon and a LinkProof *device* if F5's product had been unavailable, Radware has provided no such explanation for why a user in search of an appropriate substitute for GTM add-on *software* would have purchased an Alteon and a LinkProof *device*.

Accordingly, the court concludes that Radware and its expert may not present an argument, which argument was not disclosed in Mr. Malackowski's report, that Radware is entitled to lost profits for F5's sales of GTM software "add-ons" to BIG-IP devices that were previously sold with F5's LTM module enabled. Rather, Radware's expert may testify, consistent with the analysis in his report, that Radware is entitled to a reasonable royalty for add-on and virtual edition sales. If Radware believes that its damages disclosures explain a basis on which Radware can seek lost profits for add-on sales, then Radware may submit an offer of proof showing the profits Radware lost and how Radware computed those losses. However, a showing must be made on the disclosures existing in this case and not on information or analysis not previously disclosed.

**IT IS SO ORDERED.**

Dated: February 22, 2016

_____
Ronald M. Whyte
United States District Judge