UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>F5 NETWORKS, INC.,<br><br>Defendant. | Case No. 5:13-cv-02024-RMW<br><br>**ORDER DENYING RADWARE'S MOTIONS TO EXCLUDE INVALIDITY EVIDENCE**<br><br>Re: Dkt. Nos. 506, 513 |

Plaintiff Radware seeks to preclude defendant F5 from presenting certain evidence as part of F5's invalidity case: (1) the F5 3DNS / BIG-IP system; (2) the 3DNS Installation and User's Guides and BIG-IP Installation and User's Guides that describe the 3DNS / BIG-IP system; and (3) two "test bed" systems that F5's expert Dr. Alexander created to show how the 3DNS / BIG-IP system and the Cisco Distributed Director system work. Dkt. Nos. 506, 513. F5 opposes. Dkt. Nos. 507, 514. For the reasons below, Radware's motions are denied.[1]

I.   **ANALYSIS**

   A.   **Timing of Radware's Motions**

Radware's motions should have been filed earlier. Radware has known of the invalidity

---

[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter appropriate for resolution without oral argument.

1
5:13-cv-02024-RMW
ORDER DENYING RADWARE'S MOTIONS TO EXCLUDE INVALIDITY EVIDENCE
RS

1  references F5 planned to use since F5's expert submitted his invalidity report more than a year
2  ago. Moreover, Radware filed a stipulation with F5 on January 7, 2016 limiting the patent claims
3  Radware would pursue and the invalidity references F5 would present at trial. Dkt. No. 419. The
4  stipulation indicates, in relevant part:

> F5 stipulates to limit the prior art it will rely upon at trial to: (1) the Distributed Director System, as evidenced by, inter alia, testimony, the Cisco White Papers (1997 and 1999 versions), Cisco third party production, and Cisco executable code; (2) the F5 3-DNS/Big-IP System, as evidenced by, inter alia, testimony, the Big-IP Publications, and F5 source code; (3) the Big-IP Publications; (4) the Cisco White Papers . . . .

*Id.* at 3. While Radware previously raised the issue of the test bed systems on summary judgment, Radware did not file motions *in limine* on these issues and instead waited to file the instant motions until the middle of trial, one day before F5's invalidity case was scheduled to begin. Whatever merit Radware's arguments may have otherwise had, F5 would suffer considerable prejudice at this stage if Radware were allowed to disavow the language of its stipulation and prevent F5 from presenting known invalidity theories.

### B.   3DNS / BIG-IP System

Radware argues that the 3DNS product and the BIG-IP product cannot be used to anticipate Radware's claims because in 1998, the two were separate products, and anticipation must be based on a single reference. Dkt. No. 513 at 1-2 (citing *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006)). F5 does not dispute that anticipation must be based on a single reference, but F5 argues that the 3DNS / BIG-IP system is, in fact, a single reference. Dkt. No. 514 at 1. Specifically, F5 argues that the system is "a rack-mountable composite device made up of co-located components that had software capable of performing the functionality recited in the claims." Dkt. No. 507-1 at 1 (F5 invalidity chart).

The court finds that the proffered system may constitute a single reference for anticipation purposes. Radware's own technical expert testified that "two modules ***that may be next to each other or*** within the same box" could satisfy the language of Radware's claims. Dkt. No. 518 (Mar. 2, 2016 Trial Tr. (Rubin)) at 852:18-19 (emphasis added). Dr. Rubin went on to say that modules

2

1  that are "next to each other connected by a bus or some other very short distance length network"

2  could satisfy Radware's claims. *Id.* at 853:2-3. The court understands the proffered 3DNS / BIG-

3  IP system to be what Dr. Rubin described: two hardware modules mounted on the same rack

4  connected by a high-speed data connection. Accordingly, Radware's motion to exclude the system

5  as consisting of more than a single reference is denied. Radware, of course, may seek to establish

6  otherwise, that is, that all the requirements of the asserted claims were not contained in the 3DNS /

7  Big-IP System.

        **C.     Using Multiple Product Manuals to Describe the System**

Radware protests that F5's use of multiple product manuals to describe the 3DNS / BIG-IP system also violates the principle that anticipation must be based on a single reference. Dkt. No. 513 at 2. Specifically, Radware argues that F5 is relying on five separate product manuals to show anticipation, namely, the 3DNS Installation & User's Guide v1.0, v1.03 & v1.04 and BIG-IP Installation and User's Guide v.2.0 & v.2.01. Moreover, Radware argues, F5 has not disclosed an obviousness theory that would allow F5 to combine multiple references.

In support of its argument, Radware cites *Apple v. Samsung*, in which the court determined that Samsung had not raised a substantial question of invalidity based on a test system, where "[t]here is no evidence that the software programs and code used by [Samsung's expert] were in existence at the same time or that they were combined in a single apparatus." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2012 WL 2576136, at \*3 (N.D. Cal. July 3, 2012). *Apple* is distinguishable. In this case, Radware has stipulated that the relevant publications predate Radware's patent applications. *See* Dkt. No. 419. Moreover, F5 has offered to show that 3DNS and BIG-IP "both were and could have been configured as a composite device." Dkt. No. 514 at 3. The court also notes that *Apple* was decided at the preliminary injunction stage, not in the middle of trial. Finally, while the *Apple* court explicitly found that "none of these references individually anticipates" the asserted claim, 2012 WL 2576136, at \*3, here, F5 argues that its prior art ***system*** anticipates the asserted claims.

