1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12   RADWARE, LTD., et al.,

                Plaintiffs,                    Case No.  5:13-cv-02024-RMW

13
                                               **ORDER REGARDING POST-TRIAL**
     v.                                        **MOTIONS**
14

15   F5 NETWORKS, INC.,                        **Redacted Public Version**

                Defendant.
16

17                                             Re: Dkt. Nos. 515, 561, 570, 582, 583, 584,
                                               587

18          In this patent infringement action, a jury found that defendant F5 Networks Inc.'s

19   infringement of plaintiff Radware's U.S. Patent No. 8,266,319 was willful. Before the court are

20   the following motions: (1) F5's renewed motion for judgment as a matter of law ("JMOL") or new

21   trial as to willfulness, Dkt. No. 561; (2) Radware's motion for enhanced damages and attorneys'

22   fees, Dkt. No. 583; (3) Radware's motion for accounting, Dkt. No. 584; and (4) Radware's motion

23   for a permanent injunction, Dkt. No. 582. For the reasons set forth below, the court: (1) grants

24   F5's motion for JMOL as to willfulness;[1] (2) denies Radware's motion for enhanced damages and

25   attorneys' fees; (3) grants in part and denies in part Radware's motion for supplemental damages

26

27   [1] Radware's motion for leave to file a surreply on the issue of waiver, Dkt. No. 570, is DENIED
     for failure to demonstrate good cause.

28                                                     1

United States District Court
Northern District of California

1   and prejudgment and post-judgment interest; and (4) grants in part and denies in part Radware's

2   motion for a permanent injunction.

3   **I.      BACKGROUND**

4           Radware commenced this lawsuit on May 1, 2013 alleging that F5 infringed claims of U.S.

5   Patent Nos. 6,655,702 (the "'702 Patent") and 8,266,319 (the "'319 Patent").[2] This court granted

6   F5's motion for summary judgment of non-infringement for all asserted claims of the '702 Patent.

7   Dkt. No. 145. On October 15, 2015, this court ruled on summary judgment that F5's accused

8   products infringed claim 24 of the '319 Patent, at least until F5 implemented a redesign known as

9   the First "Hotfix" that removed the accused functionality. Dkt. No. 294 at 43. The parties then

10  stipulated that the accused products infringed claims 1 and 12 of the '319 Patent until F5

11  implemented a Second Hotfix in January 2016. Dkt. No. 381.[3] The case proceeded to a jury trial

12  on the issues of invalidity, damages, and willfulness.

13          At trial, F5 asserted that three references anticipated Radware's asserted claims: (1) U.S.

14  Patent No. 6,650,621 (the "Maki-Kullas Patent"); (2) the Cisco DistributedDirector ("DD")

15  Device; and (3) the F5 Big-IP/3DNS Device. Radware's '319 Patent was filed on June 2, 2003 and

16  claims priority to a parent application that was filed on December 20, 1999. At trial, however,

17  Radware presented evidence that it conceived of the inventions claimed in the '319 Patent and

18  reduced them to practice before December 20, 1999. The jury found that F5's asserted references

19  did not constitute prior art to Radware's asserted patents, and so the jury did not make any factual

20  findings on whether the references included all of the limitations of Radware's asserted claims.

21  Dkt. No. 556 at 2-3.

22          The '319 Patent issued on September 11, 2012. F5 introduced the Link Controller, one of

23  the F5 products that forms the basis for Radware's willful infringement claims, in 2002, 10 years

24

25  [2] Radware amended its complaint on July 9, 2013 to allege infringement of an additional patent,
    U.S. Patent No. 8,484,374 (the "'374 Patent"), which issued on July 9, 2013. Dkt. No. 24.
26  Radware did not assert that F5's infringement of the '374 Patent was willful. Dkt. No. 375 at 7.
    [3] The court subsequently granted F5's motions for summary judgment that F5's First Hotfix ended
27  F5's infringement of claim 24 of the '319 Patent and that F5's Second Hotfix ended F5's
    infringement of the remaining asserted claims. Dkt. Nos. 420, 475.
28
                                                        2

United States District Court
Northern District of California

before the '319 Patent issued. Trial Tr. vol. 3, 346:1-3. Radware does not dispute that Radware itself did not provide notice of the '319 Patent to F5 until Radware commenced this lawsuit on May 1, 2013. *See* Trial Tr. vol. 3, 365:20-366:1. At trial, however, Radware argued that F5 became aware of the '319 Patent as early as February 7, 2013, when an F5 in-house attorney received correspondence from the U.S. Patent & Trademark Office that listed the '319 Patent in a Notice of References Cited that accompanied a Notice of Allowance for an F5 patent. *See* TX-29; TX-34. Radware also argued that circumstantial evidence supported its argument that F5 willfully infringed the '319 Patent.[4]

The court instructed the jury on willfulness, in relevant part, as follows:

> To prove willful infringement, Radware must persuade you by clear and convincing evidence (1) that F5 was aware of the '319 patent before Radware filed this lawsuit, and (2) that after becoming aware of the '319 patent, F5 acted with reckless disregard of the claims of Radware's '319 patent.

Dkt. No. 552 at 15. The court's instruction was based in part on the Federal Circuit's test from *In re Seagate Tech, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc), which governed at the time of trial. When asked on the verdict form whether Radware had "proven by clear and convincing evidence that F5's infringement of the '319 patent was willful," the jury responded "Yes." Dkt. No. 556 at 4. The jury awarded Radware $6.4 million in damages. *Id.*

At the close of Radware's case in chief, F5 moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) that its infringement was not willful. Trial Tr. vol. 7, 969:14-970:1; Dkt. No. 515. Radware filed an opposition, Dkt. No. 521, and F5 moved for leave to file a reply, Dkt. No. 526. The court declined to rule on F5's motion at that time and indicated that it would submit the issue to the jury. Dkt. No. 530. At the close of F5's invalidity case, F5's counsel indicated again on the record that F5 wanted to move for judgment as a matter of law. Trial Tr. vol. 11, 1698:7-15. After the jury rendered its verdict finding willfulness, F5 filed a

---

[4] For example, Radware elicited testimony that in the mid-2000s, F5 was aware of the '702 Patent, to which the '319 Patent claims priority, and which issued on December 16, 2003. Trial Tr. vol. 5, 622:10-20; TX-3.

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California

1    renewed motion for judgment as a matter of law, or, in the alternative, a new trial. Dkt. No. 561.

2    Radware filed an opposition on April 20, 2016, Dkt. No. 565, and F5 filed a reply on April 29,

3    2016, Dkt. No. 567. The court held a hearing on F5's motion for JMOL on May 13, 2016. On June

4    13, 2016, while F5's motion was under submission, the U.S. Supreme Court decided *Halo*

5    *Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016), which, as explained below,

6    rejected the *Seagate* test for willfulness and announced a new standard for the award of enhanced

7    damages.[5]

8          On July 11, 2016, Radware filed motions: for enhanced damages and attorneys' fees, Dkt.

9    No. 583; for supplemental damages and interest, Dkt. No. 584; and for a permanent injunction,

10    Dkt. No. 582. F5 filed oppositions to these motions. Dkt. Nos. 593, 597, and 594, respectively.

11    Radware filed replies. Dkt. Nos. 600, 601, and 599, respectively. The court held an additional

12    hearing on August 19, 2016.

