UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>F5 NETWORKS, INC.,<br><br>    Defendant. | Case No. 5:13-cv-02024-RMW<br><br>**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT ON SECOND HOTFIX PRODUCTS**<br><br>**PUBLIC VERSION OF ORDER FILED 2/19/2016 (DKT. NO. 476)**<br><br>Re: Dkt. Nos. 449, 451 |

At the pretrial conference in this matter, the parties indicated that they want the court to decide whether defendant F5's accused BIG-IP products infringe Radware's asserted patent claims following F5's implementation of a second software "hotfix" in January 2016. Accordingly, Radware filed a motion for summary judgment of infringement, Dkt. No. 451, and F5 filed a motion for summary judgment of non-infringement, Dkt. No. 449. For the reasons set forth below, the court GRANTS F5's motion and DENIES Radware's motion.

I.  **BACKGROUND**

The court assumes that the reader is familiar with the background of this case and refers the reader to the court's prior orders for additional details. *See* Dkt. Nos. 294, 420.

By January 2015, F5 made changes to the software on the accused products via a first

1
5:13-cv-02024-RMW
ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT ON SECOND HOTFIX PRODUCTS
RS

"hotfix," purportedly to remove the functionality Radware accuses of infringement. Dkt. No. 278 at 2. With respect to claim 24 of the '319 Patent, F5 asserts that the first hotfix removed the ability of the accused GTM and Link Controller products to perform outbound link load balancing using "costing information of said respective routes." Dkt. No. 278 at 2; *see also* Dkt. No. 277-3 (Thornewell Decl.) ¶¶ 9-10. By January 2016, F5 changed the code of the accused GTM and Link Controller products again. This Second Hotfix retained the changes made by the First Hotfix and, in addition, it removed the products' ability to perform inbound link load balancing altogether. Dkt. No. 449. *See* Dkt. No. 277-3 ¶ 12; Dkt. No. 302-6 (Thornewell Reply Decl.) ¶¶ 2, 4.[1]

As with the First Hotfix, the Second Hotfix does not actually remove the link load balancing source code that Radware had accused of infringement; rather, the hotfixes move the accused code to a different position in the code base that is disabled in shipping products and cannot execute. *See* Dkt. No. 302-6 (Thornewell Decl.) ¶¶ 3-4; Dkt. No. 296-1 (Rubin Decl.) ¶¶ 8-9, 16. As with the First Hotfix, if a user outside the U.S. downloads, installs, and executes additional code in a patch, the patch code restores the removed functionality. Dkt. No. 449 at 1-2. Without the patch, the accused code in the post-hotfix products is present, but it never actually executes.

## II. ANALYSIS

Summary judgment on patent infringement is a two-step analysis. "First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (internal citation omitted). "[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Id.* at 1304. The parties do not dispute how F5's Second Hotfix works. Thus, the central dispute before the court is whether F5's Second Hotfix products meet

---

[1] Redacted versions of Mr. Thornewell's declarations can be found at Dkt. Nos. 278-3 and 303-1.

1  each limitation of each asserted claim.

2  Radware alleges that F5 infringes claims 1, 12, and 24 of U.S. Patent Nos. 8,266,319 (the
3  "'319 Patent") and claims 9, 10, 12, and 14 of U.S. Patent No. 8,484,374 (the "'374 Patent"). This
4  court's October 15, 2015 summary judgment order explained that the asserted claims "describe the
5  capability and configuration of the network controller." Dkt. No. 294 at 39. The court concluded
6  that "F5's accused BIG-IP products may infringe the Asserted Patents if the products include
7  programs that carry out, or are configured to carry out, the claims of the Asserted Patents." Dkt.
8  No. 294 at 37-38 (citing *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010),
9  and *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002)). The
10 court applies this analysis to the claims that remain in this suit.

**A.      '374 Patent Claim 9**

Claim 9 of the '374 patent describes a device for inbound link load balancing:

> 9. A device for load balancing client requests among a plurality of internet service provider (ISP) links in a multi-homed network, comprising:
>
> > a network controller configured to resolve an incoming domain name server (DNS) query for an address associated with a domain name of a server within the multi-homed network, wherein the incoming DNS query is received from a client; and
> >
> > a balancer module *configured to select*, based on at least one load balancing criterion, *one ISP link* from the plurality ISP links;
> >
> > wherein the network controller is further configured to return an internet protocol (IP) address selected from a range of IP addresses associated with the selected ISP link, thereby subsequent requests from the client are routed through the selected ISP link.