F5 argues that it is simply using the product manuals to describe the functionality of the

3
5:13-cv-02024-RMW
ORDER DENYING RADWARE'S MOTIONS TO EXCLUDE INVALIDITY EVIDENCE
RS

prior art system. *See* Dkt. No. 514 at 2. ("Dr. Alexander considered the '[t]he 3DNS Installation & User's Guide v1.0, v1.03 & v1.04 and the BIG/ip Installation and User's Guide v.2.0 & v.2.01 [as] provid[ing] evidence that BIGIP Systems provided the functionality recited by the claims of the [asserted patents].'"). F5's counsel also represented that Dr. Alexander "was relying on all of these manuals to confirm his understanding of how the Distributed Director and the 3-DNS BIG-IP devices operated." Dkt. No. 518 at 1003:13-15.[2] In support of its position, F5 cites *IP Innovation v. Red Hat*, in which the court allowed a defendant to use separate articles by different authors to recreate a prior art system: "This court sees no error in using multiple references to describe a single prior art system for the purpose of showing anticipation." *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-cv-447-RRR, 2010 WL 9501469, *4 (E.D. Tex. Oct. 13, 2010). The court finds *IP Innovation* to be instructive in this case. Based on F5's arguments and Dr. Alexander's report, the court understands that F5 is simply trying to use the proffered product manuals to describe a single prior art system.[3] Therefore, F5 does not appear to be improperly trying to use multiple references to show anticipation. Accordingly, Radware's motion is denied, and the issue of whether 3DNS / BIG-IP constitutes a single anticipatory device or system is left to the jury.

### D. Use of Test Bed Systems

Finally, Radware moves to exclude F5's Cisco Distributed Director and 3DNS / BIG-IP test bed systems on the grounds that they are not relevant evidence of any prior art. Radware argues that the test beds contain components that were dated well after the priority date of the patents in suit. Dkt. No. 506 at 4. F5 responds that it has never argued that the test beds themselves are prior art. Dkt. No. 507 at 1. Rather, F5 argues that the test beds are "configured to simulate a multihomed environment, in which a client and server are communicating over multiple network routes and the devices running the 1998 software load balance traffic across these multiple routes." *Id.* at 2. To the extent that F5 merely intends to use the test beds to demonstrate how the

---

[2] F5 also argues that the product manuals are independently relevant to rebut Radware's accusations of copying. *Id.* at 1003:17-18.
[3] The court notes that Dr. Alexander's report is not the most clear and understandable document to someone not of ordinary skill in the applicable technology.

4
5:13-cv-02024-RMW
ORDER DENYING RADWARE'S MOTIONS TO EXCLUDE INVALIDITY EVIDENCE
RS

asserted prior art systems worked when connected to a multihomed environment, F5 may present the test beds to the jury. F5 asserts that it merely intends to use the test beds "as evidence demonstrating how prior art, Cisco and F5 devices could have operated as of 1998." Dkt. No. 518 at 997:7-9.

To the extent that Radware argues that the parties' stipulation on prior art precludes use of the test beds, Dkt. No. 506 at 3-4, the court disagrees. As noted above, the parties' stipulation indicates that F5 may rely on the Distributed Director and 3-DNS/Big-IP Systems "as evidenced by, inter alia, testimony . . . and [Cisco or F5] source code." Dkt. No. 419 at 3. At the time the parties entered their stipulation, Radware knew that Dr. Alexander's invalidity theories and his testimony relied heavily on the test beds and the associated software code. Radware was also aware that this court had left open the possibility of using the test beds as demonstratives. Dkt. No. 294 at 15 n.5. The parties could have explicitly excluded the test beds from the stipulation, but they did not.

The court notes that the parties appear to dispute whether it is sufficient for F5 to show that the prior art was "capable of" performing every limitation of the asserted claims. This court's prior summary judgment orders clarified what is required to meet the limitations of each asserted independent claim. *See* Dkt. No. 475 at 5 (analyzing claim 1 of U.S. Patent No. 8,266,319 and noting that "the claim limitation of a network controller 'selecting' one of a plurality of routes should be construed to require a network controller 'configured to select' one of a plurality of routes); *id.* at 3 (analyzing claim 9 of U.S. Patent No. 8,484,374 and noting that "this court has construed 'configured to' to mean 'programmed to [perform certain functions]' This does not require user intervention if the feature claimed is included in the product as supplied."); Dkt. No. 420 at 9 ("The language of claim 24 [of the '319 patent] explicitly requires that an infringing device must be 'operable to select one of said routes . . . on the basis of costing information.'").

It appears that F5's planned presentation is analogous to how Radware's technical expert used animated slides to describe how an application delivery controller balances traffic among multiple ISP links. Accordingly, Radware's motion to exclude the test beds to simulate a multi-

homed environment is denied. However, F5 may not argue that the test beds themselves are prior art.

**II.     ORDER**

For the reasons explained above, Radware's motions to preclude F5's invalidity arguments are denied. If F5 or its expert present invalidity theories that are legally insufficient, Radware may address such theories with a motion for judgment as a matter of law.

**IT IS SO ORDERED.**

Dated: March 5, 2016



Ronald M. Whyte
United States District Judge