13    **II.    WILLFULNESS AND ENHANCED DAMAGES**

14          F5 maintains that Radware failed to present evidence that F5 had the awareness of the '319

15    patent that is necessary for a finding of willfulness. Moreover, F5 argues that its invalidity defense

16    is still relevant to Radware's claim for enhanced damages.

17          To grant a renewed motion for judgment as a matter of law under Rule 50(b), the court

18    must find that "the evidence, construed in the light most favorable to the nonmoving party, permits

19    only one reasonable conclusion, and that conclusion is contrary to the jury's." *Callicrate v.*

20    *Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (quoting *Pavao v. Pagay*, 307 F.3d 915,

21    918 (9th Cir. 2002). A party seeking JMOL must show that the verdict is not supported by

22    "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as

23    adequate to support a conclusion." *Callicrate*, 427 F.3d at 1366 (citing *Gillette v. Delmore*, 979

24    F.2d 1342, 1346 (9th Cir. 1992)).

25

26    ———————————

27    [5] Following the *Halo* decision, the parties submitted five notices of supplemental authority to this court, most of which contained at least some argument, in violation of Civil Local Rule 7-3(d)(2).

28    F5's motion to respond to Radware's statement of recent decision, Dkt. No. 587, is DENIED.

*United States District Court*
*Northern District of California*

1   Under Rule 59, "the trial court may grant a new trial, even though the verdict is supported

2 by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based

3 upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage

4 of justice." *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir.

5 2010) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)).

6   A district court has discretion to enhance damages "up to three times the amount found or

7 assessed." *Halo*, 136 S. Ct. at 1931 (quoting 35 U.S.C. § 284).

8  **A.  Willfulness**

9   Under the precedent that controlled at the time this case was tried in February and March

10 2016, a patentee seeking enhanced damages had to show that infringement was willful under a

11 two-part test. First, the patentee had to show "by clear and convincing evidence that the infringer

12 acted despite an objectively high likelihood that its actions constituted infringement of a valid

13 patent." *Seagate*, 497 F.3d at 1371. "[T]he 'objective' prong of *Seagate* tends not to be met where

14 an accused infringer relies on a reasonable defense to a charge of infringement." *Bard Peripheral*

15 *Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1005-06 (Fed. Cir. 2012) (citation

16 omitted). Second, the patentee had to "demonstrate that this objectively-defined risk (determined

17 by the record developed in the infringement proceeding) was either known or so obvious that it

18 should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371.

19   The Supreme Court's *Halo* decision eliminated *Seagate's* objective prong: "The subjective

20 willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without

21 regard to whether his infringement was objectively reckless." *Halo*, 136 S. Ct. at 1933. Even after

22 *Halo*, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to

23 enhanced damages." *WBIP, LLC v. Kohler Co.*, No. 2015-1038, 2016 WL 3902668, at *15 (Fed.

24 Cir. July 19, 2016). Under *Halo*, a party seeking enhanced damages under section 284 bears the

25 burden of proof by a preponderance of the evidence. *Halo*, 136 S. Ct. at 1934.

26   The court finds that the trial record contains insufficient evidence to support the jury's

27

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   willfulness finding, even under a preponderance of the evidence standard.[6] It is undisputed that

2   Radware never actively informed F5 of any of its patents or patent applications before Radware

3   filed this lawsuit in May 2013. *See* Trial Tr. vol. 3, 365:20-366:13, 368:10-12 (Zisapel). For

4   example, there was no claim that Radware sent a pre-suit notice letter to F5 to warn F5 of its

5   infringement. At the time Radware filed its complaint, F5's Link Controller, one of the products

6   that forms the basis for Radware's willful infringement claims, had been on the market for more

7   than a decade. Trial Tr. vol. 6, 706:11-22. Radware's argument that F5 allegedly copied

8   Radware's LinkProof product to create the Link Controller is unpersuasive. At the time that F5

9   allegedly analyzed the LinkProof to introduce the Link Controller around 2002, Radware had not

10  received any patents on link load balancing. The '702 Patent issued in 2003, and the asserted '319

11  Patent did not issue until 2012. Thus, F5's sales of the Link Controller for a decade without any

12  notice that the Link Controller infringed any Radware patent cannot support a finding of

13  willfulness.

14      The only direct evidence that Radware offered to show that F5 was subjectively aware of

15  Radware's '319 Patent before this suit commenced was a Notice of Allowance for an F5 patent

16  sent to F5's outside patent prosecution counsel in January 2013, which F5's outside counsel then

17  forwarded in February 2013 to F5's in-house counsel Mr. Campa. The Notice of Allowance and

18  its attachments spanned over 100 pages and listed the '319 Patent once by number in a list of over

19  a dozen "References Cited." TX-34 at 14.

20      F5's motion papers cite multiple cases in which district courts have ruled that mere citation

21  to a patent number in correspondence from the Patent Office is legally insufficient to support a

22  finding of willfulness. *See, e.g., Spherix Inc. v. Juniper Networks, Inc.*, No. C14-578-SLR, 2015

23  WL 1517508 (D. Del. Mar. 31, 2015) (dismissing willfulness claim because "[t]he fact that the

24

25  _____

26  [6] While this court previously declined to grant F5's motion for summary judgment on willfulness based in part on the existence of material disputes of fact, in evaluating a motion for judgment as a matter of law, the court must examine the evidence actually presented at trial. *See Halo*, 136 S. Ct.

27  at 1933 ("As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case.").

28

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California

1 [asserted] patent was referenced during prosecution of two of defendant's over 1,700 patents is not

2 compelling evidence of knowledge") (citation omitted); *Chalumeau Power Sys. LLC v. Alcatel–*

3 *Lucent*, No. C11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) (dismissing willfulness

4 claim despite the fact that the Patent Office cited the asserted patent as prior art in reference to

5 three of defendant's patent applications); *Cordance Corp. v. Amazon.com Inc.*, 639 F. Supp. 2d

6 406, 412–16 (D. Del. 2009) (granting summary judgment of no willfulness despite the fact that

7 defendant had cited the asserted patent in one of its own patent applications in part because there

8 was no evidence that defendant's patent counsel had knowledge of the accused product).