(emphasis added). Radware's other asserted claims from the '374 patent depend from claim 9, so a finding of non-infringement of claim 9 is also a finding of non-infringement of claims 10, 12, and 14. In the context of the asserted claims, this court has construed "configured to" to mean "'programmed to [perform certain functions].' This does not require user intervention if the feature claimed is included in the product as supplied." Dkt. No. 122 at 21.

The court finds that the Second Hotfix products are not "configured to select" ISP links.

3

To the contrary, as shipped, the Second Hotfix products are programmed *not* to select ISP links. If a user wants to make a Second Hotfix product balance ISP links, the user must modify the program code on the product by downloading F5's patch, for example. In *Finjan* and *Fantasy Sports*, the Federal Circuit explained that "[i]nfringement occurred because the code 'was written in such a way as to enable a user of that software to utilize the function . . . ***without having to modify that code***.'" *Finjan*, 626 F.3d at 1205 (citing *Fantasy Sports*, 287 F.3d at 1118) (emphasis added). Here, a user would need to modify the code to infringe.

F5 suggests that any time "the code of the accused product has to be modified for the product to perform the claimed feature, there is no direct infringement." Dkt. No. 449 at 4. Radware, by contrast, argues that "the relevant inquiry is not whether there is any code modification (as F5 advocated) but rather whether the accused code is present in the accused device at the moment it is sold." Dkt. No. 451 at 2. Both parties' arguments have merit in certain circumstances, but, in the abstract, both positions are overstatements. The Federal Circuit has held that "in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Fantasy Sports*, 287 F.3d at 1118. In this case, the part of the F5 product accused of being "a balancer module configured to select" an ISP link is implemented in software code. Based on the undisputed facts, at the time of shipment, the software code in a Second Hotfix product is not "configured to select" ISP links.

Radware's reliance on *Brocade v. A10 Networks* in support of the argument that claims reciting a "configured to" limitation can be infringed any time "the software loaded on the device includes the patented feature"[2] is misplaced. In *Brocade*, the district court concluded for the claims then at issue that the mere presence of code that includes a patented feature may cause infringement: "although a user must activate the functions programmed into a piece of software by selecting those options, the user is only activating means that are already present in the underlying software." *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL

---

[2] Dkt. No. 451 at 3.

1  831528, at *11 (N.D. Cal. Jan. 10, 2013) (quoting *Fantasy Sports*, 626 F.3d at 1205). While

2  *Brocade*'s analysis might have applied to F5's pre-hotfix products, a user of F5's Second Hotfix

3  products must do more than merely activate features that are already present to obtain a device that

4  is configured to select ISP links. Unless the user downloads F5's patch, which is only available

5  outside the United States and thus outside the territorial reach of Radware's patents, the accused

6  features can never be activated.

Accordingly, the court finds that the Second Hotfix products do not infringe claim 9 of the '374 patent or the claims that depend from it.

### B.     '319 Patent Claim 1

Claim 1 of the '319 patent describes a device for inbound link load balancing:

> 1. A device for managing a computer network, said device connected to the Internet through a plurality of routes, wherein the plurality of routes are assigned with respective IP addresses, comprising:
>
> > a network controller receiving a DNS resolution query from a remote computer for a domain name within the computer network, said **network controller selecting one of the plurality of routes** connecting said device to the Internet, and said network controller responding to the DNS resolution query with an IP address associated with the selected route, said IP address is used for resolution of said domain name,
> >
> > wherein said network controller receives a packet having a destination IP address corresponding to one of the plurality of routes; and
> >
> > the device further comprising a network address translator translating the destination IP address to an IP address within the computer network.

(emphasis added). Claim 12 of the '319 patent depends from claim 1.

In analyzing claims 1 and 24 of the '319 patent, this court explained that "the claims do not require active method steps; rather, the court held that to infringe, an accused product must be delivered configured to perform the claimed functions." *Id.* at 39. In other words, the court has explained that the claim limitation of a network controller "selecting" one of a plurality of routes should be construed to require a network controller "configured to select" one of a plurality of routes. As with claim 9 of the '374 patent above, it is undisputed that at the time of shipment, the Second Hotfix products are not configured to select one of a plurality of routes. Thus, at least

5

some of the limitations of claim 1 of the '319 patent are absent from the Second Hotfix products.