9 Radware's opposition brief does not address these cases.

10      Consistent with the reasoning of the cases above, the court finds that the Notice of

11 Allowance is insufficient to support Radware's willfulness claims. Here, the Notice of Allowance

12 did not discuss or attach the '319 Patent. Mr. Campa specifically testified that he did not see the

13 '319 Patent until after Radware sued. Trial Tr. vol. 6, 700:12-15. While the notice recited the

14 name of the lead inventor of the '319 Patent—Zisapel, the CEO of Radware—the notice made no

15 mention of Radware itself. Moreover, Radware offered no evidence that any individual at F5

16 reviewed the '319 Patent or was otherwise actually aware of it—particularly at the same time that

17 the individual was aware of F5's accused products—before Radware filed suit. To the contrary,

18 Mr. Campa testified that F5 searched its employees' emails and found no references to the '319

19 Patent before Radware filed suit. Trial Tr. vol. 6, 700:16-701:12. To the extent that Radware

20 argues that F5 or its outside counsel had a duty to review the '319 Patent when they saw its

21 number listed in the Notice of Allowance, Radware is incorrectly suggesting that willfulness can

22 be proven by negligence; the Supreme Court has ruled that "intentional or knowing" infringement

23 may warrant enhanced damages. *Halo*, 136 S. Ct. at 1933. The court finds that the Notice of

24 Allowance, Radware's only direct evidence that F5 knew of the issuance of the '319 Patent before

25 Radware filed suit, is insufficient to prove willfulness.

26      Radware argues, however, that circumstantial evidence also supports an inference that F5

27 was aware of the '319 Patent before Radware filed suit. Radware points to documents and

28                                          7

1    testimony suggesting that F5 and Radware were competitors and that F5 performed a competitive

2    analysis of Radware products. *See* Dkt. No. 565 at 17 (citing TX-179). Moreover, Radware cites a

3    press release from November 2012 indicating that the '319 Patent had issued. *Id.* at 18 (citing

4    TX-173). Radware argues that this evidence supports an inference that F5 was, in fact, aware of

5    the '319 Patent before Radware filed suit.

6         The court finds Radware's arguments about competition between the parties unpersuasive.

7    The court notes that Trial Exhibit 179, on which Radware relies to argue that F5 considered

8    Radware an important competitor, is from 2001, before Radware even filed the divisional

9    application that became the '319 Patent. Even assuming that F5 considered Radware a competitor

10   in September 2012 when the '319 Patent issued, as Radware acknowledges, the only F5 witness

11   who testified on the subject indicated that he has no reason to believe that anyone at F5 reviewed

12   Radware's press release regarding the '319 Patent. Trial Tr. vol. 5, 639:14-18 (Campa). While the

13   jury did not have to believe Mr. Campa, Radware, which had the burden of proof, did not offer

14   any evidence to show that anyone at F5 actually reviewed the November 2012 press release.

15        Radware also points to evidence that F5 was aware of the '702 Patent, which is the parent

16   of the '319 Patent, and that F5 cited the published application for the '319 Patent in

17   correspondence with the Patent Office related to F5's own patent applications. This evidence does

18   not support a finding of willfulness. F5's products do not infringe the '702 Patent. Moreover, one

19   cannot infringe a patent application; the earliest date F5 could have infringed the '319 Patent was

20   September 11, 2012, the date the patent issued. To the extent that Radware argues that F5 was

21   actively monitoring Radware's patent applications such that F5 would have immediately become

22   aware of the issuance of the '319 Patent, Radware offered no evidence in support of this

23   proposition. Indeed, F5's in-house attorney testified that he does not monitor the patent

24   applications of competitors and that no one else at F5 is responsible for patents. Trial Tr. vol. 9,

25   696:14-15; 699:19-21.

26        For the reasons discussed above, Radware has failed to submit sufficient evidence to

27   support a finding of subjective willfulness. Accordingly F5's motion for judgment as a matter of

28

United States District Court
Northern District of California

8

1  law on willfulness is granted.[7]

2  **B.    Enhanced Damages**

3  Even assuming that substantial evidence supported the jury's willfulness verdict, this court

4  would still need to use its discretion to determine "[w]hether the conduct is sufficiently egregious

5  as to warrant enhancement and the amount of the enhancement that is appropriate." *WBIP*, 2016

6  WL 3902668, at *15 n.13; *see also Halo*, 136 S. Ct. at 1933 (noting that "none of this is to say that

7  enhanced damages must follow a finding of egregious misconduct"). Awards for enhanced

8  damages "are not to be meted out in a typical infringement case, but are instead designed as a

9  'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo*, 136 S. Ct. at 1932.

10 The Supreme Court has described the conduct giving rise to enhanced damages as "willful,

11 wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—

12 characteristic of a pirate." *Id.* Both parties rely on the factors listed *in Read Corp. v. Portec, Inc.*,

13 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview*

14 *Instruments, Inc.*, 52 F.3d 967, 975-78 (Fed. Cir. 1995) (en banc), as guideposts in determining

15 whether enhanced damages should be awarded. The *Read* factors include: (1) whether the

16 infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he

17 knew of the other's patent protection, investigated the scope of the patent and formed a good-faith

18 belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the

19 litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of

20 defendant's misconduct; (7) remedial action by the defendant; and (8) defendant's motivation for

21 harm.[8] *Id.*

22

23 [7] Because the court finds that Radware's willfulness evidence was insufficient to survive a motion

24 for JMOL, the court finds that F5 would at least be entitled to a new trial on the issue under the lower "clear weight of the evidence" standard. F5 raised one additional argument in support of its motion for a new trial that was not addressed above. Specifically, F5 argues that Radware's

25 counsel incorrectly described the legal standard for willfulness at trial and implied to the jury that willfulness merely required Radware to show that F5 was negligent. *See* Dkt. No. 561 at 14. The

26 court finds that Radware's misstatement of the legal standard for willfulness was not independently sufficient to require a new trial but that it does provide limited support for F5's

27 position.

   [8] Neither party argues that the ninth *Read* factor—whether defendant attempted to conceal its

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 1.      Copying and Intent to Harm

Radware's main argument is that that F5 copied Radware's LinkProof product to create F5's Link Controller and that F5 intended to harm Radware in the marketplace. The court finds Radware's arguments unpersuasive. As noted above, F5 released the Link Controller in 2002, 10 years before the '319 Patent issued. Trial Tr. vol. 3, 346:1-3. "It is obvious that a party cannot be held liable for 'infringement', and thus not for 'willful' infringement, of a nonexistent patent." *Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).

Radware argues that *Read's* reference to copying the "ideas or design" of another suggests that copying a plaintiff's product—regardless of whether a patent has yet issued—justifies an award of enhanced damages. F5 responds that while Radware presented evidence that F5 was trying to develop a product to compete with the features of the LinkProof, Radware presented no evidence that F5 copied the LinkProof's design or source code. F5 witnesses testified that they did not rely on Radware patents, manuals, or code when designing the Link Controller. Trial Tr. vol. 8, 1048:15–1049:1 (Skene); vol. 9, 1364:16–1365:4 (Thornewell). Rather, F5 maintained that it developed the code for Link Controller from code for existing F5 products. Trial Tr. vol. 8, 1047:2-17 (Skene); vol. 9, 1364:11-15 (Thornewell). Moreover, while Radware relies heavily on evidence that F5 acquired a LinkProof device for comparison, the evidence presented at trial shows that F5 did not obtain Radware's device until months after F5 released the Link Controller. *Compare* TX-62 (April 2002 email chain congratulating Link Controller team for the device's March 2002 release) *with* TX-91 (August 2002 F5 email chain with subject line "Radware Link Proof is available for your examination"). Radware's counsel cited no evidence to suggest that F5 possessed a LinkProof earlier. To the extent that F5 was fiercely competing with Radware between 2000 and 2003, the court again notes that this was years before Radware's patent issued. As the Federal Circuit has explained, "keeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235-

misconduct—applies to this case.