Radware attempts to analogize claim 1 of the '319 patent to claim 65 of U.S. Patent No. 6,092,194, which, the *Finjan* court found to be infringed by the sale of software that could be installed, but could not be executed, without a license key. Dkt. No. 451 at 4-5 (citing *Finjan*, 626 F.3d at 1204-05). The court finds Radware's argument unpersuasive. First, claim 65 of the '194 patent was a computer-readable medium claim, which, by its very nature, could be infringed at the moment that software was saved to a storage device. That is not the case here. Second, the limitations in claim 65 (and the claims in *Finjan* that did not recite a computer-readable medium) were broader than the limitations at issue here:

> Finjan's non-method claims describe capabilities without requiring that any software components be "active" or "enabled." The system claims recite software components with specific purposes: "a logical engine *for preventing* execution", "a communications engine *for obtaining* a Downloadable", or "a linking engine . . . *for forming* a sandbox package". . . This language does not require that the program code be "active," only that it be written "for causing" a server or a computer to perform certain steps.

*Finjan*, 626 F.3d at 1204-05 (citations omitted). The claims in *Finjan* could be infringed merely by the presence of code "for" performing certain functions.[3] It is true, as Radware points out, that claim 1 of the '319 patent covers a "device 'for' managing a computer network." Radware's argument misses the mark, however, because F5 does not appear to dispute that the accused products are devices for managing a computer network. Rather, the parties' dispute is over whether the Second Hotfix products satisfy the limitation that requires selecting one of a plurality of routes. At the time of shipment, F5's Second Hotfix devices are not even capable of selecting one of a plurality of routes, let alone configured to do so.

---

[3] The court wishes to clarify a point from its October 15, 2015 summary judgment order that might be misleading without further explanation. The court previously stated that "[h]ere, the claim language is not distinguishable from that in *Finjan*." Dkt. No. 294 at 39. The court's statement at the time was true in the context of analyzing allegations against the products then accused of infringement, but "in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Fantasy Sports*, 287 F.3d at 1118. As the accused products have changed, the court's analysis has also evolved to accommodate those changes.

Accordingly, the Second Hotfix products do not infringe claims 1 or 12 of the '319 patent.

### C.     '319 Patent Claim 24

Claim 24 of the '319 patent describes a device for outbound link load balancing:

> 24. A routing device for routing data via a network from a first node to a second node, said network having a plurality of available routes from said first node to said second node and the plurality of routes are assigned with respective IP addresses, said routing device comprising:
>
>> a route selector ***operable to select one of said routes*** for sending data between said first node and said second node on the basis of costing information of said respective routes; and
>>
>> a network address translator operable to receives a packet having a source IP address and translating the source IP address to an IP address corresponding to the selected route of the plurality of routes.

(emphasis added). The court's prior orders found that F5's accused products infringed claim 24 of the '319 patent prior to the implementation of any hotfix but that the First Hotfix products do not infringe claim 24. Dkt. Nos. 294, 420.

Radware acknowledges that F5's Second Hotfix does not alter the functionality of the First Hotfix. Radware nevertheless asks the court to revisit its finding of non-infringement as to the First Hotfix products on the grounds that the term "operable to" should be construed to mean "capable to." *See* Dkt. No. 451 at 6. Even if the court were to construe "operable to" to mean "capable to," the court's non-infringement finding would not change. It is undisputed that at the time of shipment, the First and Second Hotfix products do not contain a route selector capable of selecting a route on the basis of costing information unless the products are modified in a way that changes their route selection capabilities. A product cannot directly infringe if the product must be modified to satisfy each recited claim limitation. Accordingly, F5's First Hotfix and Second Hotfix products do not infringe claim 24 of the '319 patent.

### III.    ORDER

For the reasons explained above, F5's motion for summary judgment of non-infringement of Second Hotfix products is GRANTED. Radware's motion for summary judgment of infringement of Second Hotfix products is DENIED.

1    The court does not believe that anything in this order reveals confidential information.
2 However, in an abundance of caution, the court is publicly filing a redacted version, with portions
3 of the order relating to subject matter that the parties have sought to keep under seal redacted. The
4 court has filed an unredacted copy of this order with access restricted to participants in this case. If
5 a party believes that the redacted portion discloses confidential information, it must file a version
6 of the order with proposed redactions and provide a declaration setting forth the bases for asserting
7 confidentiality. The declaration and proposed redactions may be filed under seal. The court will
8 evaluate any such confidentiality contention and make a decision whether to approve the proposed
9 redaction or to remove it, thus rendering the underlying content public. Any proposed redactions
10 and declarations in support must be filed within 14 days of the date of this order. Thereafter, a
11 copy of this order with the approved redactions will be made public.

**IT IS SO ORDERED.**

Dated: February 19, 2016

_____
Ronald M. Whyte
United States District Judge