36 (Fed. Cir. 1985). Accordingly, the court finds that the first and eighth *Read* factors do not favor enhanced damages.

### 2.      Duration of Infringement and Remedial Measures

Radware also argues that that F5 continued to willfully infringe the '319 Patent throughout this litigation. F5's post-complaint conduct is of limited relevance. In *Seagate*, the Federal Circuit indicated that a patentee who does not seek a preliminary injunction "should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." 497 F.3d at 1374. Other courts in this district have followed a similar approach.[9] *Halo* did not disturb this ruling, as post-filing conduct was not at issue in *Halo*; the patentee in that case had sent the defendant letters offering to license the asserted patents five years before the lawsuit commenced, so post-complaint conduct was not necessary to establish willfulness. *Halo*, 136 S. Ct. at 1931. In the instant case, since Radware did not seek a preliminary injunction, it is not entitled to a finding of willfulness based solely on F5's post-complaint infringement. In any event, F5's Hotfixes indicate an intention *not* to infringe. While F5 acknowledges that it shipped a relatively small number of infringing units from its existing inventory even after the jury returned its validity verdict, these shipments stopped within a month of trial and well before Radware moved for a permanent injunction on July 11, 2016. Dkt. No. 593-5 (Schmidt Decl.) ¶ 6. The court concludes that the sixth and seventh *Read* factors do not favor enhancement of the overall damages award.

### 3.      Use of Defenses and Closeness of the Case

Nor do the second, third, or fifth *Read* factors favor enhancement. Radware argues that F5's litigation conduct did not reflect a good faith belief that Radware's patents were invalid or not infringed. The court disagrees. First, Radware points out that F5 did not present a non-infringement defense at trial and, indeed, stipulated to the infringement of certain claims.

---

[9] *See, e.g.*, *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. Oct. 1, 2012) (dismissing willfulness allegations without prejudice because plaintiff did not move for preliminary injunction); *Monolithic Power Systems, Inc. v. Silergy Corp.*, 127 F.Supp.3d 1071, 1076 (N.D. Cal. 2015) (noting that "the failure to seek a preliminary injunction becomes relevant" after post-filing willfulness is established, when the court is determining in its discretion whether to award enhanced damages).

United States District Court
Northern District of California

1    Radware's argument overlooks the closeness of the infringement issues in this case. Radware

2    moved for summary judgment of infringement on the claims it ultimately asserted at trial, and,

3    with the exception of claim 24 of the '319 Patent, this court denied Radware's motion. Dkt. No.

4    294 at 61. Moreover, this court ruled on summary judgment that claim 24 of the '319 Patent was

5    not infringed by products with F5's Hotfixes applied. Dkt. No. 420, 475. In this case, F5's

6    decision to force Radware to prove its infringement case before trial does not suggest misconduct.

7        Radware also asserts that F5 initially asserted almost 100 invalidity references and refused

8    for months to narrow its invalidity case to the three references F5 presented at trial. As F5 points

9    out, Radware's argument is somewhat misleading—F5's invalidity expert report, served a year

10   before trial, covered only nine references. Dkt. No. 593-4. Moreover, for better or worse, it is

11   typical for patent litigants to narrow their cases for trial, and enhanced damages "are not to be

12   meted out in a typical infringement case." *Halo*, 136 S. Ct. at 1932. The court notes that Radware

13   initially asserted infringement of dozens of claims but stipulated to only present six claims at trial.

14   Dkt. No. 294 at 2; Dkt. No. 357.

15       Radware also argues that F5 could not have relied in good faith on the invalidity references

16   that F5 ultimately presented at trial, but the court finds Radware's arguments unpersuasive. In this

17   case, the jury did not make any factual findings on whether F5's asserted prior art references

18   included every limitation of Radware's asserted claims; rather, the jury simply found that F5's

19   asserted references did not constitute prior art to Radware's asserted patents. Dkt. No. 556 at 2-3.

20   Each of F5's asserted prior art references existed in some form before the '319 Patent's effective

21   filing date of December 20, 1999.[10] Presumably, then, the jury based its determination that F5's

22   asserted references were not actually prior art on evidence offered to show that Radware

23   conceived of the claimed inventions and reduced them to practice before December 20, 1999. As

24   explained below, the court finds that F5 could have relied in good faith on its invalidity defenses.

25

26   _____

     [10] *See, e.g.*, TX-676 (Maki-Kullas Patent, filed Oct. 5, 1999); Dkt. No. 419 at 2-3 (stipulation

27   regarding publication dates of documents or code associated with Cisco DD and F5 Big-IP/3DNS
     products); Trial Tr. vol. 9, 1303:14-1304:1; 1315:22-1316:8 (Delgadillo testimony regarding
     Cisco software release dates).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### a.    The Maki-Kullas Patent – Claim 24

With regard to the Maki-Kullas patent, Radware's CEO testified that Radware typically announces the launch of a product "several weeks before it's ready." *See* Trial Tr. vol. 3, 316:3-18 (Feb. 24, 2016). From this evidence as well as evidence that the Radware did not ship the first LinkProof until December 1999, *see* TX-161, it would not have been unreasonable to believe that the Maki-Kullas patent predated Radware's claimed invention.[11] Radware also argues that the Maki-Kullas patent does not teach the claimed route selection limitation and that Maki-Kullas patent was one of the references that the U.S. Patent & Trademark Office considered in finding '319 Patent claim 24 patentable. As F5 points out, however, the prosecution history of the '319 Patent does not reveal the extent to which the PTO considered the Maki-Kullas patent. Moreover, F5 presented testimony from its expert explaining how, in his view, the Maki-Kullas patent actually does disclose the claimed route selection limitation. *See* Trial Tr. vol. 10, 1411:20-1412:13, 1486:13-16; TX-676 col.9 ll.15-26. Thus, the court finds that F5 could have reasonably questioned the validity of claim 24 of the '319 Patent in light of the Maki-Kullas patent.

### b.    The Cisco DD System

F5 could have reasonably concluded that the Cisco DD predated Radware's invention. The earliest date that Radware's witnesses even claimed to have conceived their patented invention was March or April 1999, and F5 presented unrebutted testimony that the Cisco DD was publicly available in some form in 1998. Trial Tr. vol. 3, 303:7-9 (Zisapel); vol. 9, 1238:6-8 (Darwin).

Substantively, the court finds that a reasonable jury could have concluded from the trial record that the Cisco DD satisfied the limitations of each asserted claim of the '319 Patent. F5 presented testimony that the Cisco DD could perform ISP load balancing and that Cisco sold DD units to Microsoft in 1998 or 1999. Trial Tr. vol. 9, 1239:12-23 (Darwin). F5 also presented testimony that the Cisco DD could choose between different ISPs in a multi-homed environment.

---

[11] At trial, Radware also presented evidence intended to show that Radware conceived the claimed inventions in the spring or summer of 1999 and diligently reduced them to practice. However, Radware's papers do not explain how, if at all, that evidence shows that Radware had developed each asserted claim limitation before December 20, 1999.

13

1   *Id.* at 1305:2-14 (Delgadillo). Radware did not present any direct evidence that Cisco DD lacked

2   these capabilities at a general level in 1998 to 1999. F5's expert Dr. Alexander also discussed each

3   element of the asserted claims and explained how the Cisco DD satisfied each limitation. Trial Tr.

4   vol. 10, 1438:14-1445:6. Radware's briefs do not attempt to rebut the testimony of F5's expert on

5   an element-by-element level, nor does Radware point to any portion of the trial record containing

6   such a rebuttal. *See* Dkt. No. 565 at 8-11.

7          The court finds Radware's remaining arguments about Cisco DD unpersuasive. The patent

8   office's consideration of the Cisco DD is not dispositive at least because the Patent Office did not

9   consider a related Cisco white paper by Kevin Delgadillo describing certain features of Cisco DD

10  that F5 relied upon at trial. *See* Trial Tr. vol. 10, 1406:16-1407:15. Finally, Radware argues that

11  F5's test bed was not a single device as required by the claims. Dkt. No. 565 at 8-9. Radware does

12  not appear to dispute, however, that the Cisco DD system could have been construed as a single

13  set of modules packaged together in a rack, which would satisfy the claim limitations. In sum, the

14  court finds that F5 could have reasonably questioned the validity the asserted claims of the '319

15  Patent in light of the Cisco DD.

16                    **c.      The F5 BIG-IP/3DNS System**

17         F5 next argues that it presented a reasonable invalidity defense that the F5 Big-IP/3DNS

18  anticipated all asserted claims of the '319 Patent. Because the court finds that F5 presented

19  reasonable arguments that other asserted prior art references invalidated all of Radware's asserted

20  claims, in evaluating enhanced damages, the court need not reach the issue of whether it was

21  reasonable for F5 to argue that the F5 Big-IP/3DNS system anticipated the asserted claims.

22                    **4.      Other Factors**

23         The court finds that only the fourth *Read* factor—F5's size and financial condition—

24  supports an award of enhanced damages. Radware presented evidence that F5's 2015 revenue was

25  $1.92 billion. Trial Tr. vol. 5, 570:24-571:2. While F5 argues that most of this revenue came from

26  features that Radware has not accused of infringement, F5 does not appear to seriously dispute that

27  F5 would be able to afford the $19.2 million total damages award that Radware seeks. However,

28

United States District Court
Northern District of California

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

1    this factor alone is insufficient to support enhanced damages.

2         After reviewing the circumstances of this case, the court concludes that enhanced damages

3    are inappropriate. Radware's motion for enhanced damages is denied.

4    **III.    ATTORNEYS' FEES**

5         Radware argues that it is entitled to attorneys' fees based on F5's litigation conduct and

6    tactics. F5 responds that this is not an exceptional case that warrants an award of attorneys' fees.

7    Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorney fees to the

8    prevailing party." In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756

9    (2014), the Supreme Court held that "an 'exceptional' case is simply one that stands out from

10   others with respect to the substantive strength of a party's litigating position (considering both the

11   governing law and the facts of the case) or the unreasonable manner in which the case was

12   litigated." "[T]here is no precise rule or formula for making these determinations, but instead

13   equitable discretion should be exercised in light of the considerations we have identified." *Id.*

14   (citation omitted). A litigant must establish its entitlement to attorneys' fees by a preponderance of

15   the evidence. *Id.* at 1758.

16        Many of Radware's arguments in support of its claim for attorneys' fees overlap with

17   Radware's arguments in support of enhanced damages. Radware argues that F5 needlessly

18   prolonged this case by asserting non-infringement defenses and invalidity references that F5 did

19   not rely upon at trial. As explained above, however, F5 defended its position, and the court does

20   not find that F5's non-infringement defenses or F5's assertion of multiple invalidity references

21   make this case exceptional. Nor does the court find that F5's decision to abandon its obviousness

22   defense at trial was exceptional.

23        Radware specifically argues that F5 could not reasonably rely on the Big-IP/3DNS system

24   to prove anticipation because it could not perform link load balancing in 1999 and because it was

25   not a single reference. However, F5 did at least present some contemporaneous evidence that F5

26   products could perform link load balancing prior to Radware's products. *See, e.g.*, TX-99 at 39

27   (F5 document stating: "We have most of the pieces to do a better job"); TX-63 at 13 (F5 document

28

United States District Court
Northern District of California

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

describing "[w]hat we have today" in the "BIG-IP / 3-DNS Combo"). Moreover, the court

previously applied the definition of Radware's expert to find that the Big-IP/3DNS system could

constitute a single composite device for anticipation purposes because it contained "two modules

that may be next to each other or within the same box." Dkt. No. 529 at 2. The record before the

court does not suggest that F5's reliance on this device was unreasonable.

Radware's only new argument appears to be that F5 forced Radware to spend time and

money proving that Radware's own products practiced the asserted patents even though F5

allegedly copied those products. F5 responds that F5 simply wanted Radware to show that

Radware did not mark its products with the patent numbers of the asserted patents. The court finds

that forcing Radware to prove that its products practiced the asserted patents does not make this an

exceptional case.

The court concludes that the circumstances of this case and F5's conduct do not warrant

an award of attorneys' fees.

## IV.    SUPPLEMENTAL DAMAGES AND INTEREST

Radware's Motion for Accounting seeks supplemental damages for infringing units that F5

sold between January 26, 2016—the last day F5 provided sales figures before trial—and April 14,

2016—the day F5 asserts it stopped selling infringing units.[12] Dkt. No. 584. Radware also seeks

prejudgment and post-judgment interest. F5 concedes that supplemental damages and interest are

appropriate, but the parties disagree on the number of infringing units sold, the appropriate royalty

rate for those units, and the appropriate method of calculating interest. *See* Dkt. No. 597.

### A.    Supplemental Damages

Courts regularly award supplemental damages for infringing units that a jury could not

consider at trial. While a patentee could potentially file a new lawsuit to recover damages for these

units, additional litigation would be costly and inefficient. When a jury does not explicitly state the

amount of damages it awarded for each infringing unit, determining the appropriate amount of

_____

[12] Radware "reserves the right to seek damages for any continued F5 infringing sales." Dkt. No.
584 at 2 n.1.

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

supplemental damages per unit can be difficult. As Radware points out, however, at least one other district court has allowed parties to estimate the amount of per-unit damages that a jury awarded by dividing the jury's total damages award by the number of infringing units the jury considered. *See Aero Products Int'l, Inc. v. Intex Recreation Corp.*, No. 02 C 2590, 2005 WL 1498667, at *2 (N.D. Ill. June 9, 2005) (dividing $2,950,000.00 total jury award by $21,817,103.00 in sales to arrive at 13.5% royalty rate). F5 does not disagree with this approach in principle.

In the instant case, Radware's damages claims were based on sales of two F5 modules: the Link Controller and the Global Traffic Manager, or GTM. The jury awarded $5,000,000 in lost profits for Link Controller and $1,400,000 in reasonable royalties for GTM. Dkt. No. 556 at 4. Calculating the appropriate amount of per-unit damages for Link Controller is relatively straightforward. The parties agree that the jury saw evidence of 500 infringing sales of Link Controller, and $5,000,000 divided by 500 units equals $10,000 in lost profits per Link Controller unit. The parties agree that this is an appropriate rate to apply to infringing Link Controller units sold after January 26, 2016.

The parties disagree on the appropriate per-unit royalty rate for GTM. In support of the instant motion, Radware's damages expert Mr. Malackowski estimated the per-unit royalty rate that the jury applied in two ways. First, he divided the $1,400,000 damages award by the number of BIG-IP hardware units with GTM licenses (but without any Hotfix) for which Radware sought a reasonable royalty (but not lost profits) at trial—6,885 units—to yield a royalty rate of approximately $203.34 per unit. Dkt. No. 584 at 2; *see also* TX-426 (Radware damages calculations); Dkt. No. 581-7 (Malackowski Decl.) ¶ 7. Radware argues that the court should apply this rate because it is consistent with the per-unit royalty rate that Radware sought at trial, $200.

Radware's expert acknowledges, however, that Radware's damages claims at trial were not simply based on the number of hardware units with GTM and without any Hotfix installed. Rather, in addition to the 6,885 pre-Hotfix hardware units with GTM for which Radware sought only a reasonable royalty, the jury also saw evidence of:

17

- 909 additional hardware units with GTM licenses and without any Hotfix for which Radware sought lost profits but no reasonable royalty;

- 2,415 hardware units with GTM licenses and the First Hotfix (but not the Second Hotfix);

- 3,935 virtual editions; and

- 25,096 add-ons.

*See* TX-426. Radware's expert acknowledges that if these units are included, the damages base is 39,240 units. *See id.*; Dkt. No. 581-7 ¶ 10. Dividing $1,400,000 by 39,240 units yields approximately $35.68 per unit. *See id.* F5 argues that this is the appropriate royalty rate to apply to any additional unit sales of GTM because it accurately reflects the damages base for which Radware sought damages at trial. F5 also notes that its own damages expert suggested a royalty rate of $5 per unit at trial to reflect the infrequency with which she argued that customers use Radware's patented features. Radware disagrees and argues that the court should apply the $203.34 rate because no party suggested a $35.68 per unit royalty rate to the jury.

The court finds it appropriate to apply a $35.68 per unit royalty rate for GTM sales made between January 26, 2016 and the jury's validity verdict. While both of Mr. Malackowski's proposed methodologies for estimating the jury's per-unit royalty rate involve making certain assumptions, the assumptions he applied to arrive at the $35.68 figure seem more reasonable. To arrive at the $203.34 figure, the jury would have had to focus on one, isolated base figure on a spreadsheet—the number of hardware units with GTM (but without any Hotfix) for which Radware sought a reasonable royalty (but not lost profits)—to the exclusion of all of the other types of GTM units that F5 sold. Such a calculation would seem arbitrary, to say the least. Moreover, Radware's proposal of $203.34 per unit is higher than the royalty rate that any party requested at trial, while $35.68 is at least between the $5 that F5's expert argued was appropriate and the $200 that Radware's expert requested at trial.

The court notes, however, that the jury rendered its verdict finding that the asserted claims were valid on March 15, 2016, but F5 continued to sell infringing units through April 14, 2016.

United States District Court
Northern District of California

1   The Federal Circuit has held that it may be appropriate to award a higher per-unit royalty rate for

2   units sold after a finding of liability because a pre-verdict royalty rate includes some risk that a

3   patent may be held invalid or not infringed. *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362

4   (Fed. Cir. 2008) (holding that a court determining damages "should take into account the change

5   in the parties' bargaining positions, and the resulting change in economic circumstances, resulting

6   from the determination of liability"). This court finds it appropriate to award a higher royalty for

7   infringing F5 units sold after March 15, 2016 to account for the certainty that Radware's patents

8   were found valid and infringed. Accordingly, for GTM units sold between March 15, 2016 and

9   April 14, 2016, the court will award a royalty of $53.52, a 50% increase over the rate that the jury

10  appears to have awarded. The court finds it unnecessary to adjust the lost profits figure for Link

11  Controller sales because the parties agree that this number should be $10,000 per unit.

12          The parties dispute the number of supplemental infringing units that F5 has sold. In June

13  2016, F5 provided Radware with updated sales figures for the period of January 26, 2016 through

14  April 14, 2016. It appears that F5 initially indicated that all of the units in the spreadsheets it

15  provided to Radware were infringing, but in opposition to Radware's motion, F5 submitted a

16  declaration indicating that some of the Link Controller and GTM units sold after January 26, 2016

17  had the Second Hotfix installed and thus did not infringe. *See* Dkt. No. 593-5 (Schmidt Decl.).

18  While Radware argues that it did not have time to adequately investigate or verify the claims of

19  F5's declarant, Radware has offered no evidence that F5's claims about the Hotfix are incorrect.

20  Accordingly, the court will subtract the number of non-infringing units from the total sales figures

21  supplied by Radware. Because F5's declarant did not distinguish between the non-infringing units

22  sold before or after the jury's verdict, the court has attempted to apportion those figures based on

23  the number of days in each period, as indicated below.

24          With the above considerations in mind, the court awards supplemental damages to

25  Radware in the amount of $444,360.35 as summarized in the following table based on data

26  provided by the parties' experts, Dkt. Nos. 581-7, 596-5:

27

28

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California

|  | **Pre-Verdict**<br>**1/26/2016 -**<br>**3/15/2016** | **Post-Verdict**<br>**3/16/2016 -**<br>**4/14/2016** | **Total**<br>**1/26/2016 -**<br>**4/14/2016** |
|---|---|---|---|
| **Link Controller** | | | |
| Total Units Sold | 24 | 9 | 33 |
| - Second Hotfix Units (Estimated)[13] | -3 | -1 | -4 |
| Infringing Units | 21 | 8 | 29 |
| Lost Profits Per Unit | $10,000.00 | $10,000.00 | |
| **Total Damages** | **$210,000.00** | **$80,000.00** | **$290,000.00** |
| | | | |
| | | | |
| **GTM** | | | |
| Total Devices Sold | | **Redacted** | |
| Virtual Editions | | | |
| Add-Ons | | | |
| Total Units | | | |
| - Second Hotfix Units (Estimated) | -53 | -32 | -85 |
| Total Infringing Units | 2,069 | 1,505 | 3,574 |
| Royalty Rate Per Unit | $35.68 | $53.52 | |
| **Total Damages** | **$73,817.53** | **$80,542.81** | **$154,360.35** |
| | | | |
| | | | |
| **TOTAL SUPPLEMENTAL DAMAGES** | **$283,817.53** | **$160,542.81** | **$444,360.35** |

## B.    Interest

Radware also seeks prejudgment and post-judgment interest. In the instant case, Radware seeks prejudgment interest at the prime rate—between 3.25% and 3.5%—compounded monthly. Dkt. No. 584 at 12; Dkt. No. 581-7 ¶ 14. F5, on the other hand, argues that the appropriate interest rate is the 1-year Treasury Bill rate—between 0.11% and 0.53%—compounded annually.

35 U.S.C. § 284 provides that damages for infringement should be awarded "together with interest and costs as fixed by the court." *See also Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). Prejudgment interest is meant to be compensatory and not punitive. *Oiness v.*

---

[13] 80 days passed between January 26, 2016 and April 14, 2016. 50 days passed between January 26, 2016 and March 15, 2016, and 30 days passed between March 16, 2016 and April 14, 2016. To estimate the number pre-verdict units with the Second Hotfix, the court multiplied the total number of units with the Second Hotfix by 5/8. To estimate the number post-verdict units with the Second Hotfix, the court multiplied the total number of units with the Second Hotfix by 3/8.

20

United States District Court
Northern District of California

United States District Court
Northern District of California

1   *Walgreens Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). The purpose of prejudgment interest is to put

2   the patent owner "in as good a position as he would have been in had the infringer entered into a

3   reasonable royalty agreement." *Gen. Motors*, 461 U.S. at 655. The rate of prejudgment interest is

4   "left largely to the discretion of the district court." *Bio-Rad Labs., Inc. v. Nicolet Instrument*

5   *Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

6            Typically, courts calculate interest at the prime rate "where there is evidence that the

7   plaintiff would have been spared from borrowing money at the prime rate during the infringement

8   period had the infringer been paying royalties, and thus, prejudgment interest at the prime rate is

9   necessary to compensate for the forgone use of the money." *Finjan, Inc. v. Blue Coat Systems,*

10  *Inc.*, No. 13-cv-03999-BLF, 2016 WL 3880774, at *18 (N.D. Cal. July 18, 2016) (quoting *Mars,*

11  *Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 133 (D. N.J. May 22, 2007)). On the other hand,

12  "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be

13  entitled to prejudgment interest at that rate." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540,

14  1545 (Fed. Cir. 1991) (affirming award of interest at the prime rate in part because the patentee's

15  "poor financial condition during the pendency of the litigation required it to finance its operations

16  with monies borrowed at rates above the prime rate").

17           Here, Radware submitted no evidence that it borrowed any money during the infringement

18  period at the prime rate. Nor has Radware argued that its poor financial condition required it to

19  finance its operations with monies borrowed at high interest rates, in contrast with the situation in

20  *Uniroyal*. Accordingly, the court finds it appropriate to utilize the T-Bill rate with annual

21  compounding for prejudgment interest. *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed.

22  Cir. 1997) (affirming use of T-Bill rate with annual compounding where patent owner did not

23  provide any evidence that it borrowed money at a higher rate). Because neither Radware nor F5

24  calculated interest based on the court's supplemental damages award discussed above, the court

25  will require Radware to submit a proposed judgment with an interest calculation consistent with

26  this order.

27           Under 28 U.S.C. § 1961, the award of post-judgment interest is automatic and at a rate

28                                                 21

1    equal to the weekly average 1-year constant maturity Treasury yield compounded annually. 28

2    U.S.C. § 1961. Accordingly, the court grants Radware's request for post-judgment interest.

3    **V.    PERMANENT INJUNCTION**

4          Finally, Radware requests that the court enjoin F5 from infringing the asserted patents.

5    Dkt. No. 582. A court may enjoin ongoing patent infringement after considering traditional

6    principles of equity. 35 U.S.C. § 283. To receive injunctive relief, Radware must show: "(1) that it

7    has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

8    are inadequate to compensate for that injury; (3) that, considering the balance of hardships

9    between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public

10   interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*,

11   547 U.S. 388, 391 (2006).

12         Radware's proposed injunction would prevent F5 from:

13              1. making, using, selling, and/or offering to sell in the United States,
                or importing into the United States, software or code implementing
14              any Infringing Feature, and/or any feature not more than colorably
                different therefrom; and/or
15              2. developing, designing, testing, demonstrating, implementing,
                writing, modifying, updating, or manufacturing in the United States
16              any software or code implementing any Infringing Feature, and/or
                any feature not more than colorably different therefrom, except for
17              purposes of designing around the Radware Patents; and/or
                3. advertising, marketing, demonstrating, or otherwise promoting in
18              the United States any Infringing Feature, and/or any feature not
                more than colorably different therefrom; and/or
19              4. directly or indirectly requesting, assisting, or encouraging any
                third party to perform any of the acts listed in the immediately
20              preceding Paragraphs (1)-(3).

21   Dkt. No. 582-1. The proposed injunction defines "Infringing Feature" as "link load balancing." *Id.*

22   F5 argues that an injunction is not warranted under *eBay* and that Radware's proposed injunction

23   would improperly restrain lawful activities. Dkt. No. 594.

24         As explained below, the court finds that injunctive relief is warranted in this case but that

25   Radware's proposed injunction is overbroad.

26         **A.    Irreparable Harm**

27         In support of its claim for irreparable harm, Radware submitted evidence that Radware and

28                                                  22

United States District Court
Northern District of California

1    F5 are competitors, TX-388 at 2; that Radware's products practice the asserted patents, Trial Tr.

2    vol. 6, 746:6-10 (Rubin); and that Radware has lost customers to F5, *see, e.g.*, Trial Tr. vol. 3,

3    346:17-349:8. Radware further notes that Radware does not license its patents. *Id.* at 360:24-

4    361:15. "Past harm to a patentee's market share, revenues, and brand recognition is relevant for

5    determining whether the patentee has suffered an irreparable injury." *i4i Ltd. Partnership v.*

6    *Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (quotation marks omitted).

7           F5 responds that Radware cannot show irreparable harm because the last infringing BIG-IP

8    product was shipped in April 2016, and all BIG-IP products shipped since then have included code

9    that renders them non-infringing under this court's summary judgment orders. *See* Dkt. No. 593-5

10   ¶ 6 (Schmidt); Dkt. No. 475. In essence, F5 is arguing that an injunction is unnecessary because

11   F5 ceased infringement.

12          The court finds F5's argument unpersuasive. At trial, F5 maintained that the Link

13   Controller had been discontinued in the United States. Trial Tr. vol. 11, 1612:15-17. After trial,

14   however, Radware submitted evidence that F5 was still shipping infringing Link Controller and

15   GTM units from its Milpitas, California facility to customers overseas, at least until April 14,

16   2016. Dkt. No. 593-5 ¶ 8. F5 does not dispute that these units infringed. It appears that at least as

17   of April 2016 there was still demand outside the United States for F5 products with the infringing

18   link load balancing features enabled. Thus, the court finds that in the absence of an injunction,

19   Radware may suffer irreparable harm.

20          F5 argues that to the extent that an injunction is appropriate, the injunction should be

21   limited to Link Controller because the infringing functionality does not "drive consumer demand"

22   for GTM, as evidenced by the jury's denial of lost profits for GTM. *See Apple Inc. v. Samsung*

23   *Elecs. Co., Ltd.*, 809 F.3d 633, 641 (Fed. Cir. 2015). The court agrees that Radware presented no

24   evidence that patented features "drove demand" for GTM. However, F5's argument is

25   unpersuasive because the Federal Circuit explained: "Though the fact that the infringing features

26   are not the only cause of the lost sales may well lessen the weight of any alleged irreparable harm,

27   it does not eliminate it entirely." *Id.* at 642. Radware presented at least some evidence that

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California

1    customers found link load balancing important generally. *See, e.g.*, Trial Tr. vol. 3, 319:14-320:1

2    (Zisapel); vol. 4, 490:1-491:7 (Trachtman).

3          In any event, Radware explains that it does not seek to enjoin all GTM products; rather,

4    Radware seeks only to enjoin products that contain the original, infringing code and not the

5    Second Hotfix. Dkt. No. 599 at 8. While F5 may properly protest the breadth of Radware's

6    definition of "Infringing Features," F5's argument is insufficient to deny all injunctive relief.

7          **B.      Adequacy of Money Damages**

8          Radware argues that F5's infringement will cause Radware to suffer harm that cannot

9    easily be quantified, including lost service contracts, getting locked out of future sales with

10   customers, and losing opportunities to sell other products and solutions. *See, e.g.*, Trial Tr. vol. 3,

11   353:6-8; vol. 4, 481:12-24; vol. 6, 716:21-24. The Federal Circuit has held that courts may

12   consider "the effect the sale of a single product can have on downstream sales of" related products

13   in determining whether money damages are adequate. *Apple*, 809 F.3d at 645.

14         F5 responds that "any lost downstream revenue is irrelevant to the adequacy of the jury's

15   award because Radware has not established that link load balancing drove demand for GTM."

16   Dkt. No. 594 at 4. Again, F5's argument misses the mark because Radware is not attempting to

17   enjoin all GTM sales; Radware is attempting to enjoin infringing features. Moreover, F5 does not

18   even attempt to argue that money damages will be adequate to compensate for infringing Link

19   Controller sales. F5 also argues points out that Radware failed to move for a preliminary

20   injunction, which, according to F5, suggests that monetary damages are adequate. However, even

21   the authority on which F5 relies, *MercExchange, L.L.C. v. eBay, Inc.,* 500 F. Supp. 2d 556, 573

22   (E.D. Va. 2007), indicates that failure to seek a preliminary injunction "is plainly not dispositive"

23   in determining whether to issue a permanent injunction.

24         The court finds that monetary damages would be inadequate to protect Radware from any

25   continued infringement by F5.

26         **C.      Balance of the Hardships**

27         Radware's principal argument under the third *eBay* factor is that if, as F5 claims, F5 has

28

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California

truly removed infringing link load balancing functionality from its products, F5 should suffer no hardship from an injunction. F5 maintains that it successfully designed around Radware's asserted claims with the Second Hotfix. F5 argues, however, that Radware's proposed injunction does more than simply enjoining sales of BIG-IP products without the Second Hotfix installed. Specifically, F5 argues that Radware's proposed injunction impermissibly: (1) prevents F5 from developing, designing, testing, demonstrating, implementing, writing, modifying, updating, or manufacturing software code; (2) defines "Infringing Feature" so as to encompass forms of "link load balancing" that do not infringe; (3) applies to F5's "successors, assigns . . . [and] any affiliated entities"; and (4) covers devices beyond those adjudicated in this case. *See* Dkt. No. 594 at 6-10 (citing Dkt. No. 582-1 (proposed injunction)). F5's criticisms are well taken, and the court will attempt to address them in its injunction order.[14] The court finds that the injunction, as modified, should not impose any hardship on F5.

### D.    Public Interest

Finally, Radware argues that the public interest will be served by protecting Radware's intellectual property rights. Radware points out that because its proposed injunction does not affect products that consumers have already purchased, the public will suffer no harm. *See i4i*, 598 F.3d at 863 ("By carving out users who purchased or licensed infringing Word products before the injunction's effective date, the injunction's tailoring minimizes disruptions to the market and the public."). F5 responds that an injunction against any product other than Link Controller will deprive the public of significant non-infringing technology.

F5 has represented that of the BIG-IP products it has shipped from the United States since April 14, 2016 have included the Second Hotfix code, rendering them non-infringing. F5's argument is persuasive only to the extent that Radware's proposed injunction, in its current state, does not allow F5 to continue shipping products with the Second Hotfix code. The court finds that

---

[14] On the other hand, the court finds F5's argument that an injunction should be limited to Link Controller and not GTM unpersuasive. In light of F5's practices with respect to preloading and subsequently licensing software, *see* Dkt. No. 420 at 8, the court does not understand how an injunction directed to Link Controller but not GTM would limit infringement.

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California

1   as long as the injunction allows F5 to continue shipping products with the Second Hotfix, the

2   injunction will not deprive the public of any non-infringing technology.

3                                           * * *

4           Based on the analysis above, the record in this case, and the arguments of the parties, the

5   court concludes that an injunction should issue that enjoins F5 from further infringing claims 1,

6   12, or 24 of the '319 patent and claims 9, 10, 12, or 14 of the '374 patent.

7   **VI.    ORDER**

8           For the foregoing reasons, the court GRANTS F5's motion for judgment as a matter of law

9   on willfulness and DENIES Radware's motion for enhanced damages and attorneys' fees.

10          Furthermore, the court GRANTS IN PART and DENIES IN PART Radware's motion for

11  supplemental damages and prejudgment and post-judgment interest. Radware shall promptly

12  submit a proposed judgment consistent with this order on or before September 6, 2016. One week

13  before submitting the proposed judgment to the court, Radware shall provide a copy to F5 for

14  review of the proposed judgment's adherence to this order.

15          The court GRANTS IN PART and DENIES IN PART Radware's motion for a permanent

16  injunction. The terms of the injunction will be filed separately.

17          The court does not believe that anything in this order reveals confidential information.

18  However, in an abundance of caution, the court is publicly filing a redacted version, with portions

19  of the order relating to subject matter that the parties have sought to keep under seal redacted. The

20  court has filed an unredacted copy of this order with access restricted to participants in this case. If

21  a party believes that the redacted portion discloses confidential information, it must file a version

22  of the order with proposed redactions and provide a declaration setting forth the bases for asserting

23  confidentiality. The declaration and proposed redactions may be filed under seal. The court will

24  evaluate any such confidentiality contention and make a decision whether to approve the proposed

25  redaction or to remove it, thus rendering the underlying content public. Any proposed redactions

26  and declarations in support must be filed within 14 days of the date of this order. Thereafter, a

27  copy of this order with the approved redactions will be made public.

28

United States District Court
Northern District of California

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

1    **IT IS SO ORDERED.**

2    Dated: August 22, 2016

3                                                    _____

4                                                    Ronald M. Whyte
                                                     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:13-cv-02024-RMW
ORDER REGARDING POST-TRIAL MOTIONS
RS

United States District Court
Northern District of California